**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AARON BURDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 22-cv-00046 |
| CITY OF CHICAGO, a municipal | ) | |
| corporation; Officer ALBERT TORRES, Star | ) | Honorable Judge John Z. Lee |
| #13067; Officer MOHAMMAD BAKER., | ) | |
| Star #19740; Officer ANDREW KATS, Star | ) | Honorable Magistrate Judge Young B. |
| #17577; Officer ANGELO DICERA Star | ) | Kim |
| #14902; and J. DOE OFFICERS 1-5. | ) | |
| | ) | |
| Defendants. | ) | |

Table of Contents

**PLAINTIFFS TIME-BARRED CLAIMS SHOULD BE DISMISSED** ................................................................ 3

    A.  Any *Monell* claim premised on a time-barred constitutional violation should be dismissed ......... 3

    B.  State law claims arising out of incidents prior to January 4, 2021 are time-barred ...................... 6

        Assault and Battery are not Continuing Torts ................................................................. 7
        Intentional Infliction of Emotional Distress is not a Continuing Tort. .................................... 8

**PLAINTIFF FAILS TO ADEQUATELY PLEAD ALL THE ELEMENTS OF A MONELL CLAIM** ......... 10

    A.  Plaintiff's failure to train *Monell* claim is not adequately pled. ....................................... 12

        1.  Plaintiff has not shown a policy or custom of the City failing to train its Police
            Officers ....................................................................................................... 12

        2.  Plaintiff has not shown that the City was deliberately indifferent to any training
            deficiencies .................................................................................................. 15

        3.  Plaintiff has not shown that the City's alleged failure to train was the "moving force"
            behind any of Plaintiff's constitutional injuries ................................................... 16

    B.  Plaintiff's Failure to Discipline and Code of Silence claims are not adequately pled ................ 17

        1.  Plaintiff fails to plead Failure to Discipline and Code of Silence ................................ 17

        2.  Plaintiff fails to plead the deliberate indifference element for failure to discipline and
            code of silence .............................................................................................. 18

        **3.**  Plaintiff fails to show causation as to failure to discipline and code of silence ........... 19

    C.  Plaintiff's *Monell* biased-based policing claims are not adequately pled ......................... 19

EXHIBITS IN SUPPORT OF DEFENDANT CITY OF CHICAGO'S PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT

***Exhibit. Document***

A. COPA Training Report
B. Consent Decree June 5, 2020 IM Report
C. Department of Justice Report

## TABLE OF AUTHORITIES

**United States Supreme Court**

*Albright v. Oliver*, 510 U.S. 266, 271 (1994) .......................................................................... 2

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........................................................................ 2,11

*Bd. of Comm'rs of Bryan Cty. v. Brown¸* 520 U.S. 397. 400, 404 (1997) ...................................... 10

*Bryan Cty*, 520 U.S. at 400 ...................................................................................................11

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) ...............................................11

*City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)477 U.S. 242 (1986) .................1

*Connick*, 563 U.S. at 62 (quoting *Bryan Cty.*, 520 U.S., at 409 ............................... 11, 15

*Harris*, 489 U.S. 378, at 391 ...............................................................................................16

*Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978) .....................11

**United States Court of Appeals**

*Arlotta v. Bradley Ctr.*, 349 F.3d 517, 522 (7th Cir. 2003)*Arlotta v. Bradley Ctr.*, 349 F.3d 517, 522 (7th Cir. 2003)........................................................................................11

*Ashafa v. City of Chicago*, 146 F. 3d 459, 461 (7th Cir. 1998) .........................................3

*Bank of Ravenswood v. City of Chicago*, 307 Ill.App.3d 161, 240 Ill.Dec. 385, 717 N.E.2d 478, 484 (1999) ...............................................................................................9

*Cf. Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 345-349 (2002) ......................8

*Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278, 798 N.E.2d 75, 85 (2003).........................7,8,9

*First Midwest Bank v. City of Chi.*, 988 F.3d 978, 988-989 (7th Cir. 2021) ...................18

*First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021)*First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) ............16

*Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020)(..........................................10

*Hickombottom v. City of Chicago*, 739 F. Supp. 1173, 1177 (N.D. Ill. 1990) ...............10

*Hyon Waste Mgmt. Serv., Inc. v. City of Chicago*, 214 Ill.App.3d 757, 158 Ill.Dec. 335, 574 N.E.2d 129, 133 (1991).................................................................................................9

*Indiana Ins. Co.* v. *Machon & Machon, Inc.*, 324 Ill.App.3d (2001). .........................7

*Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) .................................................10

*Johnson v. Cook Cty.*, 526 F. App'x 692, 696 (7th Cir. 2013)*Johnson v. Cook Cty.*, 526 F. App'x 692, 696 (7th Cir. 2013).................................................................................19

*Kovacs v. United States*, 614 F.3d 666, 675 (7th Cir. 2010)*Kovacs v. United States*, 614 F.3d 666, 675 (7th Cir. 2010).................................................................................9

*Marshall v. Buckley*, 644 F. Supp. 2d 1075, 1082 (N.D. Ill. 2009) ................................................. 5

*McCauley v. City of Chicago*, 671 F.3d 611, 616 (2011) ............................................................... 2

*Palmquist v. Selvik*, 111 F. 3d 1332, 1345 (7th Cir. 1997) ........................................................... 16

*Powell v. City of Danville*, 253 Ill.App.3d 667, 192 Ill. Dec. 675, 625 N.E.2d 830, 831 (1993). ............... 7
*Taylor v. Bd. of Educ. of City of Chicago*, 2014 IL App (1st) 123744, 10 N.E.3d 383, 395 ...................... 8

*Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006) .................................................................. 4

*Strauss v. City of Chicago*, 760 F.2d 765, 768-770 (7th Cir. 1985) ................................................ 10

*Walden v. City of Chicago*, 755 F. Supp. 2d 942, 968 (N.D. Ill. 2010) ............................................. 3

**United States District Court**
*Aaron Blocker v. City of Chicago*, No. 17 CV 00055 (N.D. Ill. Aug. 2, 2017), 2017 WL 3278323 .............. 4

