**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Aaron Burden, | ) | |
| | ) | Case No. 22 C 46 |
| Plaintiff, | ) | |
| | ) | Judge John Z. Lee |
| v. | ) | |
| | ) | Mag. Judge Young B. Kim |
| The City of Chicago, and Chicago Police Officers | ) | |
| Albert Torres (#13067),Mohammad Baker(#19740), | ) | |
| Andrew Kats (#17577), Angelo Dicera (#14902), | ) | |
| and J. Doe Officers 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT OFFICERS' ANSWER TO PLAINTIFF'S FIRST AMENDED CIVIL COMPLAINT, JURY DEMAND AND AFFIRMATIVE DEFENSES

Defendant Officers Albert Torres ("Defendant Torres"), Mohammed Baker ("Defendant Baker"), Andrew Kats ("Defendant Kats"), and Angelo Dicera ("Defendant Dicera"), (together, "Defendant Officers")[1], by and through one of their attorneys, Emily R. Bammel, Assistant Corporation Counsel, submit their Answer to Plaintiff's First Amended Complaint, Jury Demand, and Affirmative Defenses, stating as follows:

### INTRODUCTION

1.      This action is brought pursuant to 42 U.S.C. § 1983 and Illinois law to address deprivations of Plaintiff's rights under the Constitution of the United States.

**ANSWER:    Defendant Officers admit that Plaintiff purports to bring this action pursuant to 42 U.S.C. § 1983 and Illinois law, but deny the remaining allegations in this paragraph and further deny any allegations of misconduct or wrongdoing alleged herein.**

### JURISDICTION

---

[1] The caption and Count III of Plaintiff's Complaint makes reference to suing "J. Doe Officers." *See generally* ECF Dkt. 32. Defendant Officers make no answer on behalf of any J. Does, unknown, or unnamed officers throughout their Answer, herein.

2.      The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983; the Judicial Code, 28 U.S.C. §1331 and §1343(a); and this Court's supplementary jurisdiction powers, 28 U.S.C. § 1367.

**ANSWER:      Defendant Officers admit jurisdiction is proper, but deny any allegations of misconduct or wrongdoing alleged herein.**

## VENUE

3.      Venue is proper under 28 U.S.C. § 1391(b), as all defendants reside in this judicial district. In addition, the events giving rise to the claim occurred in this judicial district.

**ANSWER:      Defendant Officers admit venue is proper, but deny any allegations of misconduct or wrongdoing alleged herein.**

## PARTIES

4.      Plaintiff Aaron Burden ("Plaintiff" or "Mr. Burden") is a citizen of Illinois who resides in the Northern District of Illinois.

**ANSWER:      Defendant Officers admit the allegations contained in this paragraph on information and belief.**

5.      Defendant City of Chicago (sometimes, the "City") is an Illinois municipal corporation located within this judicial district and which maintains its own law enforcement agency, the Chicago Police Department (sometimes, the "CPD").

**ANSWER:      Defendant Officers admit the allegations contained in this paragraph.**

6.      Defendant Officers Albert Torres (#13067), Mohammad Baker (#19740), Andrew Kats (#17577), Angelo Dicera (#14902), and J. Doe Officers 1-5 (collectively, the "Defendant Officers") were at all times relevant to this Complaint duly appointed and sworn law enforcement officers for the Defendant City of Chicago.

**ANSWER:      Defendant Officers admit the allegations contained in this paragraph as it pertains to them, and lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph as it pertains to J. Doe Officers 1-5.**

7.      When Defendant Officers engaged in the conduct alleged in this Complaint, they were acting in the course and scope of their employment, while on duty, and as agents of the Defendant City of Chicago.

**ANSWER:      Defendant Officers admit that at all times material hereto they were acting in the course and scope of their employment, on duty, as agents of the City of Chicago, but deny the remaining allegations in this paragraph as they pertain to them. Defendant**

2

**Officers lack information or knowledge sufficient to form a belief as to the allegations contained in this paragraph as it pertains to the J. Doe Officers 1-5.**

8.     At all times material to this Complaint, Defendant Officers were acting under color of state law.

**ANSWER:     Defendant Officers admit the allegations contained in this paragraph as it pertains to them, but deny any wrongdoing or misconduct alleged herein. Defendant Officers lack information or knowledge sufficient to form a belief as to the allegations contained in this paragraph as it pertains to the J. Doe Officers 1-5.**

9.     This action is brought against Defendant Officers in their individual capacities.

**ANSWER:     Defendant Officers admit that Plaintiff purports to sue each of them individually, but deny any wrongdoing or misconduct alleged herein as it pertains to them.**

## FACTS

10.     Mr. Burden has resided in the Chicago area since 2015.

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

11.     Since 2017, he has been stopped, searched, subjected to verbal abuse, and detained by Chicago police on at least eighteen (18) separate occasions.

**ANSWER:     Defendant Officers deny the allegations contained in this paragraph as it pertains to them, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

12.     It is an all too familiar pattern. Mr. Burden, a Black man, attempts to go about his daily life—walking down the street, riding his bike, stopping at a gas station, driving his car to work with his wife—and Chicago Police Officers target him, handcuff him, use excessive force against him, and berate him, sometimes with threats and racist language.

**ANSWER:     Defendant Officers deny the allegations contained in this paragraph as it pertains to them, and further lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

13.     The unlawful conduct levied against Mr. Burden does not occur in a vacuum—rather, each incident described in this Complaint was caused by the policies, practices, customs, and usages of the Chicago Police Department including: its failure to properly train and discipline officers; the maintenance and encouragement of a "code of silence" within the department; and systemic racially discriminatory, bias-based policing.

**ANSWER:    Defendant Officers deny the allegations contained in this paragraph as it pertains to them, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contain in this paragraph.**

14.    The acts perpetrated against Mr. Burden span years, but the City's deliberate indifference to these well-documented constitutional violations has been consistent and remains in force up to and including the present, causing continuing constitutional and state law violations against Mr. Burden.

