**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AARON BURDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 22-cv-00046 |
| CITY OF CHICAGO, a municipal | ) | |
| corporation; Officer ALBERT TORRES, Star | ) | Honorable Judge John Z. Lee |
| #13067; Officer MOHAMMAD BAKER., | ) | |
| Star #19740; Officer ANDREW KATS, Star | ) | Honorable Magistrate Judge Young B. |
| #17577; Officer ANGELO DICERA Star | ) | Kim |
| #14902; and J. DOE OFFICERS 1-5. | ) | |
| | ) | |
| Defendants. | ) | |

i

**TABLE OF CONTENTS**

I.     P LAINTIFFS T IME-B ARRED C LAIMS S HOULD BE DISMISSED ...................................................**3**

    A.  Any *Monell* claim premised on a time-barred constitutional violation should be dismissed....3

    B.  State law claims arising out of incidents prior to January 4, 2021 are time-barred ..................6

        Assault and Battery are not Continuing Torts .....................................................................7

        Intentional Infliction of Emotional Distress is not a Continuing Tort. ...................................8

II.    P LAINTIFF F AILS T O A DEQUATELY P LEAD A LL THE E LEMENTS OF A M ONELL C LAIM
..................................................................................................................................................**10**

    A.  Plaintiff's failure to train *Monell* claim is not adequately pled. .................................................11

        1.  Plaintiff has not shown a policy or custom of the City failing to train its Police
            Officers ..............................................................................................................13

        2.  Plaintiff has not shown that the City was deliberately indifferent to any training
            deficiencies........................................................................................................15

        3.  Plaintiff has not shown that the City's alleged failure to train was the "moving force"
            behind any of Plaintiff's constitutional injuries.............................................................16

        4.  Plaintiff has not shown that the City has a widespread policy of bias-based policing…

    B.  Plaintiff's Failure to Discipline and Code of Silence claims are not adequately pled............17

        1.  Plaintiff fails to plead Failure to Discipline and Code of Silence .................................17

        2.  Plaintiff fails to plead the deliberate indifference element for failure to discipline and
            code of silence....................................................................................................18

        **3.**  Plaintiff fails to show causation as to failure to discipline and code of silence ...........19

    C.  Plaintiff's *Monell* biased-based policing claims are not adequately pled....................................19

**EXHIBITS IN SUPPORT OF DEFENDANT CITY OF CHICAGO'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

*Exhibit Document*

A. COPA Training Report
B. Consent Decree June 5, 2020, IM Report
C. Department of Justice Report

**TABLE OF AUTHORITIES**

**Statutes & Rules**

42 U.S.C. § 1983 ................................................................................................................11
Tort Immunity Act, 745 ILCS 10/2-109 ............................................................................8

**United States Supreme Court**

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-68 (1970) ............................................11
*Albright v. Oliver*, 510 U.S. 266, 271 (1994) ....................................................................2
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .....................................................................2
*Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397. 400, 404 (1997) ......................10
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .....................................................2
*Bryan Cty*, 520 U.S. at 400 ..............................................................................................10
*Bryan Cty*, 520 U.S. at 407 ..............................................................................................10
*City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) .............................................10
*City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) .................................................1
*Connick v. Thompson*, 563 U.S. 51, 61 (2011) ...............................................................12
*Harris*, 489 U.S. 378 .......................................................................................................24
*Pembaur v. City of Cincinnati*, 475 U.S. 469, 485 (1986) .............................................11

**United States District Court**

*Aaron Blocker v. City of Chicago*, No. 17 CV 00055 (N.D. Ill. Aug. 2, 2017), 2017 WL 3278323 ..............4
*Anderson v. Allen*, 2020 WL 5891406 .............................................................................23
*Barrios v. City of Chicago*, No. 15 C 2648, 2016 WL 164414, at *13 (N.D. Ill. Jan. 14, 2016) .................10
*Carmona v. City of Chicago*, 2018 WL 1468995 (N.D.Ill. March 26, 2018) ..................12
*Cole v. City of Chicago*, No. 21-CV-1640, 2022 WL 19332 ............................................3
*Echols v. Niznik et al.*, No. 20 CV 2226 .........................................................................18
*Galindo v. Chudzik et al.*, 20 CV 3409 ...........................................................................22
*Harell v. City of Chicago*, No. 18 C 7781, 2019 WL 2611036 .........................................2
*Jones v. UPS Ground Freight, Inc.*, 2016 WL 826403 ......................................................6
*Karney v. City of Naperville*, No. 15 C 4608, 2015 WL 6407759, (N.D. Ill. Oct. 22, 2015) .....................10
*Kovacs v. United States*, 614 F.3d 666, 675 (7th Cir. 2010) .............................................9
*Mikolon v. City of Chicago*, No. 14 CV 1852, 2014 WL 7005257, at *4-5 (N.D. Ill. Dec. 11, 2014) .......11
*Obrycka v. City of Chicago*, 07 CV 2372 .......................................................................15
*Quade*, 2008 WL 905187 .................................................................................................24
*Slabon v. Sanchez*, No. 15-CV-8965, 2021 WL 4146909 .................................................7
*Spalding v. Chicago*, 12 C 8777 ......................................................................................16
*State of Illinois v. Chicago*, No. 17 CV 6260 .................................................................19
*State of Illinois*, 17 C 6260 .............................................................................................22
*Taylor v. City of Chicago*, No. 21 CV 2197, 2021 WL 4523203, (N.D. Ill. Oct. 4, 2021) .......................12
*Turner v. City of Chicago*, No. 1:19-CV-00272, 2020 WL 1548957, (N.D. Ill. Mar. 31 2020) .................10
*Wilson v. Edward Hosp.*, 2012 IL 112898 ........................................................................6

**United States Court of Appeals**

*Arlotta v. Bradley Ctr.*, 349 F.3d 517, 522 (7th Cir. 2003) ...........................................11
*Ashafa v. City of Chicago*, 146 F. 3d 459, 461 (7th Cir. 1998) .......................................3
*Bank of Ravenswood v. City of Chicago*, 307 Ill.App.3d 161, 240 Ill.Dec. 385, 717 N.E.2d 478, 484 (1999) ...........................................................................................................................9
*Cf. Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, (2002)...................8

iii

*Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) .......................................................3

*Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th. Cir. 2008), 551 F.3d ...........................19

*Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278, 798 N.E.2d 75, 85 (2003) ...................................7

*First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021).....24

*First Midwest Bank v. City of Chi.*, 988 F.3d 978, 988-989 (7th Cir. 2021) ...........................15

*Gen. Elec. Capital Corp v. Lease Resolution Corp.*, 128 F. 3d 1074, 1081 (7th Cir. 1997) ...........................19

*Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020) .....................................................10

*Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ............................................19

*Hickombottom v. City of Chicago*, 739 F. Supp. 1173, 1177 (N.D. Ill. 1990) ........................10

*Hyon Waste Mgmt. Serv., Inc. v. City of Chicago*, 214 Ill.App.3d 757, 158 Ill.Dec. 335, 574 N.E.2d 129, 133 (1991 ................................................................................................9

*Indiana Ins. Co. v. Machon & Machon, Inc.*, 324 Ill.App.3d (2001) ....................................7

*Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) ............................................................10

*Johnson v. Cook Cty.*, 526 F. App'x 692, 696 (7th Cir. 2013).................................................25

