# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Aaron Burden, | |
| Plaintiff, | |
| | No. 22-cv-46 |
| v. | |
| | Hon. Judge John Z. Lee |
| The City of Chicago, and Chicago Police Officers Albert Torres (#13067), Mohammad Baker (#19740), Andrew Kats (#17577), Angelo Dicera (#14902), and J. Doe Officers 1-5, | Hon. Mag. Judge Young B. Kim |
| Defendants. | |

## PLAINTIFF'S RESPONSE TO DEFENDANT
## CITY OF CHICAGO'S PARTIAL MOTION TO DISMISS

Daniel Massoglia
*daniel@first-defense.org*
Ashley Nicole Rodriguez
*ashley@first-defense.org*
FIRST DEFENSE LEGAL AID
601 S California Ave
Chicago, IL 60612
P: (708) 797 3066

Stephen J. Siegel (#6209054)
*ssiegel@novackmacey.com*
Serena G. Rabie (#6336601)
*srabie@novackmacey.com*
NOVACK AND MACEY LLP
100 N. Riverside Plaza, Suite 1500
Chicago, IL 60606
(312) 419-6900
*Counsel for Plaintiff*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 2

LEGAL STANDARD .......................................................................................... 4

ARGUMENT ....................................................................................................... 4

I.   PLAINTIFF HAS ADEQUATELY PLED THE EXISTENCE OF MULTIPLE
     WIDESPREAD MUNICIPAL CUSTOMS AND PRACTICES ........................................ 5

     A.   The DOJ's 2017 Report Is Relevant to Plaintiff's *Monell* Claim ................................. 6

     B.   Plaintiff Has Pled That The City Fails To Discipline Its Officers ............................. 8

     C.   Plaintiff Has Pled That The City Fails
          To Train Its Officers On Lawful Use Of Force ....................................................... 9

     D.   Plaintiff Has Pled The Existence Of A Code Of Silence Within CPD ................... 11

     E.   Plaintiff Has Pled That CPD Engages In Bias-Based Policing ............................... 13

II.  PLAINTIFF HAS PLED THE REQUISITE CULPABILITY OF THE CITY ............... 15

III. PLAINTIFF HAS PLAUSIBLY ALLEGED THAT THE CITY'S CUSTOMS AND
     PRACTICES CAUSED HIS CONSTITUTIONAL INJURIES ..................................... 17

IV.  THE CITY'S MOTION REPEATEDLY ASSUMES A HIGHER PLEADING
     STANDARD THAN APPLIES AT THIS STAGE ........................................................ 18

V.   THE CITY'S CUSTOMS AND PRACTICES ARE A CONTINUING WRONG
     CAUSING A CONTINUING VIOLATION OF PLAINTIFF'S RIGHTS .................... 20

     A.   Allowing A Continuing Violation Theory At This Stage Is An Appropriate
          Extension Of Existing Law ....................................................................................... 20

     B.   Out-of-Circuit Precedent Supports Plaintiff's Position ........................................... 22

     C.   The City's Cited Authorities Do Not Bind This Court ........................................... 23

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Aaron Blocker,*
   No. 17 C 00055, 2017 WL 3278323 (N.D. Ill. Aug. 2, 2017) ............................................................. 24

*Alexander v. United States,*
   721 F.3d 418 (7th Cir. 2013) ............................................................................................................ 8, 13

*Archie v. City of Chicago,* No. 19 C,
   4838, 2020 WL 5751185 (N.D. Ill. Sept. 25, 2020) ...................................................................... 7

*Arquero v. Dart,* No.,
   No. 19 C 1528, 2022 WL 595730 (N.D. Ill. Feb. 28, 2022) .......................................................... 6

*Arrington v. City of Chicago,*
   17 C 5345, 2018 WL 620036 (N.D. Ill. Jan. 30, 2018) .................................................................. 6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..................................................................................................................... 4, 8

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,*
   520 U.S. 397 (1997) ................................................................................................................... 15, 17

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ......................................................................................................................... 4

*Brooks v. Ross,*
   578 F.3d 574 (7th Cir. 2009) ........................................................................................................... 4

*Brown v. City of Chi.,*
   No. 21 C 01397, 2022 WL 865796 (N.D. Ill. Mar. 23, 2022) ...................................................... 7

*Carmona v. City of Chicago,*
   No. 15 C 00462, 2018 WL 1468995 (N.D. Ill. March 26, 2018) .................................................. 7

*Chapman v. Yellow Cab Coop.,*
   875 F.3d 846 (7th Cir. 2017) ......................................................................................................... 13

*Chavez v. Ill. St. Police,*
   251 F.3d 612 (7th Cir. 2001) ......................................................................................................... 14

*City of Canton, Ohio v. Harris,*
   489 U.S. 378 (1989) ......................................................................................................................... 9

*Cole v. U.S. Capital, Inc.,*
   389 F.3d 719 (7th Cir. 2004) ......................................................................................................... 19

*Cole v. City of Chicago,*
    No. 21 C 1640, 2022 WL 19332 (N.D. Ill. Jan. 3, 2022) ...................................................... 24

*Devbrow v. Kalu,*
    705 F.3d 765 (7th Cir. 2013) .......................................................................................... 20

*Dominguez v. Hendley,*
    545 F.3d 585 (7th Cir. 2008) .......................................................................................... 23

*Doss v. Clearwater Title Co.,*
    551 F.3d 634 (7th Cir. 2008) .......................................................................................... 13

*Evans v. City of Chicago,*
    No. 21 C 4135, 2022 WL 510393 (N.D. Ill. Feb. 20, 2022) .................................................... 6

*Fahs Constr. Grp., Inc. v. Gray,*
    725 F.3d 289 (2d Cir. 2013) ............................................................................................ 23

*Fix v. City of Chicago,*
    No. 21 C 2843, 2022 WL 93503 (N.D. Ill. Jan. 10, 2022) ..................................................... 7

*Flores v. City of S. Bend,*
    997 F.3d 725 (7th Cir. 2021) .......................................................................................... 10

*Frake v. City of Chicago,*
    210 F.3d 779 (7th Cir.2000) ........................................................................................... 15

*Gable v. City of Chicago,*
    296 F.3d 531 (7th Cir. 2002) .......................................................................................... 16

*Gen. Elec. Capital Corp v. Lease Resolution Corp.,*
    128 F. 3d 1074 (7th Cir. 1997) ....................................................................................... 13

*Glisson v. Indiana Dep't of Corr.,*
    849 F.3d 372 (7th Cir. 2017) .......................................................................................... 15

*Gutowsky v. Cnty. of Placer,*
    108 F.3d 256 (9th Cir. 1997) ...................................................................................... 22, 23

*Haligas v. City of Chicago,*
    No. 22 C 313, 2022 WL 2340878 (N.D. Ill. June 29, 2022) ............................................... 7, 16

*Heard v. Sheahan,*
    253 F.3d 316 (7th Cir. 2001) .......................................................................................... 20

*Henson v. CSC Credit Servs.,*
    29 F.3d 280 (7th Cir. 1994) ........................................................................................... 13

*Howard v. Evans*, No. 19 C,
   5146, 2020 WL 5630430 (N.D. Ill. Sept. 21, 2020) ............................................................. 15

*Howard v. Sheriff of Cook Cnty.*, No. 15 C,
   9384, 2016 WL 4366598 (N.D. Ill. Aug. 16, 2016) ............................................................ 12