*Anderson v. Allen*, 2020 WL 5891406 .................................................................................. 20

*Barrios v. City of Chicago*, No. 15 C 2648, 2016 WL 164414 (N.D. Ill. Jan. 14, 2016) ........................ 10

*Carmona v. City of Chicago*, 2018 WL 1468995 (N.D.Ill. March 26, 2018)(St. Eve, J.) ...................... 13

*Cole v. City of Chicago*, No. 21-CV-1640, 2022 WL 19332 (N.D. Ill. Jan. 3, 2022) ........................ 3,4,5,9

*Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) ......................................................... 3

*Echols v. Niznik et al.*, No. 20 CV 2226 ............................................................................... 20

*Harell v. City of Chicago*, No. 18 C 7781, 2019 WL 2611036 (N.D. Ill. June 25, 2019) ....................... 2

*Jones v. UPS Ground Freight, Inc.*, 2016 WL 826403 (N.D.Ill. March 3, 2016) ................................. 6
*Karney v. City of Naperville*, No. 15 C 4608, 2015 WL 6407759 (N.D. Ill. Oct. 22, 2015) .................... 10

*Mikolon v. City of Chicago*, No. 14 CV 1852, 2014 WL 7005257(N.D. Ill. Dec. 11, 2014) ................... 11

*Slabon v. Sanchez*, No. 15-CV-8965, 2021 WL 4146909 (N.D. Ill. Sept. 13, 2021) ............................ 7

*Taylor v. City of Chicago*, No. 21 CV 2197, 2021 WL 4523203 (N.D. Ill. Oct. 4, 2021) ..................... 13

*Turner v. City of Chicago*, No. 1:19-CV-00272, 2020 WL 1548957(N.D. Ill. Mar. 31 2020) ................ 10

*Wilson v. Edward Hosp.*, 2012 IL 112898 .............................................................................. 6

**Statutes & Rules**

745 ILCS 10/8-101 ....................................................................................................... 6

42 U.S.C. § 1983.................................................................................................................*passim*

745 ILCS 10/2-109............................................................................................................8, 9

iv

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AARON BURDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 22-cv-00046 |
| CITY OF CHICAGO, a municipal | ) | |
| corporation; Officer ALBERT TORRES, Star | ) | Honorable Judge John Z. Lee |
| #13067; Officer MOHAMMAD BAKER., | ) | |
| Star #19740; Officer ANDREW KATS, Star | ) | Honorable Magistrate Judge Young B. |
| #17577; Officer ANGELO DICERA Star | ) | Kim |
| #14902; and J. DOE OFFICERS 1-5. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT CITY OF CHICAGO'S PARTIAL MOTION TO DISMISS OF PLAINTIFF'S COMPLAINT[1]

Defendant City of Chicago ("the City"), by and through its attorney, Celia Meza, Corporation Counsel of the City of Chicago, pursuant to Federal Rules of Civil Procedure 12(b) (6), respectfully moves this Court to partially dismiss Plaintiff's Complaint for failure to state a claim.

## INTRODUCTION[2]

In the instant lawsuit filed on January 4, 2022, Plaintiff brings various claims based on interactions that Plaintiff has had with the Chicago Police Officers dating back to 2017. Docket ("Dkt.") 1. The City first moves to dismiss any federal claims or partial claims against it based on incidents that occurred prior to January 4, 2020 as barred by the statute of limitations. Likewise, the City moves to dismiss state law claims that occurred prior to January 4, 2021 as time-barred. Although

---

[1] On behalf of the City and John Doe Officers, the City also incorporates by reference the Motion to Dismiss that the Individual Defendant Officers filed to this Court. ECF No. 23 If the equal protection and failure to intervene claims fail on their face as to the named Individual Defendant Officers, they would likewise fail as to any John Does and cannot be a basis for liability as to the City. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

[2] All facts are taken in the light most favorable to Plaintiff for the purposes of this motion only. Defendant City reserves the right to contest Plaintiffs' allegations for all other purposes.

in each case, Plaintiff attempts to assert the incidents constitute continuing violations, the Court should reject this theory of liability under the applicable law. Further, Plaintiff's *Monell* claim should be dismissed under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim because it does not meet the current federal pleading standards.

## LEGAL STANDARD

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard means that "[f]actual allegations must be enough to raise a right to relief above the speculative level…". *Twombly*, 550 U.S. at 555 (internal citations omitted). While it is true that this Court must take all factual allegations in the complaint as true, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555. Pleadings that offer "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted). Similarly, "naked assertion[s] devoid of further factual enhancement," will not suffice, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)(internal quotation marks omitted).

To state a Section 1983 *Monell* claim post-*Iqbal*, the plaintiff must plead factual content allowing the court to draw the reasonable inference that the municipality maintains the problematic policy or practice in question. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (2011). The plaintiff must "identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "Accordingly, to establish municipal liability and prevail on a *Monell* claim, it is not enough for Plaintiffs to allege that an alleged policy or procedure of the City injured them." *Harell v. City of Chicago*, No. 18 C 7781, 2019 WL 2611036, at *3 (N.D. Ill. June 25, 2019). "Instead, Plaintiffs must allege both that they suffered a constitutional injury and that the City authorized or maintained a

policy, procedure, or custom allowing or approving of the unconstitutional conduct." *Id.*

## ARGUMENT

## I. PLAINTIFF'S TIME-BARRED CLAIMS SHOULD BE DISMISSED.
### A. Any *Monell* claim premised on a time-barred constitutional violation should be dismissed.

Plaintiff alleges that since 2017 he "has been stopped, searched, subjected to verbal abuse, and detained by Chicago police on at least eighteen separate occasions." *See* Plaintiff's Complaint ("Plt.'s Compl.") at ¶11. However, most of these alleged incidents occurred outside of the two-year statute of limitations, so they cannot provide a basis for Plaintiff to recover damages or support Plaintiffs *Monell* claim. Plaintiff alleges incidents occurring on July 8, 2017; April 30, 2018; April 22-23, 2019; and July 19, 2019, all beyond the two-year state law statute of limitations. *See* Plt.'s Compl. at *Id.* at ¶¶15,17,23,24, and 26. These incidents are untimely and, as such, should be dismissed with prejudice to the extent Plaintiff pleads them as support for *Monell* liability. Plaintiff alleges three incidents, which are not barred by the statute of limitations, May 28, 2020, January 5, 2021, and March 21, 2021. *Id.* at 29, 33, 39.