**ANSWER:    Defendant Officers deny the allegations contained in this paragraph as it pertains to them, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contain in this paragraph.**

15.    *Incident No. 1:* On July 8, 2017, Officer Thomas Spratte, barreling down a road near Mr. Burden's home, nearly hit Mr. Burden while he rode his bike. When Mr. Burden gained the officer's attention, Officer Spratte stated to Mr. Burden, "why do you gotta act like a child," and yelled that "no one gives a shit" that there were witnesses to his nearly hitting Mr. Burden with the car. Before driving away, he then referred to Mr. Burden as a "fucking pussy[.]"

**ANSWER:    Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

16.    When Mr. Burden stated that he planned to make a complaint, Officer Spratte responded, "[d]o you think that scares us?... nothing's going to happen." This misconduct and response were consistent with the culture of impunity caused and enabled by the City of Chicago's deficient training and discipline mechanisms and the CPD's code of silence.

**ANSWER:    Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

17.    *Incident No. 2*: On April 30, 2018, as Mr. Burden stood on a street in his neighborhood, enjoying a Spring day, Officers Bernadette Kelly and Gabriela Santana descended upon him, wholly lacking any reasonable suspicion or probable cause.

**ANSWER:    Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

18.    Officers Kelly and Santana turned on their vehicle's squad lights, and screamed for Mr. Burden to put his hands up. Mr. Burden complied, reasonably fearing that if he asserted his rights or questioned the officers he would be shot and killed.

**ANSWER:    Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

19.     Despite repeated pleas from Mr. Burden for the officers to remove the tightened handcuffs cutting into his wrists, Officers Santana and Kelly mocked him repeatedly and told him there were only Black people in Englewood to "fuck with"—causing Mr. Burden fear, humiliation, and emotional distress. Officers Kelly and Santana then proceeded to search his car, including opening the console and trunk, all without probable cause. These actions were consistent with the Chicago Police Department's systemic, *de facto* policy of policing based on racial profiling and racial animus.

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

20.     Shocked and panicked from the interaction, Mr. Burden called 911 and was instructed to go to the 7th District police station to file a report. Upon arriving, however, Desk Sergeant Fenton laughed at Mr. Burden and told him he wouldn't take a complaint—part and parcel of the Chicago Police Department's code of silence and deeply entrenched failure to discipline wrongdoing.

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

21.     Mr. Burden filed a complaint with the City's Civilian Office of Police Accountability ("COPA") against Officers Kelly and Santana for their misconduct, and against Desk Sergeant Fenton for his refusal to take Mr. Burden's complaint.

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

22.     The COPA investigation of Officers Kelly and Santana's conduct toward Mr. Burden confirmed that the Officers handcuffed detained Mr. Burden and searched his vehicle, all without proper probable cause and in violation of the Fourth Amendment. The same COPA investigation found that Sergeant Fenton had in fact refused to take Mr. Burden's complaint.

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

23.     *Incident No. 3:* A mere two weeks later, Officer Barrios from the same District continued the Chicago Police Department's torment of Mr. Burden by targeting him and yelling "fuck you" in his face repeatedly while he was in front of his home.

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

24.     *Incident No. 4:* Subsequently, on April 22, 2019, Mr. Burden requested police assistance after he had been assaulted by a stranger on a train, but officers laughed at him and refused to help him.

**ANSWER:     Defendant Officers deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

25.      *Incident No. 5:* The very next day, Officers Lonnie Felters and Michael Bennett pulled Mr. Burden over without probable cause and Officer Felters told Mr. Burden he "looked like a terrorist." (Mr. Burden occasionally wears a headscarf and was doing so on the date of this interaction.)

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

26.      Like the other incidents alleged in this Complaint, this interaction reflects the ongoing pattern of CPD officers--all or most of them from District 7--physically and verbally targeting Mr. Burden. These incidents increased Mr. Burden's anxiety and depression and caused him severe emotional distress.

**ANSWER:     Defendant Officers deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

27.      Mr. Burden submitted another COPA complaint, this time against Officers Felters and Bennett. Once more, the investigation confirmed misconduct, finding that one of these Chicago police officers had called Mr. Burden a terrorist and engaged in bias-based policing, which is consistent with the City's policies, practices, customs, and usages of unconstitutional policing based on racial and other biases. The investigation also found that both officers (a) improperly seized Mr. Burden by conducting a traffic stop without justification and (b) failed to properly document the traffic stop.

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

28.      *Incident No. 6:* On July 19, 2019, Chicago police officers Hasenfang and Chulumovich targeted Mr. Burden in his neighborhood, pulling him over, detaining him, and searching his person and vehicle, while mocking him—all without any probable cause.

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

29.      Before he targeted Mr. Burden, Officer Hasenfang already had, as of 2015, a minimum of 97 misconduct allegations against him, but with only two sustained.

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

30.     Mr. Burden filed another COPA complaint and, for the third time in approximately 15 months, the investigation concluded that Mr. Burden's rights had been violated by members of the Chicago Police Department.

**ANSWER:    Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

31.     ***Incident No. 7:*** As a result of the ongoing police harassment, Mr. Burden began to limit—and to this day he continues to limit—his time outside of the home. When he does leave home, Mr. Burden has often opted to walk instead of drive for fear that he'll be subjected to racist harassment or violence by the Chicago Police Department. Mr. Burden's crippling distress and fear of the Chicago police has put significant strain on his marriage, as symptoms of PTSD often limited Mr. Burden's ability to engage in everyday activities.

**ANSWER:    Defendant Officers deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

32.     On May 28, 2020, as the global COVID-19 pandemic was in full swing, Mr. Burden garnered the courage to leave his home and go to the store. Too afraid of the Chicago Police to drive, Mr. Burden went to the store on foot. As he approached his neighborhood convenience store, more than five officers jumped out of an unmarked police vehicle and detained him, again racially profiling and targeting Mr. Burden.