*Lucente v. City of Sulfolk*, 980 F.3d 284 (2d. Cir 2020) ) ........................................................5

*Manuel v. City of Joliet*, 903 F.3d 667, 669 (7th Cir. 2018) ....................................................5

*Marshall v. Buckley*, 644 F. Supp. 2d 1075, 1082 (N.D. Ill. 2009) .........................................5

*McCauley v. City of Chicago*, 671 F.3d 611, 616 (2011) .........................................................2

*Palmquist v. Selvik*, 111 F. 3d 1332, 1345 (7th Cir. 1997)......................................................24

*Pavlik v. Kornhaber*, 326 Ill.App.3d 731, 260 Ill.Dec. 331, 761 N.E.2d 175, 186–87 (2001)....................9

*Powell v. City of Danville*, 253 Ill.App.3d 667, 192 Ill.Dec. 675, 625 N.E.2d 830, 831 (1993) ...........................7

*Reese v. Ice Cream Specialties, Inc.,* 347 F.3d 1007, 1012–14 (7th Cir.2003).........................5

*Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006) ................................................................4

*Strauss v. City of Chicago*, 760 F.2d 765, 768-770 (7th Cir. 1985)........................................10

*Taylor v. Bd. of Educ. of City of Chicago*, 2014 IL App (1st) 123744, ¶ 46, 10 N.E.3d 383, 395 ...........................8

*Walden v. City of Chicago*, 755 F. Supp. 2d 942, 968 (N.D. Ill. 2010)....................................3

*Walden*, 755 F. Supp. 2d at 968 ..............................................................................................5

*Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) .....................................................19

Wilson v. City of Chicago, 6 F.3d 1233, 1240 (1993).............................................................22

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AARON BURDEN, | ) | 22-cv-00046 |
| | ) | |
| Plaintiff, | ) | Judge John Z. Lee |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Young B. Kim |
| CITY OF CHICAGO et al. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT CITY OF CHICAGO'S PARTIAL MOTION TO DISMISS OF PLAINTIFF'S FIRST AMENDED COMPLAINT[1]

Defendant City of Chicago ("the City"), by and through its attorney, Celia Meza, Corporation Counsel of the City of Chicago, pursuant to Federal Rules of Civil Procedure 12(b)(6), respectfully moves this Court to partially dismiss Plaintiff's Fist Amended Complaint for failure to state a claim.

## INTRODUCTION

Plaintiff brings various claims based on interactions that Plaintiff has had with the Chicago Police Officers dating back to 2017. Docket ("Dkt.") 1 and 32. The City first moves to dismiss any federal claims against it based on incidents prior to January 4, 2020 and any state claims based on incidents prior to January 4, 2021 as barred by the statute of limitations. Plaintiff's attempt to assert liability under a continuing-violations theory should be rejected as unsupported under the applicable law. Further, Plaintiff's *Monell* claim should be dismissed under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim because it does not meet the current federal pleading standards.

---

[1] On behalf of the City and John Doe Officers, the City also incorporates by reference the Motion to Dismiss Plaintiff's Amended Complaint that the Individual Defendant Officers filed to this Court. Dkt. No. 37. If the equal protection and failure to intervene claims fail on their face as to the named Individual Defendant Officers, they would likewise fail as to any John Does and cannot be a basis for liability as to the City. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

1

**LEGAL STANDARD**

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard means that "[f]actual allegations must be enough to raise a right to relief above the speculative level…". *Twombly*, 550 U.S. at 555 (internal citations omitted). While it is true that this Court must take all factual allegations in the complaint as true, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Pleadings that offer "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Similarly, "naked assertion[s] devoid of further factual enhancement," will not suffice. *Id.* at 678. To state a Section 1983 *Monell* claim post-*Iqbal*, the plaintiff must plead factual content allowing the court to draw the reasonable inference that the municipality maintains the problematic policy or practice in question. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (2011). The plaintiff must "identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "Accordingly, to establish municipal liability and prevail on a *Monell* claim, it is not enough for Plaintiffs to allege that an alleged policy or procedure of the City injured them." *Harell v. City of Chicago*, No. 18 C 7781, 2019 WL 2611036, at *3 (N.D. Ill. June 25, 2019). "Instead, Plaintiffs must allege both that they suffered a constitutional injury and that the City authorized or maintained a policy, procedure, or custom allowing or approving of the unconstitutional conduct." *Id.*

**ARGUMENT**

**I. PLAINTIFF'S TIME-BARRED CLAIMS SHOULD BE DISMISSED.**

   **A. Any *Monell* claim premised on a time-barred constitutional violation should be dismissed.**

Plaintiff alleges that since 2017 he "has been stopped, searched, subjected to verbal abuse, and detained by Chicago police on at least eighteen separate occasions." Plaintiff's First Amended

Complaint ("FAC") at ¶11. However, most of these alleged incidents occurred outside of the two-year statute of limitations for federal claims, so they cannot provide a basis for Plaintiff to recover damages or support Plaintiff's *Monell* claim. Plaintiff alleges incidents occurring on July 8, 2017; April 30, 2018; April 22-23, 2019; and July 19, 2019. *Id.* at ¶¶15,17,23,24, 25 and 28. These untimely incidents should be dismissed with prejudice to the extent Plaintiff pleads them as support for *Monell* liability. Plaintiff alleges three non-time-barred incidents: May 28, 2020, January 5, 2021, and March 21, 2021. *Id.* at ¶¶ 32, 39, and 45. Plaintiff attempts to include additional stops without specifics; however, on information and belief, all are barred by the statute of limitations. *Id.* at 46.

In Illinois, the statute of limitations for §1983 claims is two years, *Ashafa v. City of Chicago*, 146 F. 3d 459, 461 (7th Cir. 1998), including for *Monell* claims. *Cole v. City of Chicago*, No. 21-CV-1640, 2022 WL 19332, at *4 (N.D. Ill. Jan. 3, 2022). "A §1983 claim generally accrues when the plaintiff knows or should have known that his constitutional rights have been violated." *Id.* "In the Fourth Amendment context, a claim based upon an unconstitutional detention accrues when the detention ends." *Id.* Fourth Amendment claims for unlawful searches accrue at the time of, or conclusion of, the violation. *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008). "As a *Monell* claim is brought under Section 1983, it is governed by the accrual rules applicable to other Section 1983 claims." *See Walden v. City of Chicago*, 755 F. Supp. 2d 942, 968 (N.D. Ill. 2010) ("…(a) *Monell* claim is predicated on an underlying constitutional injury, only Walden's claims that have not been dismissed can form the basis of his *Monell* claim.") (internal citation omitted); see also *Aaron Blocker v. City of Chicago*, No. 17 CV 00055 (N.D. Ill. Aug. 2, 2017), 2017 WL 3278323, at *5 (dismissing a *Monell* claim as time-barred because the claim "is tied to the underlying allegations" that officers violated the plaintiff's constitutional rights more than two years before the plaintiff's filed suit).