*Int'l Bhd. of Teamsters v. United States*,
   431 U.S. 324 (1977) .......................................................................................................... 14

*J.K.J. v. Polk Cnty.*,
   960 F.3d 367 (7th Cir. 2020) ............................................................................................ 17

*Jackson v. Marion County*,
   66 F.3d 151 (7th Cir.1995) ............................................................................................... 14

*Johnson v. City of Chi.*,
   No. 20 CV 7222, 2021 WL 4438414 (N.D. Ill. Sept. 28, 2021) ................................... 7, 12

*King v. Kramer*,
   763 F.3d 635 (7th Cir. 2014) .............................................................................................. 4

*Latuszkin v. City of Chicago*,
   250 F.3d 502 (7th Cir. 2001) ............................................................................................ 19

*Leatherman v. Tarrant County*,
   507 U.S. 163 (1993) .......................................................................................................... 19

*Lucente v. Cnty. of Suffolk*,
   980 F.3d 284 (2d Cir. 2020) ............................................................................................. 23

*Marshall v. Buckley*,
   644 F. Supp. 2d 1075 (N.D. Ill. 2009) .............................................................................. 23

*McCauley v. City of Chicago*,
   671 F.3d 611 (7th Cir. 2011) ............................................................................................ 19

*McCormick v. City of Chicago*,
   230 F.3d 319 (7th Cir. 2000) .............................................................................................. 8

*McNabola v. Chicago Transit Auth.*,
   10 F.3d 501 (7th Cir. 1993) .............................................................................................. 15

*Milan v. Schulz*, No. 21 C,
   00765, 2022 WL 1804157 (N.D. Ill. June 2, 2022) ............................................................ 8

*Padilla v. City of Chicago*,
   No. 07 C 5253, 2011 WL 3793413 (N.D. Ill. Aug. 24, 2011) .......................................... 12

*Ruiz-Cortez v. City of Chicago,*
  931 F.3d 592 (7th Cir. 2019) ................................................................................... 17

*Savory v. Lyons,*
  469 F.3d 667 (7th Cir. 2006) ................................................................................. 21, 22

*Scheurer v. Rhodes,*
  416 U.S. 232 (1974) ................................................................................................. 19

*Serna v. Sears,*
  No. 13 C 03359, 2015 WL 3464460 (N.D. Ill. May 29, 2015) ............................ 12

*Sherman v. Town of Chester,*
  752 F.3d 554 (2d Cir. 2014) ..................................................................................... 23

*Shields v. City of Chi.,*
  No. 17 C 6689, 2018 WL 1138553 (N.D. Ill. March 2, 2018) ............................... 6

*Shomo v. City of New York,*
  579 F.3d 176 (2d Cir. 2009) ..................................................................................... 23

*Spearman v. Elizondo,*
  230 F. Supp. 3d 888 (N.D. Ill. 2016) .......................................................... 5, 17, 18

*Swanson v. Citibank, N.A.,*
  614 F.3d 400 (7th Cir. 2010) ......................................................................... 8, 11, 16

*Tamayo v. Blagojevich,*
  526 F.3d 1074 (7th Cir. 2008) .................................................................................... 4

*Taylor v. City of Chicago,*
  No. 21 C 2197, 2021 WL 4523203 (N.D. Ill. Oct. 4, 2021) .................................. 7

*Taylor v. Meirick,*
  712 F.2d 1112 (7th Cir. 1983) ................................................................................. 20

*Taylor v. Norway,*
  2021 WL 4133549 (N.D. Ill. Sept. 10, 2021) ...................................................... 9, 15

*Walden v. City of Chicago,*
  755 F. Supp. 2d 942 (N.D. Ill. 2010) ..................................................................... 24

*Watkins v. Ghosh,*
  No. 11 C 1880, 2011 WL 5981006 (N.D. Ill. Nov. 28, 2011) ............................ 20

*Wilson v. Cook Cnty.,*
  No. 19 C 7824, 2020 WL 5642945 (N.D. Ill. Sept. 22, 2020) ............................ 16

*Wilson v. Giesen*,
   956 F.2d 738 (7th Cir. 1992) ................................................................................................ 20

## **Rules**

Fed. R. Civ. P. 8(a)(2) ............................................................................................................ 4

Plaintiff Aaron Burden ("Plaintiff"), by his undersigned attorneys, submits this response in opposition to the Defendant City of Chicago's ("City") motion to dismiss Count VI (Dkt. 44, the "Motion") of his Amended Complaint (Dkt. 32, "Am. Compl.") and states as follows:

## **INTRODUCTION**

For years, City police officers have tormented Plaintiff. The faces and star numbers of the offending officers have changed, but the song, as they say, remains the same: its cause. The genesis of this pervasive wrongdoing is the City's own: 1) failure to train officers on reasonable uses of force; 2) failure to discipline officers; 3) maintenance, tolerance, and encouragement of a code of silence; and 4) application of widespread bias-based policing. These widespread and persistent conditions have created an unlawful status quo for Plaintiff, one of repeat harassment and continuous violation. So Plaintiff filed suit, and seeks to hold the City directly accountable for creating and maintaining the policing environment that has caused his injuries.

The City now seeks wholesale dismissal of Plaintiff's *Monell* claim. Throughout its Motion, however, the City presupposes a higher pleading standard than the law requires and simultaneously asks the Court to disregard, or make impermissible factual determinations regarding, Plaintiff's allegations. In short, the City wants Plaintiff to *prove* his claim in the complaint, which, of course, is not required.

The City also attempts to shirk responsibility for the unlawful status quo it maintains by seeking to exclude Plaintiff from relief for constitutional violations that it contends are time-barred. It insists that the rub of constitutional tort litigation is such that Plaintiff, were he to vindicate his rights consistent with the deterrence purposes of *Monell* and section 1983, would have had to file seventeen (17) separate lawsuits against the City and its officers since 2017. This should not and cannot be the reality facing victims of repeated police abuse who seek justice, and Plaintiff now asks this

Court to allow his *Monell* claim to proceed as to *all* incidents in the continuing course of events created, condoned, and caused by the City's unlawful police practices.

Finally, Plaintiff acknowledges that Counts VII and VIII do not state viable "continuing tort" state law causes of action, and are time-barred as to Defendants Baker and Torres. Plaintiff requests that to the extent the Motion seeks dismissal of these Counts that it be without prejudice.

## **FACTUAL BACKGROUND**

Plaintiff is a City resident. Like most people, he wants to be free to go about his life in peace, attend to his job, and care for his family. The City's Chicago Police Department ("CPD") has made this impossible. In the past 5 years, Chicago police officers, have, *inter alia*: 1) in July 2017, nearly hit him with a vehicle, calling him a "fucking pussy" and stating of the Civilian Office of Police Accountability ("COPA") disciplinary mechanism "[d]o you think that scares us?... nothing's going to happen"; 2) in April 2018, detained him in his neighborhood without lawful justification and stated that Black people only exist in Chicago's Englewood neighborhood to "fuck with," and subsequently refused to take a civilian complaint about this interaction; 3) in May 2018, accosted him in front of his home and screamed "fuck you" in his face repeatedly; 4) in April 2019, mocked him after he was the victim of an assault; 5) also in April 2019, profiled and stopped him without probable cause and told him he "looked like a terrorist" because of his headscarf; 6) in July 2019, detained him and searched his person and vehicle without probable cause; 7) in May 2020, discriminated against him based on his race, detained him, and used excessive force against him by punching him in the ribs and unlawfully applying overtight handcuffs and ignoring his complaints, all while turning off body-worn camera; 8) in January 2021, unreasonably singled him out, used excessive force by slamming him against a car hood, punched his ribs, pulled his hair, and then falsely arrested him; and 9) in March 2021, unlawfully detained and handcuffed him, illegally seizing his Firearm Owners Identification card ("FOID card"). ("Am. Compl." ¶¶ 15-44.) Plaintiff made COPA complaints, but the harassment did not stop, and

Chicago police have separately targeted Plaintiff on, at minimum, eight other occasions, failing to issue required investigatory stop or other paperwork to document these stops. (*Id.* ¶ 45.)