In Illinois, the statute of limitations for §1983 claims is two years, *Ashafa v. City of Chicago*, 146 F. 3d 459, 461 (7th Cir. 1998), including for *Monell* claims. *Cole v. City of Chicago*, No. 21-CV-1640, 2022 WL 19332, at *4 (N.D. Ill. Jan. 3, 2022). "A §1983 claim generally accrues when the plaintiff knows or should have known that his constitutional rights have been violated." *Id.* "In the Fourth Amendment context, a claim based upon an unconstitutional detention accrues when the detention ends." *Id.* Fourth Amendment claims for unlawful searches accrue at the time of, or conclusion of, the violation. *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008). "As a *Monell* claim is brought under Section 1983, it is governed by the accrual rules applicable to other Section 1983 claims." *See Walden v. City of Chicago*, 755 F. Supp. 2d 942, 968 (N.D. Ill. 2010) ("...(a) *Monell* claim is predicated on an underlying constitutional injury, only Walden's claims that have not been dismissed can form the

basis of his *Monell* claim.") (internal citation omitted); see also *Aaron Blocker v. City of Chicago*, No. 17 CV 00055 (N.D. Ill. Aug. 2, 2017), 2017 WL 3278323, at *5 (dismissing a *Monell* claim as time-barred because the claim "is tied to the underlying allegations" that officers violated the plaintiff's constitutional rights more than two years before the plaintiff's filed suit).

In this case, Plaintiff bases his §1983 *Monell* claim in part upon the alleged incidents that occurred on July 8, 2017; April 30, 2018; April 22-23, 2019; and July 19, 2019, each incident occurring more than two-years before Plaintiff filed suit in this Court. Plaintiff acknowledges that these alleged incidents are timed barred, but argues "these acts, when paired with other Defendant Officers' stops of Plaintiff and caused by the continuous customs and practices of the Defendant City… constitute a continuing violation and continuing harm under the law and are thus ripe for the Court's consideration." *See* Plt.'s Compl. at *Id.* at 76. However, this argument is deficient.

"The Seventh Circuit has applied the continuing violation doctrine (1) when a plaintiff could not reasonably be expected to perceive that the alleged wrongdoing before the expiration of the statute of limitations, (2) when the violation only became apparent in light of later events, and (3) when a state actor has a policy that brings a fresh violation each day. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006).

In the present case, the continuing violation doctrine does not apply. Each alleged incident in Plaintiff's complaint constitutes a separate and discrete event. Plaintiff believed that each of alleged events were wrongful at the time it occurred, and filed many complaints against the City's Officers with the Civilian Office of Police Accountability. *See* Plt.'s Compl. at ¶¶ 16, 21, 25, 26. Therefore, Plaintiff perceived the alleged wrongdoing at the time of the incidents and still did not file his complaint until well after the statute of limitations expired.

Additionally, Judge Rowland recently decided time-barred incidents cannot support a *Monell* claim in *Cole v City of Chicago*, 2021cv1640. In *Cole*, plaintiff filed a *Monell* claim against the City of

4

Chicago and alleged detentions prior to the expiration of the statute of limitations in support of their *Monell* claim. The City of Chicago filed a motion to dismiss arguing most plaintiffs alleged detentions were time-barred and only three, which survived the statute of limitations, could be used to support plaintiffs *Monell* claim. In response to defendant's motion to dismiss, Plaintiff argued the continuing violation doctrine preserved plaintiff's claims and supported their *Monell* claim. The Court disagreed with plaintiff and reasoned "(a)lthough Plaintiff insists that the continuing violation doctrine applies to save the earlier detentions because he "continues to suffer harm" from the repeated violations, [20] at 4, the continuing violation doctrine applies only to "a continuing wrong, not of continuing harm; once the wrong ends, the claim accrues even if that wrong has caused a lingering injury." *Cole v. City of Chicago*, No. 21-CV-1640, 2022 WL 19332, at *11 (N.D. Ill. Jan. 3, 2022 citing *Manuel v. City of Joliet*, 903 F.3d 667, 669 (7th Cir. 2018). The Court held, "(p)ractically speaking, this means that only the alleged policies and practices that relate to Plaintiff's timely constitutional injuries can form the basis of Plaintiff's *Monell* claim." *Id*. citing *Walden*, 755 F. Supp. 2d at 968.

Although Plaintiff insists that the continuing violation doctrine applies to save the earlier events because "[t]he City's unconstitutional policies, practices, customs, and usages caused all violations of [Plaintiff's] rights mentioned herein…", Plt.'s Compl. at ¶131, "the continuing violation doctrine applies only to a continuing *wrong*…once the wrong ends, the claim accrues even if that wrong has caused a lingering injury."' *Cole*, 2022 WL 19332, at *5 (emphasis in original)(quoting *Manuel*, 903 F.3d at 669. Thus, the continuing violation doctrine fails to save Plaintiff's claims based upon injuries suffered from alleged unconstitutional detentions pre-dating January 4, 2020. Additionally, courts have found that arrests cannot create an ongoing violation that would alter or extend the statute of limitations for Fourth Amendment Claims. *Marshall v. Buckley*, 644 F. Supp. 2d 1075, 1082 (N.D. Ill. 2009). "Therefore each [incident] was independently actionable and cannot form the basis of a continuing violation." *Cole*, 2022 WL 19332. at *5.

Plaintiff's pre-January 4, 2020, claims; July 8, 2017; April 30, 2018; April 22-23, 2019; July 19, 2019; accrued prior to the date of his filing his complaint, and the continuing violation doctrine does not apply. Any claims premised onPlaintiff's pre-January 4, 2020 alleged incidents should be dismissed.