**ANSWER:    Defendants Torres and Baker admit they detained Plaintiff on May 28, 2020, but deny Plaintiff has fully and/or accurately stated the events of May 28, 2020 and therefore deny the remainder of the allegations in this paragraph.**

**Defendants Kats and Dicera lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

33.     The officers, as a group, intentionally refused to turn on their body worn cameras ("BWC") and Defendant Officers Torres and Baker proceeded to hold Mr. Burden on the street and place him in handcuffs so tightly that his wrists began to bleed. One Defendant Officer punched Mr. Burden in the ribs. The officers searched his person and verbally berated him, all while refusing to wear masks and potentially exposing Mr. Burden to a deadly virus.

**ANSWER:    Defendants Torres and Baker deny the allegations contained in this paragraph.**

**Defendants Kats and Dicera lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

34.     Mr. Burden also complained then that the handcuffs were too tight and Defendant Officers made no action to remedy the issue, though Mr. Burden was crying from the pain and trauma.

**ANSWER:     Defendants Torres and Baker deny the allegations contained in this paragraph.**

**Defendants Kats and Dicera lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

35.     These officers' actions in singling out Mr. Burden using generalized allegations of "robberies in the area" evince policing based on discriminatory motive and intent. Among other things, White individuals in the area were not similarly profiled and harassed.

**ANSWER:     Defendants Torres and Baker deny the allegations contained in this paragraph.**

**Defendants Kats and Dicera lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

36.     A COPA investigation confirmed that the officers (a) turned off their BWCs and (b) stopped Mr. Burden without probable cause.

**ANSWER:     Defendants Torres and Baker lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding a COPA finding, but deny any wrongdoing or misconduct alleged herein.**

**Defendants Kats and Dicera lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

37.     Officer Baker, has, at minimum, nine misconduct complaints against him, only two of which were sustained.

**ANSWER:     Defendant Baker admits he has had two sustained CRs, and lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations, and further denies any wrongdoing or misconduct alleged herein.**

**Defendants Torres, Dicera, and Kats lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

38.     Officer Torres has at a minimum four use of force reports—a greater volume of use force reports than 91% of other Chicago police officers.

**ANSWER:     Defendant Torres admits he has completed at minimum 4 tactical response reports, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.  Answering further, he denies any wrongdoing or misconduct alleged herein.**

**Defendants Dicera, Baker, and Kats lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

39.     *Incident No. 8:* The harassment and rampant Fourth and Fourteenth Amendment violations of Mr. Burden continued on January 5, 2021. Mr. Burden parked his car near a gas station pump and briefly went inside the station, leaving his blinkers on.

**ANSWER:     Defendants Kats and Dicera deny the allegations in this paragraph are a true and accurate depiction of the events as they occurred, and therefore deny the allegations in this paragraph.**

**Defendants Torres and Baker lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

40.     As he exited the gas station, Defendant Officers Kats, Dicera and J. Doe Officers swarmed Mr. Burden, violently grabbed him by the hair, and proceeded to handcuff him, slamming him onto the hood of a squad car. The Defendant Officers handcuffed Mr. Burden so tightly it broke the skin of his wrist.

**ANSWER:     Defendants Kats and Dicera deny the allegations in this paragraph are a true and accurate depiction of the events as they occurred, and therefore deny the allegations in this paragraph.**

**Defendants Torres and Baker lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

41.     These Officers put him in the squad car and drove him to the District 7 police station, where Defendant Dicera informed Mr. Burden that he was being arrested for "obstruction of identification," an apparent reference to 720 ILCS 5/31-4.5, "Obstructing Identification."

**ANSWER:     Defendants Dicera and Kats admit the allegations contained in this paragraph.**

**Defendants Torres and Baker lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

42.     Mr. Burden, however, did not furnish a false or fictitious name or other personally identifiable information, was not previously lawfully detained or arrested, and there was not good cause to believe he was a witness to a criminal offense. As such, none of the statute's requirements were met. 720 ILCS 5/31-4.5.

**ANSWER:     Defendants Dicera and Kats deny Plaintiff was not previously lawfully detained and therefore denies the allegations in this paragraph.**

**Defendants Torres and Baker lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

43.     These Officers wholly lacked any reasonable suspicion or probable cause to detain and arrest Mr. Burden.

**ANSWER:     Defendants Kats and Dicera deny the allegations contained in this paragraph.**

**Defendants Torres and Baker lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

44.     Officer Dicera has at a minimum five misconduct complaints against him, zero of which were sustained.

**ANSWER:     Defendant Dicera admits he has zero sustained complaints against him and lacks knowledge or information sufficient to form a basis as to the truth of the reminder of allegations contained in this paragraph. Answering further, Defendant Dicera denies any wrongdoing or misconduct alleged herein.**

**Defendants Torres, Baker, and Kats lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

45.     *Incident No. 9:* Mr. Burden was again harassed by Chicago Police on March 21, 2021, just over two months after the immediately prior incident. On that date, Mr. Burden was parked outside his home when J. Doe Officers demanded his identification and then, without lawful justification, proceeded to handcuff him, search his wallet, and seize his Firearm Owners Identification ("FOID") card. While Mr. Burden was not arrested this time, he has since attempted to retrieve his FOID card from the Chicago Police Department, but it has not complied and instead has denied any wrongdoing.

**ANSWER:    Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.  Answering further, Defendant Officers deny any wrongdoing or misconduct alleged herein.**

46.    ***Incident Nos. 10-17:*** An attorney for the City of Chicago has confirmed that in recent years, in addition to the nine incidents with the police alleged above, Mr. Burden has been stopped on at least eight other occasions. During these additional eight stops, the Chicago police failed to issue Mr. Burden stop receipts, as required. Despite one or more FOIA requests from Mr. Burden's counsel, the City and CPD failed to turn over any records related to these stops.