Plaintiff originally filed suit on January 4, 2022, making any part of a §1983 claim based on an incident before January 4, 2020 time-barred. Plaintiff acknowledged in his Complaint filed on January

4, 2022, that these alleged incidents are time-barred, but argued "these acts, when paired with other Defendant Officers' stops of Plaintiff and caused by the continuous customs and practices of the Defendant City… constitute a continuing violation and continuing harm under the law and are thus ripe for the Court's consideration." Dkt. 1 at 76. In the FAC, filed after the City filed its first Motion to Dismiss, Plaintiff restructured this sentence and removed the admission that the July 8, 2017; April 30, 2018; April 22-23, 2019; and July 19, 2019, incidents are time-barred. Instead, Plaintiff now argues he was "stopped without probable cause on several occasions, and these acts, when paired with other stops of Plaintiff, and caused by the continuous customs and practices of the Defendant City described in Plaintiff's *Monell* claims (Count VI) and Equal Protection Claims (Count IV), constitute a continuing violation and continuing harm under the law and are thus proper [grounds for relief and] for this Courts consideration." FAC at ¶94. Plaintiff attempts to support his reworded argument by citing to *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006), for the position that "(t)he continuing violation doctrine is… applicable when the state actor has a policy or practice that brings with it a fresh violation each day." However, this quote, cited in *Savory*, is from *Reese v. Ice Cream Specialties, Inc.,* 347 F.3d 1007, 1012–14 (7th Cir.2003). In *Reese*, plaintiff filed suit under Title VII of the Civil Rights Act of 1964 against his employer for discriminating against him, as a black man, by failing to give him a raise six months after he started working for them, unlike his white co-workers, who all received raises. *Id.* at 1008 and 1009. The court initially ruled plaintiff's claims were time-barred because he waited two and a half years, after failing to receive the raise (six months after starting), before he filed a complaint with the EEOC and subsequently filing suit. *Id.* at 1009. *Reese* appealed this decision and argued each paycheck he received, after the six months, without the raise was a fresh discriminatory violation, and constituted a continuing wrong. *Id.* The court agreed. *Id.* at 1014. The court reasoned, Reese had been promised, when hired, that he would receive a $0.45 cent raise after six months of employment, but he did not realize that he had not received the raise until two and half years later, and in response he

4

immediately filed a complaint with the state. The court held, despite prior decisions in employment law cases, where each paycheck created its own right of action, in *Reese* the employer's failure to pay plaintiff the additional $0.45 cent raise constituted a continuing discriminatory wrong, because the employer had a policy and practice of paying white employees the raise and discriminating against black employees. *Id.* at 1012 and 1013. *Reese* is distinguishable from the instant case, where Plaintiff's interactions with Chicago Police officers were discrete and distinct incidents, separate and unrelated. The incidents did not involve the same persons and each incident created its own right of action and did not constitute a continuing wrong. Therefore, the incidents which are time-barred cannot form the basis of Plaintiffs continuing tort claim.

Plaintiff also quotes *Lucente v. City of Sulfolk*, 980 F.3d 284 (2d. Cir 2020) for the position that an equal protection claim may be asserted as a continuing violation where plaintiff alleges both the existence of an ongoing policy and "some non-time barred acts taken in furtherance of that policy." *Id.* at 309. However, *Lucente* is distinguishable from the instant case. In *Lucente*, six pre-trial inmates brough suit, pursuant to § 1983, against the sheriff's department and one officer alleging that the officer sexually assaulted, sexually harassed, and sexually degraded them. *Id.* at 288. The district court dismissed some of plaintiffs' claims as time-barred; granted summary judgment in favor of the defendants because plaintiffs had failed to provide sufficient evidence that the municipality was liable under *Monell*; and granted summary judgment as to one plaintiff who failed to exhaust legal remedies under the Prison Litigation Reform Act (PLRA). *Id.* at 295. The plaintiffs then appealed the district court's decision. *Id.* On appeal, the appellate court affirmed the district court's decision as to the PLRA blocked claims and vacated and remanded for hearing on the *Monell* and other plaintiff's claims, the court reasoned plaintiff's had "presented sufficient evidence to create a genuine dispute of material fact as to the existence of an ongoing discriminatory policy by Suffolk County over several years (arguably decades) of ignoring and/or inadequately addressing" the actions of the one officer accused

of sexually assaulting, harassing, and degrading pre-trial inmates. *Id.* at 309. Further, the court reasoned (taking the facts in a light most favorable to the plaintiff) the time-barred acts should not have been dismissed because, while not independently actionable, the plaintiff alleged on-going sexual abuse against the officer and thus may constitute a continuing tort. *Id.* at 310. This case is distinguishable from the instance case, where Plaintiff attempts to plead time-barred incidents in support of his *Monell* and equal protection (class of one) claims for the alleged actions of multiple officers from different districts from all over the City. Plaintiff attempts to prove his *Monell* claim by citing to the Department of Justice consent decree and various other outdated studies and commentary, discussed in full in the following section of Defendant City's Partial Motion to Dismiss Plaintiff's First Amended Complaint.

Additionally, "(t)he Seventh Circuit has applied the continuing violation doctrine (1) when a plaintiff could not reasonably be expected to perceive that the alleged wrongdoing before the expiration of the statute of limitations, (2) when the violation only became apparent in light of later events, and (3) when a state actor has a policy that brings a fresh violation each day. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006).

In the present case, the continuing violation doctrine does not apply. Each alleged incident in Plaintiff's complaint constitutes a separate and discrete event. Plaintiff believed that each of alleged events were wrongful at the time it occurred and filed many complaints against the City's Officers with the Civilian Office of Police Accountability. FAC at ¶¶ 16, 21, 22, 27, 30, 36, and 52. Therefore, Plaintiff perceived the alleged wrongdoing at the time of the incidents and still did not file his complaint until well after the statute of limitations expired.

Additionally, Judge Rowland recently decided time-barred incidents cannot support a *Monell* claim in *Cole v City of Chicago*, 2021 cv 1640. In *Cole*, plaintiff filed a *Monell* claim against the City and alleged detentions prior to the expiration of the statute of limitations in support of their *Monell* claim. The City filed a motion to dismiss, arguing most of plaintiff's alleged detentions were time-barred and

only three survived the statute of limitations to potentially be used to support plaintiff's *Monell* claim. That plaintiff, represented by some of the same counsel as in this case, argued the continuing violation doctrine preserved plaintiff's claims and supported their *Monell* claim. The Court disagreed with plaintiff and reasoned "(a)lthough Plaintiff insists that the continuing violation doctrine applies to save the earlier detentions because he 'continues to suffer harm' from the repeated violations, [20] at 4, the continuing violation doctrine applies only to 'a continuing wrong, not of continuing harm; once the wrong ends, the claim accrues even if that wrong has caused a lingering injury.'" *Cole v. City of Chicago*, No. 21-CV-1640, 2022 WL 19332, at *11 (N.D. Ill. Jan. 3, 2022 citing *Manuel v. City of Joliet*, 903 F.3d 667, 669 (7th Cir. 2018). The Court held, "(p)ractically speaking, this means that only the alleged policies and practices that relate to Plaintiff's timely constitutional injuries can form the basis of Plaintiff's *Monell* claim." *Id.* citing *Walden*, 755 F. Supp. 2d at 968.