The City maintains CPD in an unlawful manner through deficient training on uses of force, inadequate disciplinary mechanisms, and the maintenance of both a "code of silence" and widespread bias-based policing. (*Id.* ¶ 13.) Police training is insufficient in both quality and quantity, does not require accurate reporting of incidents of force, and has been and remains inconsistent and inadequate, including by failing to adequately explain the proper constitutional standard and failing to use "examples" for discussion to train on constitutional uses of force. (*Id.* ¶ 64-71.) Although the City is currently under independent monitoring as part of a federal consent decree, it has consistently failed to meet benchmarks for compliance. (*Id.* ¶ 146.) The Attorney General of the State of Illinois observed in June 2020, more than a year after the Decree was entered, that CPD "continues" to be reluctant to change its culture relating to use of force and did not make "substantive changes to policy . . . or training" in response to use of force incidents. (*Id.* ¶ 74.) The City had knowledge of and encouraged an institutionalized code of silence within CPD, one reinforced by police policies, rules, and labor agreements, taking no action or no sufficient action to address it. (*Id.* ¶ 77, 80.) This code has been confirmed by sources including, but not limited to, a Chicago police officer, a jury verdict, policymakers, and the United States Department of Justice ("DOJ"). (*Id.* ¶¶ 76-82.) The City and CPD's disciplinary mechanisms work in tandem with the code of silence to frustrate accountability and lead officers. (*Id.* ¶ 87.) These mechanisms lack integrity and are marked by entrenched, systemic policies and practices that undermine accountability. (*Id.* ¶ 84-87.) Discipline, when imposed, is insufficient to deter future misconduct. (*Id.* ¶ 89.)

CPD also carries out its policing duties in a racially biased manner, whether in pedestrian stops, traffic stops, hiring, or uses of force. (*Id.* ¶¶ 57-62.) Officers use social media to express racially

discriminatory views. (*Id.* ¶ 142.) Officers used discriminatory epithets or racist language in their interactions with Plaintiff. (*Id.* ¶¶ 19, 25.) [1]

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing a right to relief, so that the defendant has "fair notice" of the claim. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The notice pleading regime is "liberal," and intended to "focus litigation on the merits" rather than technicalities. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). A complaint must contain sufficient factual matter to state a facially plausible claim such that the court may reasonably infer that defendants are liable for misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts all well-pled allegations in the complaint as true, and construes the complaint in the light most favorable to the plaintiff with all possible inferences' being drawn in his favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

## ARGUMENT

To establish municipal liability, a plaintiff must show that he "(1) suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policymaking authority . . . . which (3) was the proximate cause of his injury." *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014). The City concedes that Plaintiff has pled deprivations of a federal right, and the Amended Complaint illustrates multiple municipal customs and practices and explains how they caused his constitutional injuries.

---

[1] If the court ultimately finds that Plaintiff's factual allegations regarding the widespread practices of the Chicago police department are lacking, Plaintiff requests that the Court dismiss this count without prejudice to allow the inclusion of more factual allegations, including, but not limited to, a March 2022 report of the City of Chicago Office of the Inspector General outlining racially disparate uses of force by Chicago police.

The City's Motion attempts to turn the pleading stage into a venue to contest Plaintiff's well-pled allegations, offering a rote refrain that allegations detrimental to its position are "conclusory" while failing to credit the substance of the Amended Complaint. The City improperly asks the Court to resolve disputes of fact and draw inferences in its own favor to the effect that existing, plainly identified customs and practices do not exist. In doing so, the Motion overstates and misapplies the requisite legal standard at this stage of a lawsuit and should be denied.

## I. PLAINTIFF HAS ADEQUATELY PLED THE EXISTENCE OF MULTIPLE WIDESPREAD MUNICIPAL CUSTOMS AND PRACTICES

The Amended Complaint identifies multiple customs and practices operating in the relevant time period,[2] sufficient to give the City notice of the subject matter of his claim—all that Plaintiff is required to do at this stage. The Motion should be denied.

These customs and practices are a failure to discipline officers, a failure to train officers on lawful uses of force, a code of silence, and bias-based policing, which act as "a set of interrelated, mutually-reinforcing customs or practices, all of which contribute to the civil rights violations alleged." *Spearman v. Elizondo*, 230 F. Supp. 3d 888, 893 (N.D. Ill. 2016). In doing so, Plaintiff pairs his own traumatic experiences at the hands of the Individual Defendants and other officers with the findings and conclusions of a variety of independent sources, ranging from the DOJ and the Illinois Attorney General to police superintendents and line police officers. Plaintiff refers the Court to disciplinary histories of a defendant officer; and to the actions of officers' in turning off body cameras, explicitly scoffing at accountability mechanisms, singling out Plaintiff because of his race, and explicitly denigrating Black people, over the years of attacks on his rights and dignity.

Ultimately, to sustain his *Monell* claim against a Rule 12(b)(6) motion, Plaintiff "…does not have to come forward with facts proving a widespread practice ... he need only state a plausible claim

---

[2] For discussion of the proper timeframe for consideration, see section V, *infra.*

for relief." *Arquero v. Dart*, No. 19 C 1528, 2022 WL 595730, at *6 (N.D. Ill. Feb. 28, 2022) (citing *Shields v. City of Chi.*, No. 17 C 6689, 2018 WL 1138553, at *4 (N.D. Ill. March 2, 2018)). Plaintiff has done so.[3]

A.     **The DOJ's 2017 Report Is Relevant to Plaintiff's *Monell* Claim**

The Motion asserts that the DOJ's 2017 Report provides "no support" for Plaintiff's allegations regarding the existence of widespread practices in what it characterizes as the "relevant post-January 2020 timeframe." While the parties contest just what time period is relevant for purposes of Plaintiff's suit, no matter what range the Court ultimately concludes is actionable, the City's position belies both common sense and the present state of *Monell* decisional law. The City's position also impermissibly asks the Court to: (i) draw inferences in the City's favor—such as what training is actually in effect and whether it is adequate, or whether the code of silence in fact operated to cause a given instance of misconduct; and (ii) do so from materials outside the record.