B.    **State law claims arising out of incidents prior to January 4, 2021 are time-barred**.

Plaintiff brings four claims under state law: *respondeat superior* (Count VI), continuing tort of assault and battery (Count VII), continuing tort of intentional infliction of emotional distress (Count VIII ), and indemnification (Count X). As a preliminary matter, *respondeat superior* is not a cause of action in and of itself, but rather a basis for holding a defendant responsible for the acts of its agents. See, *e.g. Wilson v. Edward Hosp.*, 2012 IL 112898, ¶ 24; *Jones v. UPS Ground Freight, Inc.*, 2016 WL 826403 at *3 (N.D.Ill. March 3, 2016).

Plaintiff's state law claims that arise from incidents occurring prior to January 4, 2021 are time-barred by the Tort Immunity Act. Section 8-101(a) of the Tort Immunity Act provides: "No civil action other than an action described in subsection (b) may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received, or the cause of action accrued." 745 ILCS 10/8-101.

Here, Plaintiff alleges that his injuries and damages occurred on July 8, 2017; April 30, 2018; April 22-23, 2019; July 19, 2019; May 28, 2020; January 5, 2021; and March 21, 2021. *See* Plt.'s Compl. at ¶¶15,17,23,24, 26, 29, 33, and 39. Two of the alleged incidents are not time barred, January 5, 2021 and March 21, 2021; however the remaining incidents are time-barred. Pursuant to 745 ILCS 10/8-101, Plaintiff cannot seek damages stemming from incidents on July 8, 2017; April 30, 2018; April 22-23, 2019; July 19, 2019; May 28, 2020, because he filed his Complaint on January 5, 2022, four and a half years after the 2017 incident, and eight months after the May 28, 2020 incident; well after the statute of limitations had expired. Therefore, the Court should dismiss these allegations with prejudice because they cannot provide a basis for Plaintiff to recover damages.

6

1.      *Assault and Battery are not Continuing Torts.*

Plaintiff alleges Defendant Officers actions constitute the continuing tort of battery and assault. *See* Plt.'s Compl. at 133. However, each incident alleged is a discrete incidents, involving different officers, and are not continuing torts.

In Illinois, a limitations period begins to run when facts exist that authorize one party to maintain an action against another. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278, 798 N.E.2d 75, 85 (2003) "For most torts, the cause of action usually accrues when the plaintiff suffers injury." *Indiana Ins. Co.* v. *Machon & Machon, Inc.*, 324 Ill.App.3d (2001).   Under Illinois law, a cause of action for battery accrues on the day that the injury occurred.  *Slabon v. Sanchez*, No. 15-CV-8965, 2021 WL 4146909, at *20 (N.D. Ill. Sept. 13, 2021). Therefore, each alleged battery and assault accrued on the date of the incident, i.e., July 8, 2017; April 30, 2018; April 22-23, 2019; July 19, 2019; May 28, 2020, January 5, 2021, and March 21, 2021.

The Supreme Court of Illinois has stated that "where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Feltmeier,* 798 N.E.2d at 85.  In cases where the tortious activity ceased at a certain date, the courts do not apply the continuing tort doctrine because to do so would be "to confuse the concept of a continuing tort with that of a continuing injury." *Powell v. City of Danville,* 253 Ill.App.3d 667, 192 Ill.Dec. 675, 625 N.E.2d 830, 831 (1993).

Plaintiff's alleged assaults and batteries were completed at the end of the intentional overt act and cannot be linked together through the continuing violation theory, as each alleged battery and assault were distinct, individual events, that involved different officers from different districts in the City. These discrete and singular events cannot be considered "continuing or repeated injurious behavior." The Plaintiff pleads that the incidents occurred on "separate occasions," Plt.'s Compl. at

¶11, thereby acknowledging this is not one continual injury but separate and discrete incidents, which do not constitute a continuing tort. Because Plaintiff has failed to state a state law claim upon which relief may be granted for the time-barred incidents (., July 8, 2017; April 30, 2018; April 22-23, 2019; July 19, 2019; May 28, 2020), Plaintiff's *respondeat superior* and indemnification claims would fail as to these claims as well because the Tort Immunity Act holds that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." Tort Immunity Act, 745 ILCS 10/2-109.

2. <u>*Intentional Infliction of Emotional Distress is not a Continuing Tort.*</u>

Plaintiff alleges he was "subjected to the intentional infliction of emotional distress on no fewer than 18 occassions." Plt.'s Compl. at 141. Plaintiff's Count VIII seeks to hold Defendants liable under a theory of continuing violation doctrine. Like assault and battery, Plaintiff's claim in this regard fails.

In Illinois, when a tort involves continuous or repeated injurious behavior *by the same actor* and of a similar nature, the causes of action underlying the tort claim will not accrue until the date the final injury occurs or the tortious acts cease. *Taylor v. Bd. of Educ. of City of Chicago*, 2014 IL App (1st) 123744, ¶ 46, 10 N.E.3d 383, 395; *see also Feltmeier*, 207 Ill.2d.263 (Spouse who allegedly was the recipient of multiple acts of abuse by other spouse, i.e., *single actor*, had viable IIED claim pursuant to continuing violation doctrine); ;*Cf. Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 199 Ill. 2d 325, 345-349 (2002)(Defendants' alleged violations of the Motor Vehicle Franchise Act through individual vehicle allocations to Plaintiff dealership took place over many years and "was the result of discrete decisions by defendants" and "each allocation constituted a separate violation of section 4 of the Act, each violation supporting a separate cause of action.").

Here, the conduct that Plaintiff allegedly suffered, which purportedly gives rise to his IIED claim, came from *multiple* actors, as opposed to a single actor such as in *Taylor* or *Feltmeier*. The incidents

8

were discrete and separate incidents, involving different officers. Plaintiff's alleged incidents on April 30, 2018; April 23, 2019; July 19, 2019; May 28, 2020, therefore cannot be roped into the alleged January 5, 2021, and March 21, 2021, incidents which are timelier alleged, via the theory of continuing tort. The Defendant Officers involved in each incident, time-barred or otherwise, were different people from different districts who all stopped or interacted with Plaintiff for different reasons. "The doctrine does not apply, however, where a complaint alleges 'discrete and independently actionable violations." *Cole v. City of Chicago*, No. 21-CV-1640, 2022 WL 19332, at *5 quoting *Kovacs v. United States*, 614 F.3d 666, 675 (7th Cir. 2010). In the instant case, Plaintiff alleges claims against several different officers, on several different days, for various reasons; not one actor who acted with in a similar nature towards Plaintiff.