**ANSWER:    Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.  Answering further, Defendant Officers deny any wrongdoing or misconduct alleged herein.**

47.    These detentions and stops have occurred primarily on the South Side of Chicago in District 7, most recently in March of 2021, as alleged above.

**ANSWER:    Defendant Officers admit their personal interactions with Plaintiff occurred on the South side of Chicago, and they  lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

48.    These incidents have upended Mr. Burden's life and are such a regular occurrence that Mr. Burden frequently recognizes individual Defendant Officers, who recognize him and proceed to stop and detain him, continuing their ongoing harassment.

**ANSWER:    Defendant Officers deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph. Defendant Officers lack information or knowledge sufficient to form a belief as to the allegations contained in this paragraph as it pertains to the J. Doe Officers 1-5.**

49.    Mr. Burden is constantly surveilled and harassed by police. He has been followed by police several times without arrest, in addition to the many instances in which Mr. Burden has been arrested or otherwise seized.

**ANSWER:    Defendant Officers deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

50.    During Mr. Burden's interactions with Chicago police officers, he has been subjected to brutal, disrespectful, humiliating and inhumane treatment. Mr. Burden has repeatedly told Defendant Officers that he was being targeted and harassed for being Black. Mr. Burden has been shoved onto the hood of vehicles, had his hair violently pulled, and been punched in the ribs, among other degrading and physically and emotionally damaging treatment.

11

**ANSWER:   Defendant Officers deny the allegations contained in this paragraph as it pertains to them; and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph. Defendant Officers lack information or knowledge sufficient to form a belief as to the allegations contained in this paragraph as it pertains to the J. Doe Officers 1-5.**

51.     Defendant Officers were on duty at all times relevant to this Complaint and engaged in the complained of conduct in the course and scope of their employment.

**ANSWER:   Defendant Officers admit they were on duty and acting in the course and scope of their employment with Chicago Police Department at all times relevant hereto, but deny the remaining allegations in this paragraph and further deny any wrongdoing or misconduct alleged herein. Defendant Officers lack information or knowledge sufficient to form a belief as to the allegations contained in this paragraph as it pertains to the J. Doe Officers 1-5.**

52.     The foregoing detentions and stops are not only cruel and shocking, but also entirely avoidable. Mr. Burden has filed multiple COPA complaints, and COPA investigations have sustained various of these complaints. Indeed, the Chicago Police Department, including its District 7 police station, have been on notice for years of the Chicago police officers' ongoing physical and verbal harassment of Mr. Burden.

**ANSWER:   Defendant Officers deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

53.     Moreover, in February 2021, Mr. Burden, through his counsel, sent a litigation hold letter to the City of Chicago's Federal Civil Rights Litigation Division, the Chicago Police Department, and other City agencies.

**ANSWER:   Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

54.     As a direct and proximate result of the acts or omissions of one or more Defendant Officers alleged above, Mr. Burden suffered damages including, but not limited to, physical injury humiliation, mental anguish, and emotional distress.

**ANSWER:   Defendant Officers deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph. Defendant Officers lack information or knowledge sufficient to form a belief as to the allegations contained in this paragraph as it pertains to the J. Doe Officers 1-5.**

55.     Mr. Burden has been traumatized by this constant harassment and surveillance, and by the repeated violations of his person, dignity and liberty. As a result of the foregoing incidents, he suffers from anxiety, stress, night terrors and depression, and has symptoms of PTSD when he thinks of these incidents or sees police on the streets.

**ANSWER:     Defendant Officers deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

56.     Mr. Burden has been to therapy to address the trauma inflicted by these repeated violations, and he has been prescribed medication for the resulting anxiety and night terrors.

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

57.     CPD polices in a racially discriminatory manner. Ample publicly available data supports this allegation. For example, an Illinois Department of Transportation study showed that Chicago police stopped Black individuals for purported traffic infractions at a rate approximately seven times more frequently than white individuals.[2] Similarly, Chicago police searched Black individuals' vehicles almost three times as frequently as the vehicles of white individuals.[3]

**ANSWER:     Defendant Officers deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

58.     Similarly, the Illinois Department of Transportation found that in 2020, Black individuals were subjected to pedestrian stops by Chicago police approximately nine times more frequently than were white individuals.[4]

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

59.     The American Civil Liberties Union of Illinois reported in 2015 that Black individuals are subjected to police stops at a rate substantially higher proportionally than are their white counterparts.[5]

---

[2] "Illinois Traffic and Pedestrian Stop Study: 2020 Annual Report Traffic Stops Part II," Illinois Department of Transportation, 200 https://idot.illinois.gov/Assets/uploads/files/TransportationSystem/Reports/Safety/Traffic-Stop-Studies/2020/FINAL-- Illinois%20Traffic%20and%20Pedestrian%20Stop%20Study%202020%20-%20Part%20II%20Traffic--6-24-21.pdf

[3] Id.

[4] "Illinois Traffic and Pedestrian Stop Study: 2020 Annual Report Pedestrian Stops Part II," Illinois Department of Transportation, 46 https://idot.illinois.gov/Assets/uploads/files/Transportation-System/Reports/Safety/Traffic-StopStudies/2020/FINAL-- Illinois%20Traffic%20and%20Pedestrian%20Stop%20Study%202020%20-%20Part%20II%20Pedestrian--6-24-21.pdf.

[5] "Stop and Frisk in Chicago," ACLU of Illinois, 8 https://www.aclu-il.org/sites/ default/files/wpcontent/ uploads/ 2015 /03/ACLU_StopandFrisk_6.pdf.