Although Plaintiff insists in this case that the continuing violation doctrine applies to save the earlier events because "[t]he City's unconstitutional policies, practices, customs, and usages caused all violations of [Plaintiff's] rights mentioned herein…", Dkt. 1 at ¶154, "the continuing violation doctrine applies only to a continuing *wrong*…once the wrong ends, the claim accrues even if that wrong has caused a lingering injury.'" *Cole*, 2022 WL 19332, at *5 (emphasis in original) (quoting *Manuel*, 903 F.3d at 669. Thus, the continuing violation doctrine fails to save Plaintiff's claims based upon injuries suffered from alleged unconstitutional detentions pre-dating January 4, 2020. Additionally, courts have found that arrests cannot create an ongoing violation that would alter or extend the statute of limitations for Fourth Amendment Claims. *Marshall v. Buckley*, 644 F. Supp. 2d 1075, 1082 (N.D. Ill. 2009). "Therefore each [incident] was independently actionable and cannot form the basis of a continuing violation." *Cole*, 2022 WL 19332. at *5.

Since the continuing violation doctrine does not apply, any federal claims premised on Plaintiff's pre-January 4, 2020 alleged incidents should be dismissed.

B.  **State law claims arising out of incidents prior to January 4, 2021 are time-barred**.

Plaintiff brings four claims under state law: *respondeat superior* (Count IX), continuing tort of assault and battery (Count VII), continuing tort of intentional infliction of emotional distress (Count VIII), and indemnification (Count X). As a preliminary matter, *respondeat superior* is not a cause of action in and of itself, but rather a basis for holding a defendant responsible for the acts of its agents. See, *e.g.*, *Wilson v. Edward Hosp.*, 2012 IL 112898, ¶ 24; *Jones v. UPS Ground Freight, Inc.*, 2016 WL 826403 at *3 (N.D.Ill. March 3, 2016).

Plaintiff's state law claims that arise from incidents occurring prior to January 4, 2021 are time-barred by the Tort Immunity Act. Section 8-101(a) of the Tort Immunity Act provides: "No civil action other than an action described in subsection (b) may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received, or the cause of action accrued." 745 ILCS 10/8-101.

Here, Plaintiff alleges that his injuries occurred on July 8, 2017; April 30, 2018; April 22-23, 2019; July 19, 2019; May 28, 2020; January 5, 2021; and March 21, 2021. FAC. at ¶¶15,17,23,24, 25, 28, 32, 39, and 45. Only two of the alleged incidents are not time-barred under the Tort Immunity Act based on Plaintiff's original complaint having been filed on January 4, 2022: the January 5, 2021 and March 21, 2021 alleged incidents. Therefore, the Court should dismiss state-law claims premised on older incidents with prejudice because they cannot provide a basis for Plaintiff to recover damages.

1.  *Assault and Battery are not Continuing Torts*.

Plaintiff alleges Defendant Officers' actions constitute the continuing tort of battery and assault. FAC, Count VII at ¶¶156, 158, 159, and 160. However, because each incident alleged is a discrete incident involving different officers, they do not constitute a continuing tort.

In Illinois, a limitations period begins to run when facts exist that authorize one party to maintain an action against another. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278, 798 N.E.2d 75, 85 (2003)

"For most torts, the cause of action usually accrues when the plaintiff suffers injury." *Indiana Ins. Co.*
v. *Machon & Machon, Inc.*, 324 Ill.App.3d (2001). Under Illinois law, a cause of action for
battery accrues on the day that the injury occurred. *Slabon v. Sanchez*, No. 15-CV-8965, 2021 WL
4146909, at *20 (N.D. Ill. Sept. 13, 2021). Therefore, each alleged battery and assault accrued on the
date of the incident, *i.e.*, July 8, 2017; April 30, 2018; April 22-23, 2019; July 19, 2019; May 28, 2020,
January 5, 2021, and March 21, 2021.

The Supreme Court of Illinois has stated that "where there is a single overt act from which
subsequent damages may flow, the statute begins to run on the date the defendant invaded the
plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the
injury." *Feltmeier,* 798 N.E.2d at 85. In cases where the tortious activity ceased at a certain date, the
courts do not apply the continuing tort doctrine because to do so would be "to confuse the concept
of a continuing tort with that of a continuing injury." *Powell v. City of Danville,* 253 Ill.App.3d 667, 192
Ill. Dec. 675, 625 N.E.2d 830, 831 (1993).

Plaintiff's alleged assaults and batteries were completed at the end of the intentional overt act
and cannot be linked together through the continuing violation theory, as each alleged battery and
assault were distinct, individual events, that involved different officers from different districts in the
City. These discrete and singular events cannot be considered "continuing or repeated injurious
behavior." The Plaintiff pleads that the incidents occurred on "separate occasions," FAC at ¶11,
thereby acknowledging this is not one continual injury but separate and discrete incidents, which do
not constitute a continuing tort. Because Plaintiff has failed to state a state law claim upon which relief
may be granted for the time-barred incidents, Plaintiff's *respondeat superior* and indemnification claims
would fail. Additionally, the Tort Immunity Act holds that "[a] local public entity is not liable for an
injury resulting from an act or omission of its employee where the employee is not liable." Tort
Immunity Act, 745 ILCS 10/2-109. The officers cannot be held liable for time-barred allegations, thus

the City cannot be held liable.

2.   <u>Intentional Infliction of Emotional Distress is not a Continuing Tort.</u>

Plaintiff alleges he was "subjected to the intentional infliction of emotional distress on no fewer than 18 occasions." FAC at ¶167. Plaintiff's Count VIII seeks to liability for IIED under a theory of continuing violation doctrine. Like assault and battery, Plaintiff's claim in this regard fails.

In Illinois, when a tort involves continuous or repeated injurious behavior *by the same actor* and of a similar nature, the causes of action underlying the tort claim will not accrue until the date the final injury occurs or the tortious acts cease. *Taylor v. Bd. of Educ. of City of Chicago*, 2014 IL App (1st) 123744, ¶ 46, 10 N.E.3d 383, 395; *see also Feltmeier*, 207 Ill.2d.263 (Spouse who allegedly was the recipient of multiple acts of abuse by other spouse, i.e., *single actor*, had viable IIED claim pursuant to continuing violation doctrine); ;*Cf. Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 199 Ill. 2d 325, 345-349 (2002)(Defendants' alleged violations of the Motor Vehicle Franchise Act through individual vehicle allocations to Plaintiff dealership took place over many years and "was the result of discrete decisions by defendants" and "each allocation constituted a separate violation of section 4 of the Act, each violation supporting a separate cause of action.").

Here, the conduct that Plaintiff allegedly suffered to purportedly give rise to his IIED claim came from *multiple* actors, as opposed to a single actor such as in *Taylor* or *Feltmeier.* The incidents were discrete and separate incidents involving different officers. Plaintiff's alleged incidents on April 30, 2018; April 23, 2019; July 19, 2019; May 28, 2020, therefore cannot be roped into the alleged IIED claims stemming from the January 5, 2021 and March 21, 2021 incidents. The Defendant Officers involved in each incident, time-barred or otherwise, were different people from different districts who all stopped or interacted with Plaintiff for different reasons. "The doctrine does not apply, however, where a complaint alleges 'discrete and independently actionable violations." *Cole v. City of Chicago*, No. 21-CV-1640, 2022 WL 19332, at *5 quoting *Kovacs v. United States*, 614 F.3d 666, 675 (7th Cir.

10

2010). In the instant case, Plaintiff alleges claims against several different officers, on several different days, for various reasons; not one actor who acted within a similar nature towards Plaintiff.