As a threshold matter, courts in this District have repeatedly found the DOJ Report to provide support for claims of municipal liability similar to that alleged in Plaintiff's complaint, and premised on incidents occurring both before and after the City's current asserted relevance cutoff of January 2020. *See, e.g.*, *Arrington v. City of Chicago*, 17 C 5345, 2018 WL 620036, at *3 (N.D. Ill. Jan. 30, 2018) (Evidence underlying DOJ Report "more than sufficient to plausibly infer that the City has a custom or practice of [unlawful policing], and that the City was on notice of this custom or practice. . . the DOJ Report citing evidence that such a custom or practice does in fact exist is a sufficient basis for plaintiff's *Monell* claim to proceed."); *Shields v. City of Chicago*, 17 C 6689, 2018 WL 1138553, at *4 (N.D. Ill. Mar. 2, 2018) (Plaintiff's allegations "that the Police Accountability Task Force and DOJ Report

---

[3] If the Court finds that one of Plaintiff's *Monell* theories is insufficiently pled, nevertheless wholesale dismissal would be inappropriate on that ground. *See Evans v. City of Chicago*, No. 21 C 4135, 2022 WL 510393, at *2 (N.D. Ill. Feb. 20, 2022) (noting in denying motion to dismiss *Monell* claim, "at this point [plaintiffs] need not sustain every theory; one will do.")

highlight the deficiencies in relation to the CPD's use of excessive force that are sufficiently similar to Plaintiff's. . .—rais[ed] a reasonable inference that he is not alone in suffering constitutional injuries resulting from this alleged practice or custom.").[4]

The City wishes to mark January 2020 as a miraculous break in time at which point the DOJ's sweeping and thorough investigation of CPD simply stops mattering for plaintiffs seeking municipal liability, but does not give any convincing reason why this should be so. Its support for this position is scant: the accurate, but here inapposite, observations of two district courts that the Report's relevance "diminishes" over time and is not a "master key" to unlock *Monell* discovery. City's Motion at 13 (citing *Taylor v. City of Chicago*, No. 21 C 2197, 2021 WL 4523203, at *3 (N.D. Ill. Oct. 4, 2021) and *Carmona v. City of Chicago*, No. 15 C 00462, 2018 WL 1468995 at *4 (N.D. Ill. March 26, 2018)). The Court here is confronted with a dramatically different pleading from that in *Taylor* and *Carmona* (in each case, the plaintiff cited the DOJ Report for the first time in response to a motion to dismiss, and, further, both complaints were faulted for boilerplate and conclusory pleading).

The City, unsurprisingly, wants to minimize the importance of sources critical of its operations. But its arguments to this effect are premature at best, and crediting the City's contention that the DOJ Report has no application to events occurring in 2020 or later would be to resolve a dispute of fact against Plaintiff. The question facing this Court is whether the conclusions of the DOJ's barely five-year-old investigation, which represent the most in-depth examination of CPD's culture and standard

---

[4] *See Archie v. City of Chicago*, No. 19 C 4838, 2020 WL 5751185, at *1 (N.D. Ill. Sept. 25, 2020) (same); *Johnson v. City of Chi.*, No. 20 CV 7222, 2021 WL 4438414, at *5 (N.D. Ill. Sept. 28, 2021) (DOJ Report bolstered plausibility of *Monell* claim based on conduct after its publication and "permit[ted] the reasonable inference that the practice is so widespread so as to constitute a governmental custom." (citations omitted)); *Brown v. City of Chi.*, No. 21 C 01397, 2022 WL 865796, at *10 (N.D. Ill. Mar. 23, 2022) (same); *Haligas v. City of Chicago*, No. 22 C 313, 2022 WL 2340878, at *4 (N.D. Ill. June 29, 2022) (same); *Fix v. City of Chicago*, No. 21 C 2843, 2022 WL 93503, at *2 (N.D. Ill. Jan. 10, 2022) (DOJ Report lent plausibility to *Monell* claim based on May 2020 conduct).

operating procedures in recent memory, lend plausibility to Plaintiff's *Monell* claim. The answer, as many courts have already concluded, is yes.

### B.    Plaintiff Has Pled That The City Fails To Discipline Its Officers

The City argues that many of Plaintiff's allegations regarding its inadequate police disciplinary mechanisms are conclusory.  But the City does not supply any legal authority to assist in determining what is conclusory and what isn't, and an examination of the law regarding the requisite pleading standard reveals that this argument falls short.

While a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement," *Iqbal,* 556 U.S. at 678 (brackets and quotation marks omitted), a plaintiff is not required to include "detailed factual allegations." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) Indeed, in this Circuit, even "a 'conclusory' *Monell* claim [may] survive a motion to dismiss when the Complaint is 'sufficient to put the City on notice of [plaintiff's] claim against it' and does not '[leave] out facts necessary to give the defendants a complete understanding of the claims made against them.'" *Milan v. Schulz*, No. 21 C 00765, 2022 WL 1804157, at *4 (N.D. Ill. June 2, 2022) (citing *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000)); *see also Lyons v. City of Chicago*, No. 20 C 03412, Dkt. 78, at *4 (N.D. Ill. Sept. 30, 2021) (same).[5] A plaintiff simply must give enough information about the subject-matter of the case to present a story that "holds together" *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The Amended Complaint more than meets this bar in alleging a City custom of failing to discipline officers.

Plaintiff alleges that the City's disciplinary system is broken and lacks integrity, that investigators rarely ask probing questions of police officers, and that discipline imposed is inadequate on the rare occasions where any action is taken at all, and further subject to review and veto by the

---

[5] The *Lyons* opinion is not available on Westlaw. A true and correct copy is attached as **Exhibit 1**.

Police Board. (Am. Compl. ¶¶ 84-89, 150-151.) He alleges that the status quo of Chicago police discipline works in tandem with the code of silence. (*Id.* ¶ 87.) Plaintiff points to the complaint history of an officer who violated his rights, which were sustained at a very low level. (*Id.* ¶ 37.) Courts have repeatedly found similar allegations were sufficient to support a claim regarding a City practice of failing to discipline and were not impermissibly conclusory. In *Taylor v. Norway*, for example, the plaintiff alleged the following of the City's disciplinary apparatus:

> that CPD fails to discipline its officers for "prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff." For example, Plaintiff alleges that there are "findings of wrongdoing in a disproportionately small number of cases" against officers. She further alleges that the organizations designated to investigate officer misconduct such as IPRA and COPA do not reasonably investigate accusations and "refuse to recommend discipline even where the Officer has violated rights of citizens."

No. 20 C 7001, 2021 WL 4133549, at *3 (N.D. Ill. Sept. 10, 2021) (internal citations omitted). In examining these allegations, Judge Dow determined that they were "more than simply legal conclusions." *Id.* at *4. Judge Dow also cited decades of opinions in this Circuit concluding the same of similar. *Id.* (collecting cases). Simply put, the City's argument that Plaintiff has not alleged an inadequate disciplinary apparatus for *Monell* purposes is unsupported and should be rejected.

C.   **Plaintiff Has Pled That The City Fails
     To Train Its Officers On Lawful Use Of Force**

Plaintiff has also met his pleading burden as to deficiencies in training officers regarding excessive force. The City's arguments to the contrary are insufficient to support dismissal.

A plaintiff may successfully allege a *Monell* claim based on a widespread practice of failing to train police officers where this failure constitutes deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "Failure-to-train liability does not require proof of widespread constitutional violations before that failure

becomes actionable; a single violation can suffice where a violation occurs and the plaintiff asserts a recurring, obvious risk." *Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021).

Plaintiff has alleged two uses of excessive force against him, and connected them to a broader universe of unconstitutional Chicago police actions, as observed by the DOJ and others, that evince a City custom of providing deficient use of force training. The individual defendants have not challenged the adequacy of the pleading as to the underlying excessive force, and Plaintiff also has alleged how the City's deficient training caused his injury.