Additionally, Plaintiff attempts to plead that the compiling of his interactions with Chicago Police Officers has caused him emotional distress. However, a continuing tort "is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." *Feltmeier*, 798 N.E.2d 85 (citing *Pavlik v. Kornhaber*, 326 Ill.App.3d 731, 260 Ill.Dec. 331, 761 N.E.2d 175, 186– 87 (2001); *Bank of Ravenswood v. City of Chicago*, 307 Ill.App.3d 161, 240 Ill.Dec. 385, 717 N.E.2d 478, 484 (1999); *Hyon Waste Mgmt. Serv., Inc. v. City of Chicago*, 214 Ill.App.3d 757, 158 Ill.Dec. 335, 574 N.E.2d 129, 133 (1991)) (emphasis added). Therefore, while Plaintiff alleges after each separate and distinct interaction with the Chicago Police Officers he suffered emotional distress, the theory of continuing torts is not asserted by the continual ill effects from an initial violation and therefore fails. Again, any *respondeat* superior claim premised on a time-barred incident would likewise fail. 745 ILCS 10/2-109.

## II.     PLAINTIFF FAILS TO ADEQUATELY PLEAD ALL THE ELEMENTS OF A *MONELL* CLAIM.

In order "[t]o survive a motion to dismiss a *Monell* claim, a plaintiff must 'plead facts that show

that there is a true municipal policy at issue, not a random event."' *Barrios v. City of Chicago*, No. 15 C 2648, 2016 WL 164414, at *13 (N.D. Ill. Jan. 14, 2016).

To state a *Monell* claim, a plaintiff must show "(1) an action pursuant to a municipal policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning that the municipal action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020)(quoting *Bd. of Comm'rs of Bryan Cty. v. Brown¸* 520 U.S. 397. 400, 404 (1997). Here, Plaintiff asserts that "each incident described in the Complaint was caused by the policies, practices, customs, and usages of the Chicago Police Department: a failure to properly train and discipline officers, the maintenance and encouragement of a code of silence within the department, and systemic racially discriminatory, bias-based policing. *Id.* at ¶ 13.

To show a widespread practice, legal conclusions of such similar incidents will not suffice. *See Karney v. City of Naperville*, No. 15 C 4608, 2015 WL 6407759, at *4 (N.D. Ill. Oct. 22, 2015)(disregarding references to purportedly similar incidents because they were conclusory.); *see also Turner v. City of Chicago*, No. 1:19-CV-00272, 2020 WL 1548957, at *3 (N.D. Ill. Mar. 31 2020)(plaintiff's "threadbare assertion that other instances similar to his have occurred in some manner, by some unspecified officers, during an unspecified time period, does not raise[his] claim above speculation).

To establish deliberate indifference, Plaintiff must plead more than "simple or even heightened negligence." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007)(quoting *Bryan Cty*, 520 U.S. at 407). Mere boilerplate assertions of "authority or official tolerance of misconduct, are not sufficient for pleading municipal liability." *Hickombottom v. City of Chicago*, 739 F. Supp. 1173, 1177 (N.D. Ill. 1990)(quoting *Strauss v. City of Chicago*, 760 F.2d 765, 768-770 (7th Cir. 1985). Instead, "'[m]unicipal liability under [Section] 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers. *City of Canton, Ohio v. Harris*,

489 U.S. 378, 389 (1989). To show causation, Plaintiff "must show that the municipality's deliberate conduct was the 'moving force' behind the alleged injury.'" *Bryan Cty*, 520 U.S. at 400 (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). Again, consistent with *Iqbal/Twombly*, a conclusory statement is not entitled to the presumption of truth and is too vague to satisfy the "direct causal link" between the conduct of the City and the alleged conduct of the officers. *Mikolon v. City of Chicago*, No. 14 CV 1852, 2014 WL 7005257, at *4-5 (N.D. Ill. Dec. 11, 2014), (citing *Arlotta v. Bradley Ctr.*, 349 F.3d 517, 522 (7th Cir. 2003).

### A. Plaintiff's failure to train *Monell* claim is not adequately pled.

A *Monell* claim is at its "most tenuous" when it comes to failure to train. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). As discussed below, Plaintiff misses the mark.

#### 1. *Plaintiff has not shown a policy or custom of the City failing to train its Police Officers.*

Plaintiff bases his alleged failure to train allegations primarily on content from the 2017 Department of Justice report on its investigation of the Chicago Police Department ("DOJ Report"). Dkt. 1 at ¶¶ 50-54. Plaintiff further alleges, "Changes to CPD use of force training initiated after the release of the DOJ Report have not addressed key deficiencies…" *Id.* at ¶ 55. Plaintiff also alleges that the number of complaints against CPD officers have continued to be filed at "alarming rates" following the DOJ Report. *Id.* at ¶ 56. Plaintiff concedes that the revised training purports to feature de-escalation and force mitigation principles, but cites the City's Civilian Office of Police Accountability ("COPA") as saying that the training provides minimal discussion about why force should be de-escalated and the tools to de-escalate. *Id.* at ¶ 57. Plaintiff alleges that the Illinois Attorney General wrote that CPD continued to be reluctant to change its culture and that it had not made substantive changes in its training as to use of force. *Id.* at ¶ 59.

These purported facts are insufficient to show, even in the light most favorable to Plaintiff, that the City's training of officers was so deficient that it could be considered to have caused

constitutional violations. Plaintiff fails to provide detail as to how the training does not adequately explain the constitutional standard. Plaintiff fails to explain what "key deficiencies" the training does not address. Plaintiff fails to explain what sort of "in-depth analysis or discussion of examples" might be needed to explain that police officers should not use force against people who are compliant and law-abiding, as Plaintiff claims he was during each incident. These statements as to the supposed deficiencies in training are conclusory and the Court should disregard them under the *Iqbal/Twombly* standard. The allegation that there are an "alarming" number of complaints against Chicago police officers does not show that those complaints are valid, that those complaints are similar to the ones Plaintiff claims, how the number of complaints after the training compares to the number of complaints before the training, or that the alleged failure to train is in any way responsible for those complaints.