**ANSWER:    Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

60.    CPD's discriminatory actions extend to hiring as well, with a report by the Office of the Inspector General of the City of Chicago showing that Black applicants to the force were offered progression in the application process proportionately less than members of other races and ethnic groups, who increased their proportionate representation from the application stage to later rounds of hiring.[6]

**ANSWER:    Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

61.    Racially discriminatory policing is evident in use of force data as well. Reports concerning publicly available data, and studies compiled by journalistic outlet The Intercept, show that Chicago police use force against Black individuals at a rate grossly disproportionate to the population demographics of the City. [7] Similarly, racially discriminatory policing in the context of uses of force is evidenced by the DOJ's 2017 report on the Chicago Police Department.[8]

**ANSWER:    Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

62.    For its part, the City's Police Accountability Task Force noted that "CPD's own data gives validity to the widely held belief the police have no regard for the sanctity of life when it comes to people of color."

**ANSWER:    Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

63.    The City of Chicago and CPD fail to provide adequate continuing training on the use of force.

---

[6] "OIG Finds That the Chicago Police Department's Multi-Stage Hiring Process Reduces Representation of Minority Candidates from Initial Application to Point of Hire," Office of the Inspector General for the City of Chicago, https://igchicago.org/2021/07/08/oig-finds-that-thechicago-police-departments-multi-stage-hiring-process-reduces-representation-of-minoritycandidates-from-initial-application-to-point-of-hire/.

[7] "Chicago Police Are 14 Times More Likely to Use Force Against Young Black Men Than Against Whites," Andrew Fan, The Intercept, https://theintercept.com/2018/08/16/chicagopolice-misconduct-racial-disparity/.

[8] "Investigation of the Chicago Police Department," United States Department of Justice, 15, https://perma.cc/JZ6Q-659Y. ("Our investigation found also that CPD has tolerated racially discriminatory conduct that not only undermines police legitimacy, but also contributes to the pattern of unreasonable force. The pattern or practice of unreasonable force, coupled with the recurrence of unaddressed racially discriminatory conduct by officers further erodes community trust and police effectiveness.")

**ANSWER:** **Defendant Officers deny the allegations in this paragraph as to them, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

64.     Indeed, the United States Department of Justice ("DOJ"), in a January 13, 2017 report summarizing the findings of its year-long investigation of the CPD (the "DOJ Report"), concluded that CPD "engages in a pattern or practice of unconstitutional use of force."

**ANSWER:** **Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

65.     The DOJ Report explains that this pattern of unlawful conduct stems from, without limitation, the fact that CPD officers "do not receive the quality or quantity of training" necessary to make proper decisions regarding the degree of force that is appropriate in any given situation. As the DOJ Report observed, "CPD has not provided officers with adequate guidance to understand how and when they may use force, or how to safely and effectively control and resolve encounters to reduce the need to use force."

**ANSWER:** **Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

66.     The DOJ Report notes that one Chicago Police Academy training on use of force "consisted of a video made decades ago, which was inconsistent with both current law and CPD's own policies."

**ANSWER:** **Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

67.     The impact of this woefully inadequate training was apparent when an interview of graduates from the Chicago Police Academy revealed that "only one in six [graduates] … came close to properly articulating the legal standard for use of force."

**ANSWER:** **Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

68.     According to the DOJ Report, a review of hundreds of CPD use of force incidents "revealed CPD officers engaging in dangerous tactics that indicate they do not remember or were never taught basic police skills" governing the use of force. This "lack of continuing training has a direct connection to the improper use of force in patrol and other field assignments."

**ANSWER:** **Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

69.     The City of Chicago and CPD also fail to require officers to accurately report uses of force, which means there is no opportunity to meaningfully assess whether or how training should be modified to improve outcomes in the future.

**ANSWER:     Defendant Officers deny the allegations contained in this paragraph.**

70.     Changes to CPD use of force training initiated after the release of the DOJ Report have not addressed key deficiencies. The training does not adequately explain the proper constitutional standard for determining if use of force is reasonable. And it fails to provide any indepth analysis or discussion of use of force "examples" from which officers could learn why certain uses of force are constitutional and others are not.

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

71.     Complaints of excessive force against CPD officers underscore the inadequacies in use of force training. In the years following the release of the DOJ Report, members of the public have continued to file—at alarming rates—complaints of CPD officers using excessive force by, without limitation, shoving, pulling, punching, choking, and slamming citizens during the course of a stop or arrest.

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

72.     Further, even though de-escalation and force mitigation principles are purported to be key features of CPD's "revised" use of force policy, according to COPA, the new training "provide[s] minimal discussion of the reasons and tools for de-escalation and force mitigation[,]" Indeed, the tone, rhetoric, and demeanor of the trainers charged with implementing CPD's new training module have given the impression that there is no need to change CPD's culture around use of force incidents.

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

73.     The City of Chicago and CPD are and have been on notice of these ongoing deficiencies in use of force training. As recently as June 2020, the independent monitor overseeing the federal consent decree to reform the CPD reported that the Chicago Police Department was not complying with its obligation to implement training that would ensure reasonable and constitutional use of force.

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

74.     In a June 5, 2020 letter to the same independent monitor, commenting on the monitor's report, the Attorney General of Illinois concluded that "CPD continues to be reluctant

to change its culture as it relates to use of force and to hold officers accountable for excessive force," and that, in response to use of force incidents, the Chicago Police Department has not made "substantive changes to CPD policy … or training[.]"

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

75.     This failure by the City to adequately train its officers on reasonable use of force— despite knowledge that CPD officers engage in a pattern or practice of excessive force— amounts to deliberate indifference to violations of constitutional rights.

**ANSWER:     Defendant Officers deny the allegations in this paragraph as to them, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

76.     CPD teaches its officers not to violate the "code of silence." Officers are instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

**ANSWER:     Defendant Officers deny the allegations contained in this paragraph.**

77.     The City of Chicago has known about and encouraged this code of silence in the CPD at all times relevant to this Complaint, and has not taken action, or action sufficient, to address it.