Additionally, Plaintiff attempts to plead that the compiling of his interactions with Chicago Police Officers has caused him emotional distress. However, a continuing tort "is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." *Feltmeier*, 798 N.E.2d 85 (citing *Pavlik v. Kornhaber*, 326 Ill.App.3d 731, 761 N.E.2d 175, 186–87 (2001); *Bank of Ravenswood v. City of Chicago*, 307 Ill.App.3d 161, 717 N.E.2d 478, 484 (1999); *Hyon Waste Mgmt. Serv., Inc. v. City of Chicago*, 214 Ill.App.3d 757, 574 N.E.2d 129, 133 (1991)). Therefore, while Plaintiff alleges after each separate and distinct interaction with the Chicago Police Officers he suffered emotional distress, the theory of continuing torts is not asserted by the continual ill effects from an initial violation, and therefore fails. Any *respondeat superior* claim premised on a time-barred incident would likewise fail. 745 ILCS 10/2-109.

## II.    PLAINTIFF FAILS TO ADEQUATELY PLEAD ALL THE ELEMENTS OF A *MONELL* CLAIM.

To state a *Monell* claim, a plaintiff must show "(1) an action pursuant to a municipal policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning that the municipal action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020). To show a widespread practice, legal conclusions of such similar incidents will not suffice. *See Karney v. City of Naperville*, No. 15 C 4608, 2015 WL 6407759, at *4 (N.D. Ill. Oct. 22, 2015); *see also Turner v. City of Chicago*, No. 1:19-CV-00272, 2020 WL 1548957, at *3 (N.D. Ill. Mar. 31 2020). To establish deliberate indifference, Plaintiff must plead more than "simple or even heightened negligence." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007). Mere boilerplate assertions of "authority or official tolerance of misconduct, are not sufficient for pleading municipal liability."

*Hickombottom v. City of Chicago*, 739 F. Supp. 1173, 1177 (N.D. Ill. 1990). Instead, "'[m]unicipal liability under [Section] 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). To show causation, Plaintiff "must show that the municipality's deliberate conduct was the 'moving force' behind the alleged injury."" *Bryan Cty*, 520 U.S. at 400. Again, consistent with *Iqbal/Twombly*, a conclusory statement is not entitled to the presumption of truth and is too vague to satisfy the "direct causal link" between the conduct of the City and the alleged conduct of the officers. *Mikolon v. City of Chicago*, No. 14 CV 1852, 2014 WL 7005257, at *4-5 (N.D. Ill. Dec. 11, 2014). Plaintiff fails to adequately plead any element for any of the alleged practices.

### A. **Plaintiff fails to sufficiently plead a widespread practice.**

In a city of nearly 3 million people and a police force of over 13,000 officers, Plaintiff's custom allegations are not plausible on their face to survive a motion to dismiss. § 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, **custom**, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

42 U.S.C. § 1983. (Emphasis added.)

"Congress included customs...because of the persistent and widespread discriminatory practices of state officials in some areas of the post-bellum South." *Monroe v. Pape*, 365 U.S. 167, 172 (1961). In *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-68 (1970), the Supreme Court defined a custom as "persistent and widespread ... practices," "systematic maladministration" of the laws, practices that are "permanent and well settled," and "deeply embedded traditional ways of carrying out ... policy." *Id.* The Supreme Court has also used the words "standard operating procedure" to describe a custom. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 485 (1986).

Plaintiff pleads four purported widespread practices, asserting that "each incident described

in this Complaint was caused by the policies, practices, customs, and usages of the Chicago Police Department: a failure to properly train and discipline officers, the maintenance and encouragement of a code of silence within the department, and systemic racially discriminatory, bias-based policing. Pl's First Amend Complt. at ¶ 13. However, to state a valid *Monell* claim, it is not enough to simply say that there are some examples of poorly trained officers, undisciplined officers, officers who operate under a code of silence or biased officers. Plaintiff must use well-plead facts to permit the plausible inference that for the City's officers it is standard operating procedure to be poorly trained, undisciplined, operating under a code of silence and biased.

The facts that Plaintiff pleads in support of each of these purported practices are either conclusory, irrelevant, mistaken, or rely overly on such documents as the 2017 Department of Justice Investigation into the Chicago Police Department ("DOJ Report."). Plaintiff also relies on his own experiences. As detailed further below, these facts are insufficient to show what the custom may have been at or around the time when Plaintiff alleges he suffered constitutional violations that were not time-barred. Importantly, the 2017 DOJ Report provides no support that any practices it describes still exist in the relevant post-January 2020 timeframe. As Judge Shah recently observed:

> [T]he passage of time since the DOJ report diminishes its usefulness as an allegation of the practices in place at the time of [plaintiff's] seizure. Without anything in the complaint to suggest that the practices found by DOJ investigators were still in place two years later, the report is a non sequitur."

*Taylor v. City of Chicago*, No. 21 CV 2197, 2021 WL 4523203, at *3 (N.D. Ill. Oct. 4, 2021). The DOJ Report should not serve as "a master key to unlock discovery's door for any *Monell* claim against the City, no matter how scantily the plaintiff connects his claim to the report's findings." *Carmona v. City of Chicago*, 2018 WL 1468995 at *4 (N.D.Ill. March 26, 2018)(St. Eve, J.).

1.   *Plaintiff has not shown a policy or custom of the City failing to train its Police Officers.*

A *Monell* claim is at its "most tenuous" when it comes to failure to train. *Connick v. Thompson*,

563 U.S. 51, 61 (2011). As discussed below, Plaintiff misses the mark. Plaintiff bases his alleged failure to train allegations primarily on content from the DOJ Report. FAC at ¶¶64-68. Plaintiff further alleges, "Changes to CPD use of force training initiated after the release of the DOJ Report have not addressed key deficiencies…" *Id.* at ¶70. Plaintiff also alleges that the number of complaints against CPD officers have continued to be filed at "alarming rates" following the DOJ Report. *Id.* at ¶71. Plaintiff concedes that the revised training purports to feature de-escalation and force mitigation principles, but cites the City's Civilian Office of Police Accountability ("COPA") as saying that the training provides minimal discussion about why force should be de-escalated and the tools to de-escalate. *Id.* at ¶72. Plaintiff alleges that the independent monitor reported that the Chicago Police Department was not complying with its obligations to implement training to ensure constitutional force and that the Illinois Attorney General wrote that CPD continued to be reluctant to change its culture and that it had not made substantive changes in its training as to use of force. *Id.* at ¶¶73-74.

These purported facts are insufficient to show, even in the light most favorable to Plaintiff, that the City's training of officers was so deficient that it could be considered to have caused constitutional violations. It must also be pointed out at the outset the purportedly deficient training mentioned in the DOJ Report was no longer the training during the relevant time-frame for this case. First, these statements as to the supposed deficiencies in training are conclusory and the Court should disregard them under the *Iqbal*/*Twombly* standard. Plaintiff fails to provide detail as to how the training does not adequately explain the constitutional standards. Plaintiff fails to explain what "key deficiencies" the training allegedly does not address. Plaintiff fails to explain what sort of "in-depth analysis or discussion of examples" might be needed to explain that police officers should not use force against people who are compliant and law-abiding, as Plaintiff claims he was during each incident. The allegation that there are an "alarming" number of complaints against Chicago police officers does not show that those complaints are valid, that those complaints are similar to the ones

14

Plaintiff claims, that the number of complaints after the training changes remains the same as or higher than the number of complaints before the training, or that the alleged failure to train is in any way responsible for those complaints.