The City argues in subsection II(A)(1) of its Motion that Plaintiff has not shown a "custom or policy" of deficient training, but this merges into an argument regarding causation and deliberate indifference rather than a repudiation of the existence of the practice itself. Its argument generally proceeds along two equally unpermitted and erroneous grounds.

First, the City attempts to impose a heightened pleading standard on Plaintiff. The City argues that a *Monell* claim premised in part on a failure to train theory must both outline with specificity all aspects of a police department's training procedures and also set forth the plaintiff's own assessment of what proper use of force training would look like. City's Motion at 14. Such a requirement would go beyond requiring a plaintiff to offer a "short and plain statement of the claim." Nonetheless, Plaintiff *has* outlined the nature of the training that was deficient (and by extension what training would fix it) (Am. Compl. ¶¶ 63-75); he should not be required, without the benefit of discovery, to cite chapter and verse of CPD's training, nor be asked to write CPD's use of force curriculum for it. This rationale is not sufficient to justify dismissal.

Second, the City argues that Plaintiff has failed to allege a failure by the City to train its officers, yet merely disputes Plaintiff's well-pled facts or asks the Court to draw inferences about these facts in its favor. This request is impermissible at this stage, where it is a *plaintiff's* facts that are assumed to be true. For example, the City suggests that Plaintiff's allegations about the ongoing volume of civilian

complaints are deficient because they "do[] not show" that these complaints are valid or that they are similar to what he has experienced. (City's Motion at 14-15.) This is not a determination any party could make and plead at this early stage, nor may the Court credit the City's efforts to contradict Plaintiff's well-pled allegations. (For example, Plaintiff does, in fact, allege that the excessive force complaints are similar to what he has experienced.) Similarly, the City asks the Court to draw conclusions and inferences in its favor about the COPA's 2017 recommendations to CPD. But, again, a Rule 12(b)(6) motion is not a vehicle for that—as the Seventh Circuit has noted, in considering a pleading motion, "is not necessary to stack up inferences side by side" and base a holding on an evaluation of the likelihood of same. *Swanson v. Citibank, N.A.*, 614 F.3d at 404.

Although the City misunderstands or takes issue with Plaintiff's allegations regarding the Attorney General of Illinois' comments to the independent monitor regarding use of force training, the City's interpretation of a contested fact is unsuitable for determination on a motion to dismiss and not subject to judicial notice. *See Snell-Jones v. Hertz Corp.*, No. 19 C 00120, at *6 (N.D. Ill. Mar. 13, 2020) (a court may only take judicial notice of a fact "not subject to reasonable dispute").

### D. <u>Plaintiff Has Pled The Existence Of A Code Of Silence Within CPD</u>

Through a detailed exposition of decades of CPD's code of silence—which the present mayor, the former mayor, and multiple police superintendents have acknowledged and done nothing about— the Amended Complaint far exceeds Plaintiff's pleading requirements.

As the Amended Complaint outlines, a code of silence exists in CPD, and Defendants took steps consistent with the code of silence in their interactions with Plaintiff: turning off body-worn cameras[6] (Am. Compl. ¶¶ 33, 83); stating that COPA wouldn't do anything in response to a

---

[6] The City argues "Bodyworn cameras are a key tool to constraining the code of silence because video evidence of what happens makes it impossible for officers to successfully lie about it[.]" City's Motion at 21. But this impermissibly attempts to create a dispute of fact and ignores that Plaintiff has plainly alleged that officers turned *off* their body-worn cameras. (Am. Compl. ¶¶ 33, 83.)

misconduct complaint (*Id.* ¶¶ 16, 83); and failing to intervene or complain of other officers' unlawful actions (*Id.* ¶ 83, 134-139). Officers who do not fear accountability do not hesitate to act with impunity.

As a court in this District noted just last year, "the DOJ's conclusions and the Chicago Police Superintendent's acknowledgement that a code of silence exists in the Chicago Police Department support the conclusion that the City has a widespread policy or practice of covering up misconduct." *Johnson v. City of Chicago,* No. 20 C 7222, 2021 WL 4438414, at *5 (N.D. Ill. Sept. 28, 2021) (permitting inference of widespread governmental custom) (quotations and citations omitted).

The City's argument that allegations in the Amended Complaint are outdated falls flat. Key to establishing both the widespread nature of the code of silence as well as the City's deliberate indifference to it is demonstrating the longstanding nature of this code. The City again baselessly levies the accusation of "conclusory" against Plaintiff's allegations in this regard, but even if it were true—and it is not—this would not suffice to justify dismissal. *See Howard v. Sheriff of Cook Cnty.*, No. 15 C 9384, 2016 WL 4366598, at *3 (N.D. Ill. Aug. 16, 2016) ("Courts in the Northern District of Illinois have continued to allow conclusory pleading for *Monell* claims even after Twombly and Iqbal.") (citing *Padilla v. City of Chicago*, No. 07 C 5253, 2011 WL 3793413, at *5 (N.D. Ill. Aug. 24, 2011), *Serna v. Sears*, No. 13 C 03359, 2015 WL 3464460, at *3 (N.D. Ill. May 29, 2015)). Plaintiff has pled enough facts to support his allegation that the code of silence was and is a widespread City custom.

The City's arguments are, in sum, insufficient and even self-contradictory. For example, pages after disclaiming the DOJ Report's relevance to Plaintiff's allegations, the City writes "[t]he DOJ Report actually states 'We cannot determine the exact contours of this culture of covering up misconduct, nor do we know its precise impact on specific cases,'" City's Motion at 17. This citation is both a) an admission of the Report's relevance and b) a precise illustration of the improper bar the City seeks to erect in this case. Notice pleading does not require a plaintiff, in the complaint, to "determine the exact contours" of anything, nor does Rule 12(b)(6) permit the inference that because

one oversight body declined to opine as to a "precise impact" of a code of silence on "specific cases," it was not present or actionable here. *See Alexander v. United States*, 721 F.3d at 422 (a plaintiff is not required to include "detailed factual allegations" to meet notice pleading standards); *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) ("A full description of the facts that will prove the plaintiff's claim comes later, at the summary-judgment stage or in the pretrial order."); (City's Motion at 17.)

Though the code of silence's pernicious and continuing effect is evident from allegations in the Amended Complaint, to the degree that recency is a concern, the Court may take judicial notice of a recent acknowledgment of the pernicious effects of the code of silence in the CPD—a $4.5 million jury verdict in favor of whistleblowing Chicago police officer, who, upon reporting fabrications by fellow officers, was retaliated against and reassigned in conformity with the code of silence.[7] *Srec v. City of Chicago*, 2020 L 10535 (Cir. Ct. Cook County July 22, 2022), attached as **Exhibit 2.** Turning a blind eye to the problem of the thin blue line is part and parcel of this case, and part and parcel of policing in the City. Its existence is thoroughly established.

E.     **Plaintiff Has Pled That CPD Engages In Bias-Based Policing**

Plaintiff has alleged that the CPD has a widespread practice of engaging in bias-based policing sufficient to withstand dismissal of his *Monell* claim.