Importantly, the 2017 DOJ Report is inapposite to the post-January 2020 conduct that Plaintiff complaints of in terms of training and other areas. It must be pointed out at the outset the purportedly deficient training mentioned in the DOJ Report was no longer the training during the relevant time-frame for this case. Indeed, the City cannot be forever bound by criticism that are now several years old, especially considering that it is a matter of public record that the City has been working on improving training for its police officers in the interim[3]. As Judge Shah recently observed:

> [T]he passage of time since the DOJ report diminishes its usefulness as an allegation of the practices in place at the time of [plaintiff's] seizure. Without anything in the complaint to suggest that the practices found by DOJ investigators were still in place two years later, the report is a non sequitur."

---

[3] When ruling on a motion to dismiss, a court may consider "documents…attached to the complaint, documents … central to the complaint and referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th. Cir. 2013). A court may take judicial notice of matters of public record without converting a motion to dismiss to a motion for summary judgment, particularly of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned. See, *e.g.*, *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008), 551 F.3d , 640; *Gen. Elec. Capital Corp v. Lease Resolution Corp.*, 128 F. 3d 1074, 1081 (7th Cir. 1997); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)(finding public court documents judicially noticeable.)

*Taylor v. City of Chicago*, No. 21 CV 2197, 2021 WL 4523203, at *3 (N.D. Ill. Oct. 4, 2021). In particular, it is a matter of public record that the City voluntarily entered into an agreement that was meant to reform policing in the Consent Decree. See *State of Illinois v. Chicago*, No. 17 CV 6260 at Dkt. 703. ("Consent Decree"). The City agreed to enter into the Consent Decree to "ensure that the City and CPD deliver services in a manner that fully complies with the Constitution and laws of the United States and the State of Illinois, respects the rights of the people of Chicago, builds trust between officers and the communities they serve, and promotes community and officer safety. In addition, this Agreement seeks to ensure that Chicago police officers are provided with the training, resources, and support they need to do their jobs professionally and safely." Consent Decree at p. 1.  Notably, Judge Robert M. Dow Jr., the judge overseeing the implementation of the Consent Decree, recently recognized the City's reform efforts in an order granting a motion for bifurcation in another case. "[T]he City of Chicago is engaged in a major effort to reform its police department through the Consent Decree in Case No. 17-cv-6260, as well as in efforts outside the decree." *Galindo v. Chudzik et al.*, 20 CV 3409, Dkt. 50. The City urges the Court to agree that the DOJ Report should not serve as "a master key to unlock discovery's door for any *Monell* claim against the City, no matter how scantily the plaintiff connects his claim to the report's findings." *Carmona v. City of Chicago*, 2018 WL 1468995 at *4 (N.D.Ill. March 26, 2018)(St. Eve, J.).

Next, Plaintiff overstates or flat-out misstates the actual criticism from COPA and the Illinois Attorney General about CPD's training of its officers. The report Plaintiff cites to from COPA, which dates back to January 19, 2017, is attached as Ex. A. First, this report never suggests that the training CPD had revised was so deficient as to not equip officers to be able to conduct their duties lawfully. Instead, COPA writes, "We commend the Department on training its members and its recruits prior to implementing such a significant policy change." Ex. A at 4. Most of the recommendations listed are relatively minor tweaks as opposed to a wholesale condemnation of the training. As to the June 5,

2020 letter from Attorney General Kwame Raoul, it actually lists training as one of the areas with progress. This is included in the June 2020 Independent Monitoring Report, 17 CV 6260 at Dkt. 844, which is attached as Ex. B. The letter states, "In Training, although staffing continues to be a concern, CPD has increased the number of training officers receive. This increase is critical because training is foundational to changing officers' behavior." Ex. B at p. 432. Moreover, Plaintiff's quote of the letter appears to be taken out of context. The letter states, "The OAG is also concerned that the City's process for reviewing uses of force is not sufficiently focused on identifying trends or developing recommendations regarding modifications to tactics, equipment, training and policy. For example, while the Force Review Division issued recommendations to individual members after use of force incidents, the OAG did not receive evidence of it making any written Department-wide recommendations for substantive changes to CPD policy, tactics, equipment, or training." *Id.* That is a far different statement than that there have been no substantive changes in CPD training under the Consent Decree.

Plaintiff has failed to plausibly allege that the training given by CPD was so deficient as to prevent officers from being able to know that they should not use excessive force against innocent and harmless people, and his claim should be dismissed.

2. *Plaintiff has not shown that the City was deliberately indifferent to any training deficiencies.*

Even assuming for argument's sake that Plaintiff sufficiently pled the existence of a failure to train officers, Plaintiff fails at showing deliberate indifference to this alleged failure to train. Plaintiff's allegations simply claim in conclusory fashion that there was deliberate indifference as to training (and other alleged policies). Dkt. 1 at ¶¶ 14, 127, 130. Plaintiff further claims that the City was on notice that its training was insufficient because of the June 2020 report by the independent monitor that "the Department was not complying with its obligation to implement training that would ensure reasonable and constitutional use of force as called for by CPD policy." *Id.* at ¶ 58.

14

These allegations are conclusory and in part incorrect. Plaintiff fails to name the final policymaker as regards to training, let alone demonstrate that the final policymaker was on notice as to the alleged training deficiency and failed to act. As to the aforementioned June 2020 report, it did not find that the City was not complying with its obligation to implement training at all. Rather, it found that the City had not met some requirements of producing documentation of a complex set of goals. As the report states, "Even if the City has made significant efforts toward complying with a requirement – which in many cases, it has – the City still has the additional burden of providing the IMT and the OAG with sufficient proof of its effort and allowing sufficient time for review." Ex. B at p. 13. There is nowhere in the report where the IMT claims that the Department was not trying to implement constitutionally sound training, and the report makes clear that the City was in the process of trying to improve its training. For instance, the monitor found that the City was in some level of compliance with such things as conducting a needs assessment for training (*Id.* at 259), increasing the required number of hours of in-service training (*Id.* at 264).