**ANSWER:     Defendant Officers deny the allegations in this paragraph as to them, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

78.     For example, in 2012, in the case of Obrycka v. City of Chicago, No. 07-cv-2372 (N.D. Ill.), a federal jury found that the City "had a widespread custom or practice of failing to adequately investigate and/or discipline its officers and/or of a police code of silence."

**ANSWER:     Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

79.     Likewise, the 2017 DOJ Report observed that both the City of Chicago and CPD were aware of the code of silence within CPD, for example:

      a.  "Mayor [Rahm Emanuel] has acknowledged that a 'code of silence' exists in the CPD, and his opinion is shared by current officers and former high-level CPD officials interviewed during our investigation."

    b.  "[A]ttempts to hold officers accountable are also frustrated by police officers' code of silence. The City, police officers, and leadership within CPD and its police officer union acknowledge that a code of silence among Chicago police officers exists, extending to lying and affirmative efforts to conceal evidence."

**ANSWER:**    **Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and each subparagraph herein.**

80.    In April 2016, as part of her duties as chair of Mayor Emanuel's Police Accountability Task Force, current-Mayor of Chicago Lori Lightfoot concluded: "[T]he code of silence is not just an unwritten rule, or an unfortunate element of police culture past and present. The code of silence is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

**ANSWER:**    **Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

81.    In January 2020, Chicago's then-Interim Police Superintendent Charlie Beck explicitly acknowledged that "of course" there is a code of silence in the CPD.

**ANSWER:**    **Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

82.    In October 2020, Chicago's then-Police Superintendent David Brown again acknowledged a code of silence in the CPD, conceding that there is a valid criticism of "this big culture of protecting each other" and that the criticism of the culture is "accurate."

**ANSWER:**    **Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

83.    The Code of Silence was active and at work in Officers' wrongful handling of Mr. Burden in multiple ways, including but not limited to:

    a.  Failing to activate body cameras on multiple occasions;
    b.  Failing to provide documentation of stops as required;
    c.  Causing Defendant Officers to use excessive force and other constitutional violations without fear of rebuke or consequence;
    d.  Causing Officer Spratte to remark that he had no fear of a COPA investigation;
    e.  Causing CPD Officers to fail to intervene to protect Mr. Burden in the face of their colleagues' constitutional violations; and
    f.  Causing CPD to fail to provide complete records of Mr. Burden's stops in response to one or more FOIA requests and requests to the City's Corporation Counsel.

**ANSWER: Defendant Officers deny the allegations contained in this paragraph as they pertain to them and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

84. The City of Chicago and its CPD have failed to discipline Chicago police officers and institute adequate disciplinary systems.

**ANSWER: Defendant Officers deny the allegations contained in this paragraph as it pertains to them, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

85. The DOJ Report noted that CPD's disciplinary mechanisms contained "numerous entrenched, systemic policies and practices that undermine police accountability," and concluded that the City of Chicago's discipline system "lacks integrity" and "does not effectively deter misconduct."

**ANSWER: Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

86. The DOJ Report also noted that when potential misconduct is at issue police disciplinary investigators rarely "ask probing questions" of police officers.

**ANSWER: Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

87. This failure to ensure discipline is imposed and is adequate naturally works in tandem with the code of silence to shield officers from accountability and leads to misconduct like the excessive force, failure to intervene and other police misconduct alleged here.

**ANSWER: Defendant Officers deny they used excessive force, failed to intervene or engaged in misconduct and further deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

88. COPA's disciplinary recommendations are often subject to approval by other entities, such as the Superintendent of Police and the Police Board, an intermediary oversight entity which retains the ability to rule on COPA recommendations.

**ANSWER: Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

89. Further, when COPA does impose discipline, this discipline is insufficiently severe to deter future misconduct.

**ANSWER:** **Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

90.    At the time the Defendant Officers used excessive force and committed other violations against Mr. Burden, the City of Chicago's policymakers knew that CPD's policies and customs for disciplining and controlling its officers were inadequate and caused police misconduct.

**ANSWER:** **Defendant Officers deny they used excessive force or committed "other violations" against Mr. Burden, and further deny the allegations contained in this paragraph as they pertain to them, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

91.    Despite this knowledge, policymakers failed to act to remedy these problems, again reflecting deliberate indifference to violations of constitutional rights.

**ANSWER:** **Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Answering further, Defendant Officers deny any wrongdoing or misconduct alleged herein.**

## COUNT I
### Unreasonable Seizure against Named Defendant Officers
### (42 U.S.C. § 1983 and the Fourth Amendment)

92.    Plaintiff re-alleges paragraphs 1-91 as though fully set forth herein.

**ANSWER:** **Defendant Officers reassert their answers contained in foregoing paragraphs and incorporate their answers herein, as though fully stated.**

93.    On or about May 28, 2020, January 5, 2021, and March 21, 2021, Defendant Officers Baker, Torres, Kats, and Dicera, and J. Doe Officers stopped and detained Plaintiff without probable cause that Plaintiff had committed, was committing or was going to commit any criminal act.

**ANSWER:** **Defendant Officers deny this paragraph fully and accurately states the events of May 28, 2020 and January 5, 2021, and therefore deny the allegations in this paragraph. Answering further, Defendant Officers lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph as to March 21, 2021.**

94.    Plaintiff was also stopped without probable cause on several previous occasions, and these acts, when paired with other stops of Plaintiff, and as caused by the continuous customs and practices of the Defendant City described in Plaintiff's Monell claims (Count VI)

and Equal Protection claims (Count IV), constitute a continuing violation and continuing harm under the law and are thus proper [grounds for relief and] for this Court's consideration. [9]

**ANSWER:** **Defendant Officers deny this is an accurate statement of the law and therefore deny the allegations contained in this paragraph. Answering further, Defendant Officers deny any allegations of wrongdoing or other misconduct.**

95.     The conduct of Defendant Officers, alleged above, constituted unreasonable seizures in violation of the Fourth Amendment to the United States Constitution.