Next, Plaintiff overstates or flat-out misstates the actual criticism from COPA and the Illinois Attorney General about CPD's training of its officers. The report Plaintiff cites to from COPA dates back to January 19, 2017 and is attached as Ex. A. First, this report never suggests that the training CPD had revised was so deficient as to not equip officers to be able to conduct their duties lawfully. Instead, COPA writes, "We commend the Department on training its members and its recruits prior to implementing such a significant policy change." Ex. A at 4. Most of the recommendations listed are relatively minor tweaks as opposed to a wholesale condemnation of the training. As to the independent monitor's findings, its June 2020 report indicated that the City was in primary or secondary compliance with the portions of the Consent Decree having to do with training. See report, 17 CV 6260 at Dkt. 844, which is attached as Ex. B, at p. 11. Moreover, the monitor points out that the fact that the City is not found to be in full compliance with an objective does not mean that the City is not trying to reform. Ex. B at p. 3. As to the June 5, 2020 letter from Attorney General Kwame Raoul, it actually lists training as one of the areas with progress. This is included in the June 2020 Independent Monitoring Report. The letter states, "In Training, although staffing continues to be a concern, CPD has increased the number of training officers receive. This increase is critical because training is foundational to changing officers' behavior." Ex. B at p. 432. Moreover, Plaintiff's quote of the letter appears to be taken out of context. The letter states, "The OAG is also concerned that the City's process for reviewing uses of force is not sufficiently focused on identifying trends or developing recommendations regarding modifications to tactics, equipment, training and policy. For example, while the Force Review Division issued recommendations to individual members after use of force incidents, the OAG did not receive evidence of it making any written Department-wide

15

recommendations for substantive changes to CPD policy, tactics, equipment, or training." *Id.* That is a far different statement than the Consent Decree has caused no substantive changes in CPD training..

Plaintiff has failed to plausibly allege that the training given by CPD was so deficient as to prevent officers from being able to know that they should not use excessive force against innocent and harmless people, and his claim should be dismissed.

> 2. *Plaintiff has not shown that the City failed to discipline its officers.*

Plaintiff claims that the City has the policies of failure to discipline. FAC at ¶¶13, 84-89. Plaintiff cites to the 2012 verdict in *Obrycka v. City of Chicago*, 07 CV 2372, as proof that the City had either a custom of failure to investigate and/or discipline its officers and/or of a police code of silence. *Id.* at ¶78. Once again, Plaintiff attempts to rely on the DOJ Report. *Id.* at ¶¶85-86. Plaintiff claims that COPA's recommendations are subject to approval and that COPA's discipline is insufficient to deter future misconduct. *Id.* at ¶¶88-89, 150-151.

Plaintiff's allegations as to the failure to discipline are conclusory and outdated. The *Obrycka* finding pertained to a 2007 incident, when the Office of Professional Standards oversaw police discipline. It is too old to have any relevance to the City's practices in 2020 and later. Moreover, the Seventh Circuit effectively rendered the *Obrycka* verdict moot when it ruled that the off-duty private acts of an individual could not be a constitutional violation in its decision in *First Midwest Bank v. City of Chi.*, 988 F.3d 978, 988-989 (7th Cir. 2021). The DOJ Report's findings were about the Independent Police Review Authority, which was replaced by COPA in 2017. The DOJ Report repeatedly notes with optimism that COPA was intended to remedy the issues it identified as to IPRA. See DOJ Report, attached as Ex. C, at *e.g.*, pp. 3, 8-9, 49, 70. Plaintiff does not explain how COPA's recommendations being subject to challenge means that it fails to discipline officers. Nor does Plaintiff support the conclusion that COPA's disciplinary recommendations are ineffective with any well-pled facts.

> 3. *Plaintiff has not shown that the City had a custom of a code of silence.*

16

Plaintiff claims that the City has a policy of a code of silence. FAC at ¶¶13, 76-82. Plaintiff claims that CPD teaches officers not to violate the code of silence. *Id.* at ¶76. Plaintiff cites to the 2012 verdict in *Obrycka v. City of Chicago*, 07 CV 2372, as proof that the City had either a custom of failure to investigate and/or discipline its officers and/or of a police code of silence. *Id.* at ¶78. Once again, Plaintiff attempts to rely on the DOJ Report and PATF Report. *Id.* at ¶¶79-80. Plaintiff then cites to statements from two CPD officials that referenced the code of silence. *Id.* at ¶¶ 81-82.

Plaintiff's allegations as to the code of silence are also outdated and conclusory. As to the quote Plaintiff makes about "Blue is Blue," it is derived from an officer witness's testimony in *Spalding v. Chicago*, 12 C 8777. *See* 186 F.Supp.3d 884, 902. (N.D.Ill. May 11, 2016). In reality, witness Janet Hanna's testimony was that she was taught when she was in the academy that "Blue is blue." See 12 CV 8777 at Dkt. 173-11, p. 45. The witness testified that she entered the academy May 31, 1994. *Id.* at p. 10. Even assuming for argument's sake that the testimony was true both in 1994, it is too old to lend plausibility to Plaintiff's allegation that the code of silence was a widespread practice in 2020 and later. Again, the *Obrycka* case is too old for relevance and has effectively been vacated. The DOJ Report actually states "We cannot determine the exact contours of this culture of covering up misconduct, nor do we know its precise impact on specific cases." Ex. C at 75. Similarly, the officials' statements do not lend plausibility to the notion that the code of silence is standard operating procedure for the police department any more than opining about problems facing the department like officer suicides or criminality would render those problems "standard operating procedure." Because Plaintiff fails to plead sufficient facts supporting the notion that the code of silence was widespread, this aspect of his Monell claim fails.

4. *Plaintiff has not shown that the City has a widespread policy of bias-based policing.*

Plaintiff argues that the City engaged in bias-based policing. FAC at ¶¶13, 57-62. Plaintiff

cites data that Chicago Police stopped Blacks seven times more than whites and searched Black people's vehicles almost three times as frequently as whites, stopped Blacks nine times more than whites. *Id.* at ¶¶57-59. Plaintiff also cite a finding that Black police applicants to join CPD had greater difficulty than other races. *Id.* at ¶60. Plaintiff cites an article saying Chicago police disproportionately use force against Blacks. *Id.* at ¶ 61. Plaintiff also invokes the DOJ and PATF reports. *Id.* at ¶¶61-62, 142. Plaintiff also includes conclusory paragraphs alleging biased policing. *Id.* at ¶¶141, 143

Once again, the facts Plaintiff cites are either misconstrued, out of date or insufficient to give rise to an inference of a widespread practice of biased-based policing. The raw statistics are silent as to whether the underlying actions were constitutional. Without more, the mere fact of disproportionate treatment of a racial group does not show that the explanation for the disproportionate treatment was their race as opposed to any number of other factors. As Judge Tharp recently ruled when dismissing a *Monell* claim partially based on allegations of police bias, "But allegations that African American drivers are stopped more often than white drivers do not plausibly show that the reason was race; that's correlation, not causation. And even assuming that the pattern of stopping more black drivers is due to race and that [then-Superintendent] Johnson was aware of the pattern, that would not plausibly show whether harassment of African American drivers was occurring because of deliberate indifference on the part of the City." *Echols v. Niznik et al.*, No. 20 CV 2226 at Dkt. 72, at 4. The report Plaintiff references on police hiring practices is irrelevant. The report attributes the disproportionate result for Black candidates to such factors as background checks, and poorer performance on standardized tests and physical test. See report, available at https://igchicago.org/wp-content/uploads/2021/07/OIG-Evaluation-of-the-Demographic-Impacts-of-the-Chicago-Police-Departments-Hiring-Process.pdf. at pp. 6-7. Even assuming it could be read to imply that CPD management was consciously discriminating against people of color in the hiring process, it says nothing about whether line officers discriminate so frequently for it to be