A widespread custom can be demonstrated "by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what

---

[7] A court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion to dismiss to a motion for summary judgment, particularly facts that are (1) not subject to reasonable dispute and (2) either generally known within the jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned. See, *e.g.*, *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008), 551 F.3d, 640; *Gen. Elec. Capital Corp v. Lease Resolution Corp.*, 128 F. 3d 1074, 1081 (7th Cir. 1997); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (finding public court documents judicially noticeable.)

was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers." *Jackson v. Marion County,* 66 F.3d 151, 152 (7th Cir.1995).

Plaintiff has been singled out, repeatedly, for unlawful treatment by CPD because he is Black. (Am. Compl. ¶ 123.) He has been told that people of his race only exist in his neighborhood for purposes of police harassment. (*Id.* ¶ 19, 168.) He has been called a terrorist because he wore a headscarf. (*Id.* ¶ 25.) He has outlined that CPD, on a broader level, operates in a manner marked by racial bias in various aspects, including in traffic stops, pedestrian stops, uses of force, and hiring. (*Id.* ¶¶ 57-62.)

The Motion says that this is not enough to state a claim based on a custom of widespread bias-based policing in the CPD. But Plaintiff's personal experience, paired with the experiences of others, and the use of statistics, meet and exceed his pleading burden at this stage.

The City's arguments regarding statistical allegations both misapply the pleading standard and miss the point on the law. "The Supreme Court has long noted the importance of statistical analysis 'in cases in which the existence of discrimination is a disputed issue.'" *Chavez v. Ill. St. Police,* 251 F.3d 612, 637–38 (7th Cir. 2001) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 (1977)).[8] While the City cites to a district court opinion questioning the use of statistics as a tool for causation, this misapprehends what is required of Plaintiff at this point. (City's Motion at 18.) Plaintiff does not need to *prove* causation at this point—he must state a plausible claim. As such, the statistics referenced in the Complaint are a proper piece of the broader picture before the Court in determining whether Plaintiff is entitled to proceed against the City to the place of proof.

---

[8] While the *Chavez* court ultimately did not credit the statistical evidence the plaintiffs introduced, this decision came at the more exacting summary judgment stage, not on a Rule 12(b)(6) motion to dismiss.

## II.   **PLAINTIFF HAS PLED THE REQUISITE CULPABILITY OF THE CITY**

The "critical question" in *Monell* is whether "the action about which the plaintiff is complaining [is] one of the institution itself, or is it merely one undertaken by a subordinate actor?" *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017).

The Amended Complaint makes sufficient allegations that the institution is at fault—the consistent, repeated violations of Plaintiff's rights, taken pursuant to unaddressed customs and practices known to the City and its policymakers, indicates that the acts and omissions Plaintiff targets are those of the institution itself, not merely those of subordinate actors. The misconduct he describes is not the result of a few bad apples, but rather a rotten barrel.

Deliberate indifference is present where conditions are such that "a reasonable policymaker [would] conclude that the plainly obvious consequences" of a municipality's actions would result in the deprivation of a federally protected right. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 411 (1997); *see Frake v. City of Chicago*, 210 F.3d 779, 782 (7th Cir.2000) (defining deliberate indifference as requiring a showing at summary judgment that policymakers "were aware of a substantial risk" of a constitutional violation and "failed to take appropriate steps to protect [a plaintiff] from a known danger"). "The longstanding or widespread nature of a particular practice would support the inference that policymaking officials must have known about it but failed to stop it." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 511 (7th Cir. 1993) (internal quotation marks and citations omitted). Plaintiff's Amended Complaint meets these standards.

The City's position—that because it has entered into a federal consent decree, it is immune from *Monell* liability—is both remarkable and unsupported by existing law. *See, e.g.*, *Taylor*, 2021 WL 4133549, at *5 (noting that mere establishment of COPA and OIG fail to establish as a matter of law that defendant was not deliberately indifferent); *Howard v. Evans*, No. 19 C 5146, 2020 WL 5630430, at *4 (N.D. Ill. Sept. 21, 2020) (defendant's similar argument regarding improvements at the time of

the alleged violation could not "be resolved on a motion to dismiss"); *Wilson v. Cook Cnty.*, No. 19 C 7824, 2020 WL 5642945, at *4 (N.D. Ill. Sept. 22, 2020) (plaintiff stated a *Monell* claim against Cook County notwithstanding "subsequent measures to address the [constitutional] problems identified in [a DOJ] report"); *Haligas v. City of Chicago*, No. 22 C 313, 2022 WL 2340878, n1 at *4 (N.D. Ill. June 29, 2022) (Denying motion to dismiss *Monell* claim and noting "if anything, the existence of the consent decree suggests that the City was aware of the types of constitutional violations complained of by plaintiff."). Further strengthening Plaintiff's position is that the remedial measures the City seeks to introduce into the record have seen spotty follow-through and have not diminished the harms of which Plaintiff complains, (Am. Compl. ¶¶ 71, 146), unlike those cases where remedial measures have been sufficient to defeat a deliberate indifference component at later stages of litigation. *See Gable v. City of Chicago*, 296 F.3d 531, 539 (7th Cir. 2002) (summary judgment burden for deliberate indifference not met where remedial measures were "successful in decreasing" the relevant harm). Accepting the City's characterization of the law would dramatically restrict the public's ability to seek accountability for police misconduct that is, varyingly, ignored, condoned, or encouraged by the City.

The City's routine noncompliance with the consent decree, as alleged by Plaintiff, is, again, not something the city may contest at this point. Nor does the City's citation to additional quotes from materials referenced in the Amended Complaint, related to training and deliberate indifference, suffice to support dismissal in this case. (City's Motion at 15-16); *see Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("For cases governed only by Rule 8, it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences."); *see also Haligas v. City of Chicago*, No. 22 C 313, 2022 WL 2340878, at *4 (N.D. Ill. June 29, 2022) (denying motion to dismiss *Monell* claim and noting "if anything, the existence of the consent decree suggests that the City was aware of the types of constitutional violations complained of by plaintiff.").

The Court should not establish such a superficial and blanket "consent decree immunity" to *Monell* here.

### III. PLAINTIFF HAS PLAUSIBLY ALLEGED THAT THE CITY'S CUSTOMS AND PRACTICES CAUSED HIS CONSTITUTIONAL INJURIES

The City also argues that Plaintiff has not pled causation. The City is, again, incorrect.

To establish causation, a plaintiff must show that "municipal action was the moving force behind the constitutional injury." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019). This requires demonstrating a "direct causal link" between the municipal action and the constitutional injury. *Id.* at 599. Here the connection is not difficult to discern. The Amended Complaint alleges that the City has failed to address known deficiencies in the CPD's use of force training, disciplinary systems, code of silence, and bias-based policing, and that the "highly predictable consequences" of this failure were the constitutional violations Plaintiff suffered. (Am. Compl. ¶¶ 145, 149, 153); *see Spearman v. Elizondo*, 230 F. Supp. 3d 888, 894-95 (N.D. Ill. 2016) (finding that plaintiff adequately alleged the causation element of her *Monell* claim where the "thrust of the complaint" was that "the CPD's code of silence, and the City's policy of refusing to discipline officers, positively encouraged or emboldened the officer defendants to carry out [the violations] alleged").