Plaintiff must meet a rigorous standard of proof to allege deliberate indifference with his failure to train *Monell* claim. To satisfy Section 1983, it is "ordinarily necessary," in order to demonstrate deliberate indifference to show "[a] pattern of similar constitutional violations by untrained employees…" *Connick*, 563 U.S. at 62 (quoting *Bryan Cty.*, 520 U.S., at 409). If a policymaker knows or should know that their approach "has failed to prevent tortious conduct by employees," that "may establish the conscious disregard for the consequences of their action-the deliberate indifference-necessary to trigger municipal liability." *Connick*, 563 U.S., at 62 (quoting *Bryan Cty.*, 520 U.S. at 407.

Plaintiff does not plausibly allege that the City acquiesced in any pattern of unconstitutional conduct in terms of its training regimen. Indeed, the DOJ Report shows that the DOJ found that the City was committed to improving its training and called those plans "laudable." See DOJ Report,

attached as Exhibit C, at p. 10. Against the backdrop of new training and agreeing to the Consent Decree, the City's final policymaker cannot be said to have embraced any deficiencies in training. Rather than turn a blind eye to problems with training, the City was actively involved in improving the training of its police officers.

### 3. Plaintiff has not shown that the City's alleged failure to train was the "moving force" behind any of Plaintiff's constitutional injuries.

Even assuming for argument's sake that Plaintiff stated enough well-pled facts to support the first two elements of a failure to train claim, Plaintiff fails at the third element: causation. There is a "rigorous causation standard" for *Monell* claims that "guards against backsliding into *respondeat superior* liability." *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7ᵗʰ Cir. 2021). Plaintiff does not come close to stating facts to meet this standard.

Plaintiff's Complaint only contains conclusory paragraphs as to the causation element. Dkt. 1 at ¶¶ 13, 14, 76, 129. Nowhere in the Complaint does Plaintiff allege any facts that either the named or unknown defendant officers were poorly trained as to the use of force, or that this poor training caused them to use excessive force (as opposed, say, to their using excessive force despite their training.). To prove causal nexus element of his *Monell* claim, Plaintiff must allege "how the failure to provide specific training had a causal nexus to [his] injury." *Palmquist v. Selvik*, 111 F. 3d 1332, 1345 (7th Cir. 1997); *See also Harris*, 489 U.S. 378, at 391 ("the identified deficiency in a city's training program must be closely related to the ultimate injury."). Plaintiff does not even attempt to relate a deficiency in training to the ultimate injury here beyond drawing the conclusion that it caused it. Since Plaintiff has not shown causation, he has failed to state a *Monell* claim regarding the City's alleged failure to train.

**B. Plaintiff's *Failure to Discipline and Code of Silence* claims are not adequately pled.**

16

The portion of Plaintiff's *Monell* claim centering on the City's alleged failure to discipline and code of silence suffers from the same fatal flaws as his *Monell* claim regarding the City's alleged failure to train, and should be dismissed.

1.   *Plaintiff fails to plead Failure to Discipline and Code of Silence.*

Plaintiff claims that the City has the policies of failure to discipline and code of silence. Dkt. 1 at ¶¶ 13, 69, 135. Plaintiff attempts to cite two time-barred examples of his own experience as proof of a failure to discipline and code of silence. *Id.* at ¶¶ 16, 20. Plaintiff claims that CPD teaches officers not to violate the code of silence. *Id.* at ¶ 61. Plaintiff cites to the 2012 verdict in *Obrycka v. City of Chicago*, 07 CV 2372, as proof that the City had either a custom of failure to investigate and/or discipline its officers and/or of a police code of silence. *Id.* at ¶ 63. Once again, Plaintiff attempts to rely on the DOJ Report and PATF Report. *Id.* at ¶¶ 64, 65, 70-71. Plaintiff then cites to statements from interim Superintendent Charlie Beck and Superintendent David Brown that referenced the code of silence. *Id.* at ¶¶ 66-67.

Plaintiff's allegations as to the failure to discipline and the code of silence range from conclusory to outdated to both. Even if the examples from his own personal experience were timely pled, Plaintiff actually pleads that COPA found that multiple officers committed violations against him while staying silent as to how those officers may or may not have been disciplined. Complaint at ¶¶ 21, 25, 26. As to the quote Plaintiff makes about "Blue is Blue," it is derived from an officer witness's testimony in *Spalding v. Chicago*, 12 C 8777. This testimony is quoted in, for example, 186 F.Supp.3d 884, 902. (N.D.Ill. May 11, 2016). In reality, witness Janet Hanna's testimony was that she was taught when she was in the academy that "Blue is blue." See Dkt. 12 CV 8777 at Dkt. 173-11, p. 45. The witness testified that she entered the academy May 31, 1994. *Id.* at p. 10. Even assuming for the sake of argument that the testimony was true at the time when Hanna went through the academy and when *Spalding* was litigated, it is too old to lend weight to Plaintiff's allegation that the code of

17

silence was plausibly the widespread practice in 2020 and later. The finding that Plaintiff cites in the *Obrycka* case pertains to an incident in 2007. Again, this is far too distant from any relevant time frame. Moreover, the Seventh Circuit effectively rendered the *Obrycka* verdict moot when it ruled that the off-duty private acts of an individual could not be a constitutional violation in its decision in *First Midwest Bank v. City of Chi.*, 988 F.3d 978, 988-989 (7th Cir. 2021). The DOJ Report actually states "We cannot determine the exact contours of this culture of covering up misconduct, nor do we know its precise impact on specific cases. What is clear from our investigation is that a code of silence exists and community members know it." Ex. C at 75. As discussed above with regard to the DOJ's finding as to training, both the PATF Report and the DOJ Report date back to 2016 and 2017 respectively and cannot reasonably be said to reflect, without more, that the failure to discipline and the code of silence remained in place in 2020 and later. Plaintiff does not even make a conclusory claim that the failure to discipline still exists in 2020 to the present.