**ANSWER:** **Defendant Officers deny the allegations contained in this paragraph as they pertain to them. Defendant Officers lack information or knowledge sufficient to form a belief as to the allegations contained in this paragraph as it pertains to the J. Doe Officers 1-5.**

96.     The misconduct described in this Count was objectively unreasonable and was undertaken willfully and wantonly with reckless disregard for the rights and safety of Plaintiff.

**ANSWER:** **Defendant Officers deny the allegations contained in this paragraph.**

97.     Defendant Officers were acting under color of state law and in the scope of their employment at the times of these constitutional violations.

**ANSWER:** **Defendant Officers admit they were acting under the color of state law and in the scope of their employment at the times alleged, but deny any constitutional violations and further deny any allegations of misconduct or wrongdoing alleged herein. Defendant Officers lack information or knowledge sufficient to form a belief as to the allegations contained in this paragraph as it pertains to the J. Doe Officers 1-5.**

98.     The actions of Defendant Officers directly and proximately caused Plaintiff to suffer, without limitation, severe emotional distress, mental anguish, and financial loss.

**ANSWER:** **Defendant Officers deny the allegations contained in this paragraph as to them. Defendant Officers lack information or knowledge sufficient to form a belief as to the allegations contained in this paragraph as it pertains to the J. Doe Officers 1-5.**


**COUNT II**
**Excessive Force against Defendant Officers**
**(42 U.S.C. § 1983 and the Fourth Amendment)**

---

[9] "The continuing violation doctrine is ... applicable when the state actor has a policy or practice that brings with it a fresh violation each day." Savory v. Lyons, 469 F.3d 667, 672 (7th Cir. 2006); "To trigger the continuing violation doctrine in the context of an Equal Protection claim, a plaintiff "must allege both the existence of an ongoing policy of discrimination and some nontime-barred acts taken in furtherance of that policy." Lucente v. Cty. of Suffolk, 980 F.3d 284, 309 (2d Cir. 2020).

99.     Plaintiff re-alleges paragraphs 1-91 as though fully set forth herein.

**ANSWER:     Defendant Officers reassert their answers contained in foregoing paragraphs and incorporate their answers herein, as though fully stated.**

100.     On or about May 28, 2020, Defendant Officers Baker and Torres applied handcuffs too tightly and did not act when Mr. Burden complained. These acts and omissions were without lawful justification.

**ANSWER:     Defendants Baker and Torres deny the allegations contained in this paragraph.**

**Defendants Kats and Dicera lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

101.     On January 5, 2021, Defendant Officers Kats and Dicera pulled Mr. Burden's hair, punched him in the ribs, and slammed him against a police car, without lawful justification to do so.

**ANSWER:     Defendants Kats and Dicera deny the allegations contained in this paragraph.**

**Defendants Baker and Torres lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

102.     The conduct of Defendant Officers, alleged above, constituted unreasonable uses of force in violation of the Fourth Amendment to the United States Constitution.

**ANSWER:     Defendant Officers deny the allegations contained in this paragraph as it pertains to them. Defendant Officers lack information or knowledge sufficient to form a belief as to the allegations contained in this paragraph as it pertains to the J. Doe Officers 1-5.**

103.     The misconduct described in this Count was objectively unreasonable and was undertaken willfully and wantonly with reckless disregard for the rights and safety of Plaintiff.

**ANSWER:     Defendant Officers deny the allegations contained in this paragraph.**

104.     Defendant Officers were acting under color of state law and in the scope of their employment at the times of these constitutional violations.

**ANSWER:     Defendant Officers admit they were acting under the color of state law and in the scope of their employment at the times alleged, but deny any constitutional violations**

22

**and further deny any allegations of misconduct or wrongdoing alleged herein. Defendant Officers lack information or knowledge sufficient to form a belief as to the allegations contained in this paragraph as it pertains to the J. Doe Officers 1-5.**

105.    The actions of Defendant Officers directly and proximately caused Plaintiff to suffer, without limitation, physical injury, severe emotional distress, mental anguish, damage to reputation, and loss of liberty.

**ANSWER:    Defendant Officers deny the allegations contained in this paragraph as they pertain to them. Defendant Officers lack information or knowledge sufficient to form a belief as to the allegations contained in this paragraph as it pertains to the J. Doe Officers 1-5.**

## COUNT III
### Illegal Seizure of Property against J. Doe Officers
### (42 U.S.C. § 1983 and the Fourth Amendment)

**Defendant Officers make no answer to this Count III, as it is not brought against them. To the extent said allegations can be said to be against them, said allegations are denied.**

## COUNT IV
### Violation of Equal Protection against Named Defendant Officers
### (42 U.S.C. § 1983 and the Fourteenth Amendment)

**Defendant Officers make no answer to this paragraph as it is subject to a partial Motion to Dismiss. *See* ECF 37.**

## COUNT V
### Failure To Intervene against Defendant Officers
### (42 U.S.C. § 1983)

**Defendant Officers make no answer to this paragraph as it is subject to a partial Motion to Dismiss. *See* ECF 37.**

## COUNT VI:

**Monell: Failure to Train, Failure to Discipline, Fostering of a Code of Silence, and
Bias-Based Policing against the City of Chicago
(42 U.S.C. § 1983)**

Defendant Officers make no answer to this Count VI, as it is not brought against
them. To the extent said allegations can be said to be against them, said allegations are
denied.

**COUNT VII
Continuing Tort: Assault and Battery against Defendant Officers
(Illinois State Law Claim)**

Defendant Officers make no answer to this paragraph as it is subject to a partial
Motion to Dismiss. *See* ECF 37.

**COUNT VIII
Continuing Tort: Intentional Infliction of Emotional Distress against Defendant Officers
(Illinois State Law Claim)**

Defendant Officers make no answer to this paragraph as it is subject to a partial
Motion to Dismiss. *See* ECF 37.