18

considered a widespread practice. Admittedly, the DOJ Report cited statistics that CPD uses force more frequently against Blacks than whites. Ex. C at 145. But Judge Tharp's observation holds true here as well: such statistics do not show racial bias caused the disproportionality. When the DOJ Report refers to "racially discriminatory conduct," it is discussing examples of officers referring to residents using racial slurs or dehumanizing terms and making intolerant statements on social media rather than stops and searches. *Id.* at 146-147. While these anecdotal incidents are disturbing, the report gives no evidence that officers using slurs is commonplace. Moreover, isolated examples of officers making racist statements does not show that the majority of officers actually policed in a racist way. Because Plaintiff's examples of alleged bias-based policing misconstrue the facts and do not show that such behavior is fairly described as the City's standard operating procedure, this aspect of Plaintiff's *Monell* claim should be dismissed.

### B. Plaintiff Fails to Adequately Plead Deliberate Indifference.

Even assuming *arguendo* that Plaintiff had adequately pled each of the alleged widespread practices, Plaintiff's *Monell* claim still fails because Plaintiff has not adequately pled that the City's final policymaker was deliberately indifferent to any of the alleged practices. To prove municipal liability, Plaintiff must show that "it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences." *First Midwest Bank*, 998 F.3d at 987. Plaintiff must meet a rigorous standard of proof to allege deliberate indifference with his failure to train *Monell* claim. To satisfy Section 1983, it is "ordinarily necessary" to demonstrate deliberate indifference to show "[a] pattern of similar constitutional violations by untrained employees…" *Connick*, 563 U.S. at 62 (quoting *Bryan Cty.*, 520 U.S., at 409). If a policymaker knows or should know that their approach "has failed to prevent tortious conduct by employees," that "may establish the conscious disregard for the consequences of their action-the deliberate indifference-necessary to trigger municipal liability." *Connick*, 563 U.S., at 62.

19

It is a matter of public record, and therefore properly the subject of judicial notice, that the City has been working on improving both its policing and police accountability systems[2]. During the relevant timeframe, the City has repeatedly acted to improve its police officers' training, improve its oversight systems and to limit the code of silence and bias-based policing. As described more in detail below, those efforts include conducting the Police Accountability Task Force and following many of its recommendations, creating COPA, implementing additional use-of-force training for its officers, agreeing to study the issue of disproportionate stops of minorities and signing onto and implementing the Consent Decree. See *State of Illinois v. Chicago*, No. 17 CV 6260 at Dkt. 703. ("Consent Decree"). These efforts are the very opposite of deliberate indifference. Against the backdrop of these and other reform efforts, Plaintiff cannot plausibly allege that the City's final policymaker knew of and turned a blind eye to the supposed practices of failure to train, failure to discipline, a code of silence and bias-based policing. Because the record conclusively shows that the City has taken these numerous efforts to address the issues Plaintiff raises, Plaintiff cannot establish the deliberate indifferent element and each version of his *Monell* claim fails. Even if the Court were to decline to take judicial notice of the City's police reform efforts, Plaintiff fails to establish enough well-pled facts to show plausibility that the City was deliberately indifferent. Plaintiff's *Monell* claim should be dismissed on that basis as well.

1. *The Public Record Establishes the City Engaged In Numerous Police Reform Efforts And Therefore Was Not Deliberately Indifferent to Any Alleged Widespread Practice*

Much of the evidence Plaintiff cites in attempting to show the existence of the four alleged widespread practices demonstrate that the City has affirmatively addressed those practices.

---

[2] When ruling on a motion to dismiss, a court may consider "documents…attached to the complaint, documents … central to the complaint and referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). A court may take judicial notice of matters of public record without converting a motion to dismiss to a motion for summary judgment, particularly of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned. See, *e.g.*, *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th. Cir. 2008), 551 F.3d, 640; *Gen. Elec. Capital Corp v. Lease Resolution Corp.*, 128 F. 3d 1074, 1081 (7th Cir. 1997); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)(finding public court documents judicially noticeable.)

The DOJ Report repeatedly mentions that the City had attempted to reform police practices over the years and that in 2017 it had already started in efforts to further reform. For example, the DOJ Report notes that the City established the Police Accountability Task Force. Ex. C at p. 3. It further noted that the City overhauled its system of investigating police officer misconduct by eliminating the Independent Police Review Authority and creating the Civilian Office of Police Accountability. *Id.* The DOJ Report further noted the City had creating a Deputy Inspector General for Public Safety position that was tasked with both monitoring the Chicago Police Department and COPA to ensure that both were functioning properly. *Id.* The DOJ noted that the City had expanded its use of bodyworn camera for officers and was expecting to have all its officers equipped with the devices by the end of 2017. *Id.* Bodyworn cameras are a key tool to constraining the code of silence because video evidence of what happens makes it impossible for officers to successfully lie about it. The DOJ Report repeatedly praises the City for its willingness to reform its training, its disciplinary practices and to address the possibility of bias-based policing. For example:

- "CPD has begun training officers in safely using de-escalation methods" *Id.* at p. 151;
- "We commend CPD for conducting a review of its training program using an expert consultant, and for recognizing and accepting the longstanding deficiencies with the training program that this expert identified. CPD's willingness to identify these problems and work toward solutions is an important first step in bringing CPD's training program in line with national standards." *Id.* at 105.
- "We applaud the City's recent efforts to seek public input on proposed reforms, such as the COPA ordinance and CPD's new use-of-force policies." *Id.* at 129.
- "We applaud the City … agreeing to negotiate a set of comprehensive reforms that will be entered as a federal court order and assessed by a team of independent experts in policing and related fields. Through this commitment, the City has signaled its willingness to go further than any previous City administration to ensure that necessary reforms to the Chicago Police Department are made and take root." *Id.* at 16.

Indeed, the DOJ Report shows that the DOJ found that the City was committed to improving its training and called those plans "laudable." *Id.* at p. 10. And although Plaintiff attempts to downplay the significance, Plaintiff admits that the City had de-escalation and force mitigation principles as part of its revised use of force policy. FAC at ¶72. In terms of the ACLU's report alleging racial disparities

and stops, the ACLU and the City entered into a settlement agreement as to that lawsuit in which the City agreed to, among other things, police in accordance with the Constitution and applicable laws, monitor statistics as to traffic stops, and hire former Magistrate Judge Arlander Keys as a consultant to recommend ways to improve the City's practices. A copy of the settlement agreement is available at https://www.aclu-il.org/sites/default/files/wp-content/uploads/2015/08/2015-08-06-Investigatory-Stop-and-Protective-Pat-Down-Settlement-Agreeme....pdf. With this agreement, it cannot be said that the City was deliberately indifferent to the issue of bias-based policing.