Both the Supreme Court and the Seventh Circuit have noted that the "high degree of predictability" that supports notice for the purpose of showing deliberate indifference "may also support an inference of causation—that the municipality's indifference led to the very consequence that was so predictable." *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 384 (7th Cir. 2020) (quoting *Bryan County*, 520 U.S. at 409-10); *see id.* at 384 ("Much of the same evidence proving [defendant] deliberately indifferent to the constitutional consequences of its inaction likewise illustrates that its indifference was the moving force behind [plaintiffs'] injuries.").

That is exactly the case here. Given the duties of CPD officers in interacting with the public, the City's failure, for example, to adequately train the officers on the use of reasonable force would

almost certainly be expected to cause the constitutional violations alleged in the Amended Complaint. The code of silence, which emboldens officers to commit misconduct without consequence, means that deprivations of rights are predictable as long as the code remains in effect and unaddressed. And even if it was not highly predictable that the City's failure to act would lead to the alleged constitutional violations, the Amended Complaint's allegations nonetheless support that the City's actions and customs were the moving force behind Plaintiff's injuries. *See Spearman v. Elizondo*, 230 F. Supp. 3d 888, 894-95 (N.D. Ill. 2016) (finding that plaintiff adequately alleged the causation element of her *Monell* claim where the "thrust of the complaint" was that "the CPD's code of silence, and the City's policy of refusing to discipline officers, positively encouraged or emboldened the officer defendants to carry out [the violations] alleged").

And though the City's Motion states that Plaintiff's Amended Complaint contains only conclusory paragraphs of causation, (City's Motion at 24), it does not acknowledge that Plaintiff offers, for example, no fewer than six allegations of causation with regard to the code of silence alone. (Am. Compl. ¶ 83.) Plaintiff has met his burden and the Motion should be denied.

## IV. THE CITY'S MOTION REPEATEDLY ASSUMES A HIGHER PLEADING STANDARD THAN APPLIES AT THIS STAGE

*Monell* claims are difficult to prove—this is, for once, not a matter in dispute. But complaints are not the vehicle for proof, and so the Motion's attempts to impose a vast and bewildering series of extra-legal requirements upon Plaintiff's pleading fall flat. Indeed, dismissal is inappropriate to the extent that the City attempts to impose upon Plaintiff any pleading standard other than what is required by applicable rules and precedent. In that regard, the City's Motion must be denied because it consistently makes arguments more appropriate for summary judgment and goes so far as to allege additional facts not pled in Plaintiff's Amended Complaint. For example, the City's out-of-the-blue, uncited contention that body-worn cameras "make it impossible" for officers to successfully lie about police misconduct—this is a "fact" entirely of the City's own making. (City's Motion at 21.)

It is well-established that "[a] plaintiff's complaint in a… municipal liability claim need not meet any heightened pleading standard, but rather must simply set forth sufficient allegations to place the court and defendants on notice of the gravamen of the complaint." *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001); *see also Leatherman v. Tarrant County*, 507 U.S. 163 (1993); *McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011).

For purposes of Rule 12(b)(6), "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheurer v. Rhodes*, 416 U.S. 232, 236 (1974)). Plaintiff has sufficiently pled Fourth and Fourteenth Amendment violations coupled with *Monell* allegations hat the City, despite notice, has not addressed well-documented and well-pled failures in training, discipline, bias-based policing, and maintenance of a code of silence.

The City asks Plaintiff, without any discovery, to allege the minutiae of CPD's inadequate training regime. (City's Motion at 14.) The Motion even demands Plaintiff plead his own recommendations as to appropriate use of force training. *Id.* The City consistently casts Plaintiff's allegations as conclusory and therefore subject to disregard despite the fact that the Amended Complaint plainly includes a plausible statement of his claim for relief. *See* City's Motion, generally. Likewise, the Motion asks the Court to credit the City's own allegation and interpretation of its purported compliance with the federal consent decree, and/or infer that entry into the consent decree represents comprehensive and sufficient reform of the City's unconstitutional practices such that deliberate indifference may not be established.

None of these improper asks presents a valid ground for dismissal, and the Motion should be denied.

# V. THE CITY'S CUSTOMS AND PRACTICES ARE A CONTINUING WRONG CAUSING A CONTINUING VIOLATION OF PLAINTIFF'S RIGHTS

## A. Allowing A Continuing Violation Theory At This Stage Is An Appropriate Extension Of Existing Law

Although courts in this Circuit have yet to apply the continuing violation doctrine under circumstances like that presented by Plaintiff's claim, doing so here would be an appropriate use of the Court's power to extend the law, and would be consistent with the reformatory purposes of section 1983 and *Monell* liability.

The "continuing violation doctrine" is an accrual rather than a tolling doctrine, and "operates to *delay* the start of the limitations period." *Devbrow v. Kalu*, 705 F.3d 765, 770 (7th Cir. 2013); *see Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). This doctrine allows the plaintiff to "reach back" to initial events, "even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *Heard v. Sheahan*, 253 F.3d at 319. The *Heard* court explained the doctrine is useful in terms that apply equally to police misconduct action. "We have enough prisoners' suits without having to create incentives to bring multiple suits arising out of the same course of events." *Id.* at 320.[9]

While generally, the two-year statute of limitations period for civil rights claims accrues when the plaintiff knows or has reason to know his constitutional rights have been violated, *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992), "the statute of limitations does not begin to run on a continuing wrong till the wrong is over and done with." *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983).

---

[9] *See also Blankenship v. Pushpin Holdings, L.L.C.*, 175 F. Supp. 3d 788, 794-95 (N.D. Ill. 2016) (applying continuing violation doctrine and finding that plaintiffs' claims under the Illinois Consumer Fraud Act were not time barred); *Watkins v. Ghosh*, No. 11 C 1880, 2011 WL 5981006, at *3 (N.D. Ill. Nov. 28, 2011) (rejecting defendants' argument that plaintiff's claims were untimely because "[w]hile [plaintiffs'] injury occurred in 2006, he has sufficiently alleged an ongoing denial of medical care that continued through 2010").

In this case, the continuing wrong is the City's continuing policies, practices, customs, and usages—with particular emphasis on hand-in-glove CPD code of silence, inadequate disciplinary mechanisms, and bias-based policing—which have violated Plaintiff's constitutional rights. This wrong is made actionable through concrete acts of Fourth Amendment unlawful seizures and 14th Amendment discrimination. Ultimately, Plaintiff complains of the same course of events. Members of the same department, employed by the same city, primarily in the same police district, operating within an environment guided by the same customs and practices, committed a series of related constitutional violations that were wrongly targeted at one individual. CPD, as much as officers, is responsible—and should be *held* responsible.

This Circuit has adopted the continuing violation doctrine in section 1983 actions. For example, in *Savory v. Lyons*, cited by the City, the Seventh Circuit considered a constitutional tort claim and noted several circumstances in which this Circuit had already recognized a continuing violation, including when an injury "…only be[came] apparent in light of later events." 469 F.3d 667, 672 (7th Cir. 2006).

In this case, Plaintiff has alleged that certain customs and practices of the City caused his injury, relying in part on the frequency with which police officers have targeted him to demonstrate that these customs and practices were widespread. Indeed, the repeat nature of the behavior is important to Plaintiff stating a *Monell* claim, given that the judicial concern that the *Monell* doctrine not be turned into a form of vicarious liability roping a municipality into litigation over random or isolated actions of its employees. Indeed, defendant municipalities facing *Monell* claims often argue that a plaintiff has presented insufficient instances of unlawful conduct to have a custom recognized as "widespread." Absent the application of a continuing violation theory in appropriate circumstances, plaintiffs are presented a Hobson's choice—bring your *Monell* claim early and risk not showing a

practice is widespread or wait until it is demonstrably widespread and risk a time-bar on older incidents.