2. *Plaintiff fails to plead the deliberate indifference element for failure to discipline and code of silence.*

Even assuming for argument's sake that Plaintiff had adequately pled a failure to discipline and the code of silence, Plaintiff fails to sufficiently plead deliberate indifference to all alleged policies. Plaintiff generally alleges the City was deliberately indifferent to various failings. Dkt. 1 at ¶¶ 14, 127, 130. As argued above with regard to the pleading as to the City's training of police officers, merely claiming this legal conclusion is the very sort of thing that *Iqbal/Twombly* prohibit.

Plaintiff also ignores the undisputable fact that the City worked to improve its disciplinary system and limit the code of silence by, among other things, creating COPA, increasing the use of body worn camera and signing onto the Consent Decree. See, e.g., Ex. C at p. 3; *State of Illinois v. Chicago*, No. 17 CV 6260, Dkt. 703. Since the pleadings and the documents referred to in them fail to plausibly demonstrate that the City's final policymaker was deliberately indifferent to the City's disciplinary system and the code of silence, Plaintiff's *Monell* claim as to these items fails.

18

     3.     *Plaintiff fails to show causation as to failure to discipline and code of silence.*

Finally, as regards to causation, Plaintiff must "prove not only a custom of failing to discipline, but also that the injury at issue was caused by the custom. *Quade*, 2008 WL 905187, at \*16.

Plaintiff fails to plead any non-conclusory facts to suggest that a failure to discipline or a code of silence actually caused the officers who allegedly violated his rights to do so.

Seventh Circuit precedent has found that even if the suppression of complaints was actually occurring, it could not be the moving force behind the claimed injury because it was too attenuated. *Johnson v. Cook Cty.*, 526 F. App'x 692, 696 (7th Cir. 2013). Likewise, the code of silence, which allegedly involves the use of suppression of complaints, is precisely the same type of alleged conduct that *Johnson* was referring to, i.e., suppression of misconduct. Therefore, the code of silence is too attenuated to be considered as a moving force behind the alleged constitutional injuries that Plaintiff has endured. For the foregoing reasons, Plaintiff's *Monell* claim surrounding the City's alleged failure to discipline officers and the code of silence should be dismissed.

C.  **Plaintiff's *Monell* biased-based policing claims are not adequately pled.**

Lastly, Plaintiff argues that the City engaged in bias-based policing against members of protected classes. Dkt. 1 at ¶¶ 13, 121-26. First of all, to the extent the underlying constitutional violation here is Plaintiff's Equal Protection Claim, Defendant Officers have moved to dismiss said claim. Should that motion be granted Plaintiff's claim would fail at prong one of the *Monell* analysis here. See fn. 1. Moreover, Plaintiff's claim here falls prey to the same problems that arise in his other *Monell* arguments: he doesn't establish that there is an actual widespread policy or procedure put into place, nor was the City deliberate indifferent, and there is no causal nexus between this alleged conduct and the Plaintiff's injuries.

Once again, Plaintiff uses outdated source material that does not speak to the current practices of the City, including the 2017 DOJ Report, the 2016 report of the Police Accountability Task Force,

and a 2015 finding by the American Civil Liberties Union. *Id.* at ¶¶123-24. But even if those reports were to be considered representative of the state of affairs in 2020 and later, they would still be insufficient. As Judge Tharp recently ruled when dismissing a *Monell* claim partially based on allegations of police bias in detaining African American citizens, "But allegations that African American drivers are stopped more often than white drivers do not plausibly show that the reason was race.; that's correlation, not causation. And even assuming that the pattern of stopping more black drivers is due to race and that [then-Superintendent] Johnson was aware of the pattern, that would not plausibly show whether harassment of African American drivers was occurring because of deliberate indifference on the part of the City." *Echols v. Niznik et al.*, No. 20 CV 2226 at Dkt. 72, at 4.

And once again, Plaintiff asserts in a conclusory fashion that the City knew of this culture and failed to act. Complaint at ¶¶ 125-127, 130. As argued above, Plaintiff cannot maintain this position against the public record that establishes that the City undertook various reform methods meant to combat biased policing, including those spelled out in the Consent Decree and in an August 2015 settlement with the American Civil Liberties Union. A court rejected the notion that deliberate indifference to biased based policing was adequately pled in the face of the City's efforts to reform policing. *Anderson v. Allen*, 2020 WL 5891406 at n.2. Plaintiff fails to assert anything beyond the conclusory paragraph to plausibly show that the City's final policymaker knew of and acquiesced to bias-based policing.

Plaintiff's allegations of causation are likewise conclusory. Complaint at ¶ 131. Plaintiff fails to establish the causal connection between the alleged policy of bias-based policing and the relevant encounters he had with Chicago police. Because Plaintiff fails to establish the elements of a *Monell* claim, his arguments regarding biased-based policing should be dismissed.

## CONCLUSION

WHEREFORE, Plaintiff failed to satisfy the factual specificity required under *Iqbal* by merely

alleging legal conclusions and repeating boilerplate *Monell* allegations throughout their Complaint; Because their allegations are nothing more than mere conclusions and too attenuated to support their claim, the Court should dismiss Count VI of Plaintiff's Amended Complaint with prejudice and provide any other relief this Court deems appropriate and just.

DATED: April 19, 2022

Respectfully submitted,

*/s/ Danielle Alvarez Clayton*
Danielle A Clayton
Assistant Corporation Counsel III

Mitchell R. Paglia, Assistant Corporation Counsel III
Danielle A Clayton, Assistant Corporation Counsel III
Raoul V Mowatt, Assistant Corporation Counsel III
Caroline Fronczak, Deputy Corporation Counsel
City of Chicago, Department of Law
2 North LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-2784 (Phone)
(312) 744-6566 (Fax)
Danielle.Clayton@Cityofchicago.org
**Attorneys for the City of Chicago**

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2022 I served the foregoing document upon all counsel of record by filing a copy with the Clerk of the Northern District of Illinois using the Court's electronic filing system.

*/s/ Danielle Alvarez Clayton*
Assistant Corporation Counsel III