**COUNT IX
Respondeat Superior against the City of Chicago
(Illinois State Law Claim)**

Defendant Officers make no answer to this Count IX, as it is not brought against
them. To the extent said allegations can be said to be against them, said allegations are
denied.

**COUNT X
Indemnification against the City of Chicago
(Illinois State Law Claim — 745 ILCS 10/9-102)**

Defendant Officers make no answer to this Count X, as it is not brought against
them. To the extent said allegations can be said to be against them, said allegations are
denied.

## JURY DEMAND

Defendant Officers respectfully demand trial by jury on all counts so triable.

## <u>AFFIRMATIVE DEFENSES</u>

1. Defendant Officers are government officials, namely police officers, who perform discretionary functions. At all times material to the events alleged in Plaintiff's Amended Complaint, a reasonable police officer objectively viewing the facts and circumstances that confronted said Defendant Officers could have believed their actions to be lawful, in light of clearly established law and the information that said Defendant Officers possessed. Defendant Officers, therefore, are entitled to qualified immunity as a matter of law. *See Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 2000).

2. Defendant Officers cannot be held liable for Plaintiff's 42 U.S.C. § 1983 claims unless each individually caused or participated in an alleged constitutional deprivation because individual liability for damages under 42 U.S.C. § 1983 is predicated upon personal responsibility. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

3. To the extent Plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that Plaintiff had a duty to mitigate his claimed injuries and damages, commensurate with the degree of failure to mitigate attributed to Plaintiff by the jury in this case.

4. Indemnification is not a cause of action, but a theory of recovery. The indemnification provision does not create direct liability on the part of the City or its employees, but creates liability on the City to indemnify after a judgment has been recovered against an employee. See *Arnolt v. City of Highland Park*, 52 Ill. 2d 27 (1972); *Glover v. City of Chicago*, 106 Ill. App. 3d 1066, 107 (1982).

5. Under Section 201 of the Illinois Tort Immunity Act ("Tort Immunity Act"), Defendant Officers are not liable for injuries arising out of the exercise of discretionary acts. 745 ILCS 10/2-201 (2006).

6. As to any state law claim alleged by Plaintiff, a public employee acting within the scope of his or her employment is not liable for any injury caused by the act or omission of another person. 745 ILCS 10/2-204. Defendant Officers are public employees, who at all times material to the events alleged in Plaintiff's Amended Complaint, acted within the scope of their employment and are, therefore, not liable for the acts or omissions of other people.

7. To the extent any employee or agent of the City was acting within the scope of his or her employment, that employee or agent is not liable for his or her acts or omissions in the execution or enforcement of the law, unless such act or omission constitutes wilful and wanton conduct. 745 ILCS 10/2-202 (2010).

8.  Plaintiff is not entitled to attorney's fees for his state law claims. *See Pennsylvania Truck Lines, Inc. v. Solar Equity Corp.*, 882 F.2d 221, 227 (7th Cir. 1989); *Kerns v. Engelke*, 76 Ill. 2d 154, 166, 390 N.E.2d 859, 865 (1979); *Miller v. Pollution Control Board*, 267 Ill. App. 3d 160, 171, 642 N.E.2d 475, 485 (4th Dist. 1994).

9.  The statute of limitations for Section 1983 actions brought in the state of Illinois is two years. *Wilson v. Garcia*, 471 U.S. 261, 269 (1985); *see also* 735 ILCS 5/13-202. To the extent that Plaintiff alleges any claims under Section 1983 which accrued more than two years prior to his filing of Plaintiff's original complaint those claims are time barred and should be dismissed.

10. The statute of limitations for any claim under Illinois state law Plaintiff is one year. 745 ILCS 10/8-101. To the extent that Plaintiff's claims under state law accrued more than one year prior to his filing of Plaintiff's original complaint, those claims are time barred and should be dismissed.

11. Plaintiff has failed to state a cause of action under Fed. R. Civ. P. 12(b)(6) for equal protection, failure to intervene, assault and battery, and intentional infliction of emotional distress. Assault and battery and intentional infliction of emotional distress are not continuing torts under the law.

12. To the extent Plaintiff attempts to bring a Fourteenth Amendment claim regarding his seizure, detention, or use of force by the Defendant Officers, he has not raised a cognizable claim. See *Graham v. Connor*, 490 U.S. 386, 395 (1989) (Evaluation of excessive force in any type of "seizure" claim is analyzed under the Fourth amendment.); *see also Manuel v. City of Joliet,* 137 S. Ct. at 920 (2017). False arrest (*i.e.* unreasonable seizure under the Fourth Amendment) is akin to a claim for false imprisonment. *Wallace v. Kato*, 549 U.S. 384, 389-390, 127 S.Ct. 1091 (2007).

Respectfully submitted,

*/s/ Emily R. Bammel*
Emily R. Bammel
Assistant Corporation Counsel

Allison Romelfanger, Assistant Corporation Counsel Supervisor
Michael Bradtke, Assistant Corporation Counsel
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
Attorney No.: 6323600
(312) 744-3982
(312) 744-6566 (FAX)
**Attorneys for Defendant Officers**

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of **DEFENDANT OFFICERS' ANSWER TO PLAINTIFF'S FIRST AMENDED CIVIL COMPLAINT**, **JURY DEMAND AND AFFIRMATIVE DEFENSES** by causing it to be delivered by electronic means through be e-filing with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, to all parties of record, listed below, on this  6th  day of June 2022.

Daniel Massoglia
First Defense Legal Aid
601 S. California Ave.
Chicago, IL 60612
P: 708-797-3066
E: daniel@first-defense.org

Stephen J. Siegel
Serena G. Rabie
Novack and Macey LLP
100 N. Riverside Plaza
Chicago, IL 60606
P: 312-419-6900
E: ssiegel@novackmacey.com
srabie@novackmacey.com

*/s/ Emily R. Bammel*
Emily R. Bammel
Assistant Corporation Counsel

27