The City agreed to enter into the Consent Decree to "ensure that the City and CPD deliver services in a manner that fully complies with the Constitution and laws of the United States and the State of Illinois, respects the rights of the people of Chicago, builds trust between officers and the communities they serve, and promotes community and officer safety. In addition, this Agreement seeks to ensure that Chicago police officers are provided with the training, resources, and support they need to do their jobs professionally and safely." Consent Decree at p. 1. Notably, Judge Robert M. Dow Jr., the judge overseeing the implementation of the Consent Decree, recently recognized the City's reform efforts in an order granting a motion for bifurcation in another case. "[T]he City of Chicago is engaged in a major effort to reform its police department through the Consent Decree in Case No. 17-cv-6260, as well as in efforts outside the decree." *Galindo v. Chudzik et al.*, 20 CV 3409, Dkt. 50. In January 2019, Judge Dow entered the consent decree between the State of Illinois and the City of Chicago. See *State of Illinois*, 17 C 6260 at Dkt. No. 702. The 236-page Consent Decree contains numerous commitments to impartial policing, use of force reforms, new training, supervision, accountability, data collection, and more. It obligates the City to collect and analyze use of force data and to conduct regular reviews of use of force policies. (*Id. at* Dkt. No. 703-1 at ¶¶ 157, 159.) It is clear that when the City voluntarily entered into the Consent Decree it embraced the need to improve in these areas rather than turned a blind eye to any problems. The City anticipates that Plaintiff will

22

argue the reforms listed above and the Consent Decree have not solved enough problems with police misconduct or police accountability, or that more or different reforms should have been tried or are needed. However, even if that were so, that does not show the City was deliberately indifferent to any alleged widespread practice. As the Seventh Circuit has observed, "Failure to eliminate a practice cannot be equated to approving it." *Wilson v. City of Chicago*, 6 F.3d 1233, 1240 (1993).

2.    *Plaintiff fails to plead deliberate indifference as to any alleged widespread practice.*

Even assuming *arguendo* that the public record did not show the City's active involvement in police reform, the exact opposite of deliberate indifference, Plaintiff's *Monell* claim should fail because he has not adequately pleaded deliberate indifference as to any alleged widespread practice. Plaintiff only includes a few conclusory paragraphs for each practice. See, *e.g.*, FAC at ¶¶73, 75 (concerning alleged deliberate indifference as to failure to train), ¶77 (concerning alleged deliberate indifference as to code of silence), ¶91 (concerning alleged deliberate indifference as to code of silence) and ¶¶145 (concerning alleged deliberate indifference as to bias-based policing), and ¶¶148, 153 (conclusory sentence saying the City is deliberately indifferent as to all policies).

These allegations are conclusory and in part incorrect. Plaintiff fails to name the final policymaker as regards to training, let alone demonstrate that the final policymaker was on notice as to the alleged training deficiency and failed to act. As to the aforementioned June 2020 report, it did not find that the City was not complying with its obligation to implement training at all. Rather, it found that the City had not met some requirements of producing documentation of a complex set of goals. As the report states, "Even if the City has made significant efforts toward complying with a requirement – which in many cases, it has – the City still has the additional burden of providing the IMT and the OAG with sufficient proof of its effort and allowing sufficient time for review." Ex. B at p. 13. Nowhere in the report does the IMT claims that the City was not trying to implement constitutionally sound training. A court rejected the notion that deliberate indifference to biased-based

23

policing was adequately pled in the face of the City's efforts to reform policing. *Anderson v. Allen*, 2020 WL 5891406 at n.2. Plaintiff fails to assert anything beyond the conclusory paragraph to plausibly show that the City's final policymaker knew of and acquiesced to bias-based policing. Since Plaintiff does not plausibly allege that the City acquiesced in any pattern of unconstitutional conduct in terms of any alleged widespread practice, Plaintiff's *Monell* claim should be dismissed.

    **C.  <u>Plaintiff Fails to Show Any Alleged Policy Is The "Moving Force."</u>**

    Even assuming *arguendo* that Plaintiff adequately pled the first two elements of a *Monell* claim, Plaintiff fails at the third element: causation. There is a "rigorous causation standard" for *Monell* claims that "guards against backsliding into *respondeat superior* liability." *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). Plaintiff's FAC only contains conclusory paragraphs as to the causation element. FAC at, *e.g.*, ¶¶13, 14, 149, 152, 154. Nowhere in the FAC does Plaintiff allege any well-pled, non-conclusory facts that demonstrate either the named or unknown defendant officers were poorly trained as to the use of force, or that this poor training caused them to use excessive force (as opposed, say, to their using excessive force despite their training.); that any of the officers were aware of any lapses in the City's disciplinary system and thus motivated to use unconstitutional force; that the officers engaged in or were motivated by the code of silence; or that the officers showed signs of racism in their encounters with Plaintiff or in their pasts. To prove causal nexus element of his *Monell* claim, Plaintiff must allege "how the failure to provide specific training had a causal nexus to [his] injury." *Palmquist v. Selvik*, 111 F. 3d 1332, 1345 (7th Cir. 1997); *See also Harris*, 489 U.S. 378, at 391 ("the identified deficiency in a city's training program must be closely related to the ultimate injury."). Plaintiff does not even attempt to relate a deficiency in training to the ultimate injury here beyond drawing the conclusion that it caused it. Similarly, Plaintiff fails to plead any non-conclusory facts to suggest that a failure to discipline or a code of silence actually caused the officers who allegedly violated his rights to do so. Seventh Circuit precedent has found that

even if the suppression of complaints was actually occurring, it could not be the moving force behind the claimed injury because it was too attenuated. *Johnson v. Cook Cty.*, 526 F. App'x 692, 696 (7th Cir. 2013). Likewise, the code of silence, which allegedly involves the use of suppression of complaints, is precisely the same type of alleged conduct that *Johnson* was referring to, i.e., suppression of misconduct. Therefore, the code of silence is too attenuated to be considered as a moving force behind the alleged constitutional injuries that Plaintiff has endured. Likewise, Plaintiff fails to plead any nonconclusory facts supporting the notion that the alleged widespread policy of bias-based policing was the moving force behind the actions of any defendant officers. Since Plaintiff fails at laying out facts establishing that any alleged widespread practice was the moving force behind the officers' alleged misconduct, Plaintiff's *Monell* claim fails for yet another independent reason.

## **CONCLUSION**

The City already raised many of these issues in a previous motion to dismiss. Dkt. 25. Plaintiff has had an opportunity to amend his allegations to address the legal deficiencies discussed above and failed. For the aforementioned reasons, the Court should dismiss Count VI of Plaintiff's First Amended Complaint with prejudice and provide any other relief this Court deems appropriate and just.

DATED: June 10, 2022

Respectfully submitted,

/s/ *Danielle Alvarez Clayton*
Danielle A Clayton
Assistant Corporation Counsel III

Caroline Fronczak, Deputy Corporation Counsel
Mitchell R. Paglia, Assistant Corporation Counsel III
Raoul Vertick Mowatt, Assistant Corporation Counsel III
City of Chicago, Department of Law
2 North LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-2784 (Clayton Phone)
Danielle.Clayton@Cityofchicago.org
**Attorneys for the City of Chicago**

25

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2022 I served the foregoing document upon all counsel of record by filing a copy with the Clerk of the Northern District of Illinois using the Court's electronic filing system.

/s/ Danielle Alvarez Clayton
Assistant Corporation Counsel III