A separate circumstance from *Savory* also applies in the present case—"when a state actor has a policy that brings a fresh violation each day." *Savory v. Lyons*, 469 F.3d at 672. The unlawful customs and practices of the City have been in force, and have remained in force, throughout the time period relevant to this suit. Constitutional violations have repeatedly occurred as a result of the City's status quo. Plaintiff respectfully contends that his circumstance is just such a scenario.

### B. Out-of-Circuit Precedent Supports Plaintiff's Position

The application of the continuing violation doctrine to section 1983 claims is not unique to this Circuit, and cases from the Ninth and Second Circuits support its application here.

The Ninth Circuit, analogizing to Title VII employment discrimination cases, has recognized that where a plaintiff alleges a policy or practice of systematic discrimination, application of the continuing violation doctrine may be appropriate. *Gutowsky v. Cnty. of Placer*, 108 F.3d 256, 259 (9th Cir. 1997). There, the court determined that "the continuing violations doctrine is applicable to *Monell* actions." *Id.* ("If the continuing violations doctrine were inapplicable to *Monell* actions, it is difficult to ascertain exactly when such claims would accrue, especially if no specific discriminatory acts evidenced the policy during the year immediately prior to the filing of the lawsuit.")

The *Gutowsky* court further observed that "a continuing violation may be established through a series of related acts against one individual, or by a systematic policy or practice of discrimination." *Id.* (citation omitted). Here, Plaintiff has alleged both. First, he has pled a course of conduct by officers, typically from the same CPD district, whose faces are so familiar and whose conduct so consistent that Plaintiff recognizes certain officers who have previously violated his rights (Am. Compl. ¶ 48). Second, he has pled systematic policies and practices, including discrimination in the form of bias-based policing, failures to train and discipline and via the code of silence.

The Second Circuit has also noted that the continuing violation doctrine is an exception to normal accrual rules, which "applies to claims composed of a series of separate acts that collectively constitute one unlawful practice." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) (cleaned up)). It noted that in that circuit the doctrine is not limited to Title VII cases. *Id.* (citing *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 291-92 (2d Cir. 2013) (applying doctrine to Equal Protection claim); *Sherman v. Town of Chester*, 752 F.3d 554, 566-67 (2d Cir. 2014) (applying doctrine to an unlawful takings claim); *Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009) (applying doctrine to Eighth Amendment deliberate indifference claim).

These cases illustrate the present point. In *Gutowsky*, a section 1983 plaintiff alleged a discriminatory governmental practice, marked by discrete discriminatory acts, which persisted over time until the last date that she was subject to the policy. 108 F.3d at 258. The *Lucente* court faced a discriminatory policy that caused sexual misconduct against prisoners occurring both prior and subsequent to the standard limitations period. 980 F.3d at 309-310.

Similarly, CPD, operating in accordance with longstanding and persisting conditions, has engaged in numerous discrete acts against Plaintiff, creating a state of affairs where he is terrified to go outside because City police will invariably target him free from consequence when he does. Though the offending officers are numerous and not identical, the reasoning is the same—what is at play is a government practice, taken with deliberate indifference, and related discrete acts before and after to the stated limitations period. An extension of law is appropriate.

C.    **The City's Cited Authorities Do Not Bind This Court**

The City's authority does not bind the court on the question at hand. *Dominguez v. Hendley*, for example, did not involve *Monell* claims. 545 F.3d 585 (7th Cir. 2008). Nor did *Marshall v. Buckley*, which, like other authority cited (*Walden v. City of Chicago*; *Aaron Blocker v. City of Chicago; Cole v. City of Chicago*) is a district court holding that this Court is not obligated to follow. 644 F. Supp. 2d 1075 (N.D. Ill.

2009); *Walden*, 755 F. Supp. 2d 942 (N.D. Ill. 2010); *Aaron Blocker*, No. 17 C 00055, 2017 WL 3278323 (N.D. Ill. Aug. 2, 2017); *Cole*, No. 21 C 1640, 2022 WL 19332 (N.D. Ill. Jan. 3, 2022).

The Motion's reliance on *Cole v. Chicago* is unpersuasive. Though *Cole* rejected a continuing violation theory in the context of a *Monell* claim, the matter settled after the Court denied in part the City's Motion to Dismiss, and before the plaintiff could ask the Court to revisit its reasoning at summary judgment. In any case, the cited decision misperceived the argument. Though Judge Rowland correctly distinguished between a continuing "harm" and a continuing "wrong," the claim at issue there, as here, concerns a continuing wrong. Plaintiff is not bringing this lawsuit because of residual harmful effects of a discrete and abated act by any individual police officer. Rather, he sues because the wrong is ongoing, with discrete occurrences both before and within the limitations period. Plaintiff is attempting to hold the City accountable for its ongoing and unlawful operation of a police department whose status quo is one of absent discipline, deficient training, pervasive bias, and a thin blue line culture of protecting officers from scrutiny and oversight when a wrong is taken.

Ultimately, Plaintiff's remedy is in the courts, but the law does not, or should not, contemplate that Plaintiff keep an army of attorneys on retainer to sue every time police violate the law. Despite his civilian complaints through established channels, the misconduct did not stop. It would be a strange outcome to recognize that, for example, a code of silence exists and caused violations over several years, but nonetheless conclude that the longstanding de facto policy that caused prior infringements of rights is not subject to continuing violation analysis.

Though the City may argue that such a decision would raise a specter of uncertainty with regard to its responsibility for older constitutional violations, such an argument should not carry the day. At least two factors counsel against this fear and in favor of acknowledging Plaintiff's application of the law. First, despite widespread and well-documented malfeasance by Chicago police, it is likely that the number of people who have experienced harassment at the scale of Plaintiff is on the low

end—he has been stopped 17 times by police in five years, with repeated discrete constitutional injuries. Second, and more importantly, the purpose of *Monell*, and section 1983 more broadly, is to hold municipalities accountable for violating the constitutional rights of the public. There is no better venue then here to generate impetus for reform of the City's maintenance of a lawless police department marbled through with customs and practices that Plaintiff describes and that independent observers have widely acknowledged. If the City is forced to more meaningfully contend with the impacts of its inaction, as a ruling in Plaintiff's favor might allow, perhaps the abuse will abate.

If nothing else, Plaintiff could have the chance to be made whole, whereas, without the continuing violation doctrine, he cannot be.

**<u>CONCLUSION</u>**

Plaintiff's Amended Complaint more than adequately alleges the requisite elements of a *Monell* claim under the relevant pleading standard—the Motion should be summarily denied. And given that the widespread customs and practices that caused Plaintiff's injuries have persisted in Chicago for years, and continue to this day, the wrong and the violation is continuing. Accordingly, Court should apply the continuing violation doctrine to this case.

Respectfully Submitted,

AARON BURDEN

By:  */s/ Daniel Massoglia*
       One of His Attorneys

## CERTIFICATE OF SERVICE

I, Daniel Massoglia, an attorney, hereby certify that a copy of this document was filed before 11:59pm on August 11, 2022 using the Court's CM/ECF filing system, which generates electronic notice to all parties of record in the case.

*Daniel Massoglia*