IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AARON BURDEN, <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF CHICAGO AND CHICAGO POLICE OFFICERS ALBERT TORRES (#13067), MOHAMMAD BAKER (#19740), ANDREW KATS (#17577), ANGELO DICERA (#14902), AND J. DOE OFFICERS 1-5, <br><br> Defendants. | Case No. 22-cv-00046 <br><br> Hon. Judge John Z. Lee <br><br> Hon. Mag. Judge Young B. Kim |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' JOINT MOTION TO BIFURCATE PLAINTIFF'S *MONELL* CLAIM AND STAY *MONELL* DISCOVERY**

Daniel Massoglia
*daniel@first-defense.org*
Ashley Nicole Rodriguez
*ashley@first-defense.org*
FIRST DEFENSE LEGAL AID
601 S California Ave
Chicago, IL 60612
P: (708) 797 3066

Stephen J. Siegel (#6209054)
*ssiegel@novackmacey.com*
Serena G. Rabie (#6336601)
*srabie@novackmacey.com*
NOVACK AND MACEY LLP
100 N. Riverside Plaza, Suite 1500
Chicago, IL 60606
(312) 419-6900
*Counsel for Plaintiff*

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................ 1

FACTUAL BACKGROUND ....................................................................................................... 1

LEGAL STANDARD .................................................................................................................. 3

ARGUMENT ................................................................................................................................ 4

I. Bifurcation Would Prejudice Plaintiff ............................................................................. 4

    A. The City Is At Fault, And Plaintiff Is Entitled To Prove It............................... 4

        1. Plaintiff Would be Prejudiced by Being Forced to Forego Litigation Consistent with his Intent to Deter Police Misconduct .................. 5

        2. Bifurcation Would Prematurely And Improperly Prevent Plaintiff From Proceeding On His Continuing Violation Theory ................... 6

    B. The Consent Decree has no Bearing on a Bifurcation Motion....................... 7

II. Bifurcation Will Not Advance the Goals of Judicial Economy ..................................... 7

III. There Is No Threat Of Undue Prejudice To Defendants At This Stage ................................... 9

IV. Defendants' Proposed Limited Entry Of Judgment Does Not Justify Bifurcation ............... 11

CONCLUSION .......................................................................................................................... 12

**TABLE OF AUTHORITIES**

**Cases**                                                                                              **Page(s)**

*Cadiz v. Kruger*,
    No. 06 C 5463, 2007 WL 4293976 (N.D. Ill. 2007) .................................................................. 8, 9

*Cadle v. City of Chicago,* No. 15 C,
    4725, 2015 WL 6742070 (N.D. Ill. Nov. 2, 2015) ....................................................................... 8

*Chlopek v. Fed. Ins. Co.*,
    499 F.3d 692 (7th Cir. 2007) ................................................................................................... 3, 7

*City of Riverside v. Rivera*,
    477 U.S. 561 (1986) ..................................................................................................................... 5

*Elrod v. City of Chicago*, No. 06 C,
    2505, 2007 WL 3241352 (N.D. Ill. Nov. 1, 2007) ....................................................................... 9

*Estate of Loury by Hudson v. City of Chicago*,
    No. 16-CV-04452, 2017 WL 1425594 (N.D. Ill. Apr. 20, 2017) ........................................ 5, 8, 9

*Estate of McIntosh v. City of Chicago*,
    No. 15 C 1920, 2015 WL 5164080 (N.D. Ill. Sept. 2, 2015) ................................................ 5, 10

*Evans v. Poskon*,
    603 F.3d 362 (7th Cir. 2010) ....................................................................................................... 6

*Garcia v. Ramirez*, No. 19 C,
    5831, 2021 WL 1253448 (N.D. Ill. Apr. 5, 2021) .................................................................. 5, 7

*Giles v. Ludwig*,
    No. 12-CV-6746, 2013 WL 6512683 (N.D. Ill. Dec. 6, 2013) ............................................... 5, 9

*Houseman v. U.S. Aviation Underwriters*,
    171 F.3d 1117 (7th Cir. 1999) ..................................................................................................... 3

*Jackson v. City of Chicago*,
    No. 14 C 6746, 2017 WL 8199322 (N.D. Ill. Dec. 12, 2017) .................................................. 10

*Krocka v. City of Chicago,*
    203 F.3d 507 (7th Cir.2000) ........................................................................................................ 3

*Love v. City of Chicago*,
    363 F. Supp. 3d 867 (N.D. Ill. 2019) ......................................................................................... 10

*Marshbanks v. Calumet City*,
    2015 WL 1234930 (N.D. Ill. March 16, 2015) ......................................................................... 12

*MCI Communications v. Am. Tel. & Tel. Co.*,
    708 F.2d 1081 (7th Cir. 1983) .................................................................................................. 3

*Medina v. City of Chicago*,
    100 F. Supp. 2d 893 (N.D. Ill. 2000) ....................................................................................... 9

*Monell v. Dep't of Soc. Servs. of City of New York*,
    436 U.S. 658 (1978) ................................................................................................................ 4

*Okoro v. Callaghan*,
    324 F.3d 488 (7th Cir. 2003) .................................................................................................. 6

*Pearson v. Callahan*,
    555 U.S. 223 ......................................................................................................................... 11

*Real v. Bunn-O-Matic Corp.*,
    195 F.R.D. 618 (N.D. Ill. 2000) .............................................................................................. 3

*Rodriguez v. City of Chicago*,
    429 F. Supp. 3d 537 (N.D. Ill. 2019) ................................................................................ 7, 11

*Rodriguez v. City of Chicago*,
    No. 17 CV 7248, 2018 WL 3474538 (N.D. Ill. July 19, 2018) ..................................... 8, 9, 11

*Thomas v. Cook Cnty. Sheriff's Dep't*,
    604 F.3d 293 (7th Cir. 2010) ................................................................................................ 12

**Rules**

Fed. R. Civ. P. 42(b) ....................................................................................................................... 3

Plaintiff Aaron Burden ("Plaintiff"), by his undersigned counsel, submits this response in opposition to Defendants' Joint Motion to Bifurcate Plaintiff's *Monell* Claim and Stay *Monell* Discovery (the "Motion"). In support, Plaintiff states as follows:

## INTRODUCTION

After seeing their first attempt to stay *Monell* discovery in this matter rebuffed by the Court (Dkt. 30), Defendants now try for a second bite at the apple, moving to bifurcate Plaintiff's *Monell* claim and again requesting the court stay *Monell* discovery. Though Defendants offer a series of rationales for bifurcation and a stay, and rightly note that these motions are neither routinely granted nor routinely denied, ultimately, their arguments are either inapplicable, insufficient, or both. The Court should deny the Motion because prejudice to the Plaintiff from bifurcation and a stay outweighs other relevant considerations.

## FACTUAL BACKGROUND

Aaron Burden is a resident of the City of Chicago. Like most people, he wants to be free to go about his life in peace, attend to his job, and care for his family. Unfortunately, the Chicago Police Department has made this impossible. In the past 5 years, Chicago police officers, have, *inter alia*: 1) in July 2017, nearly hit him with a vehicle, calling him a "fucking pussy" and stating of the Civilian Office of Police Accountability disciplinary mechanism "[d]o you think that scares us?... nothing's going to happen"; 2) in April 2018, detained him in his neighborhood without lawful justification and stated that Black people "only exist" in Chicago's Englewood neighborhood to "fuck with," and subsequently refused to take a civilian complaint about this interaction; 3) in May 2018, accosted him in front of his home and screamed "fuck you" in his face repeatedly; 4) in April 2019, mocked him after he was the victim of an assault; 5) also in April 2019, profiled and stopped him without probable cause and told him he "looked like a terrorist" because of his headscarf; 6) in July 2019, detained him and searched his person and vehicle without probable cause; 7) in May 2020, discriminated against

him based on his race, detained him, and used excessive force against him by unlawfully applying overtight handcuffs and ignoring his complaints, all while turning off body-worn camera; 8) in January 2021, unreasonably singled him out, used excessive force by slamming him against a car hood, punching his ribs, and pulling his hair, then falsely arrested him; and 9) in March 2021, unlawfully detained and handcuffed him, illegally seizing his Firearm Owners Identification card ("FOID card"). First Amended Complaint ("Am. Compl."), (Dkt. 32 ¶¶ 15-44.) Plaintiff made COPA complaints, but the harassment did not stop, and Chicago police have separately targeted Plaintiff on, at minimum, eight other occasions, failing to issue required investigatory stop or other paperwork to document these stops. (*Id.* ¶ 45.)

The City of Chicago (the "City") maintains its police department in an unlawful manner through deficient training on uses of force, inadequate disciplinary mechanisms, and through the maintenance of both a "code of silence" and widespread bias-based policing. (*Id.* ¶ 13.) Police training is insufficient in both quality and quantity, does not require accurate reporting of incidents of force, and has been and remained inconsistent and inadequate, including by failing to adequately explain the proper constitutional standard and failing to use using "examples" for discussion to train on constitutional uses of force. (*Id.* ¶ 64-71.) Although Defendant is currently under independent monitoring as part of a federal consent decree, it has consistently failed to meet benchmarks for compliance. (*Id.*¶ 146.) The Attorney General of the State of Illinois observed in June 2020, more than a year after the Decree was entered, that CPD "continues" to be reluctant to change its culture relating to use of force and that in response use of force incidents did not make "substantive changes to policy… or training." (*Id.* ¶ 74.) The City of Chicago has had knowledge of and encouraged an institutionalized code of silence within CPD, one reinforced by police policies, rules, and labor agreements, taking no action or no sufficient action to address it. (*Id.* ¶ 77, 80.) This code has been confirmed by sources including, but not limited to, a Chicago police officer, a jury verdict,

policymakers, and the United States Department of Justice. (*Id.* ¶¶ 76-82.) The Department's disciplinary mechanisms work in tandem with the code of silence to frustrate accountability and lead officers. (*Id.* ¶ 87.) These mechanisms lack integrity and are marked by entrenched, systemic policies and practices that undermine accountability. (*Id.* ¶ 84-87.) Discipline, when imposed, is insufficient to deter future misconduct. (*Id.*¶ 89.)

The Chicago Police Department also carries out its policing duties in a racially biased manner, whether in pedestrian stops, traffic stops, hiring, uses of force. (*Id.* ¶¶ 57-62.) Officers use social media to express racially discriminatory views. (*Id.* ¶ 142.) Officers used discriminatory epithets or racist language in their interactions with Plaintiff. (*Id.* ¶¶ 19, 25.)

## **LEGAL STANDARD**

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Courts have broad discretion in deciding whether to bifurcate issues presented in a case and to try them separately. *Krocka v. City of Chicago,* 203 F.3d 507, 516 (7th Cir.2000). However, "[t]he piecemeal trial of separate issues in a single lawsuit ... is not to be the usual course." 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 3d § 2388* (2008); *see also Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 626 (N.D. Ill. 2000) ("An order of separate trials is the exception, not the rule.").

A motion to bifurcate must meet certain conditions—the avoidance of prejudice or the service of judicial economy. *Houseman v. U.S. Aviation Underwriters,* 171 F.3d 1117, 1121 (7th Cir. 1999); *MCI Communications v. Am. Tel. & Tel. Co.,* 708 F.2d 1081, 1166 (7th Cir. 1983). After a court determines one of the criteria is satisfied, it may bifurcate the trial "as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Chlopek v. Fed. Ins. Co.,* 499 F.3d 692, 700 (7th Cir. 2007).

**ARGUMENT**

Bifurcation and a stay of *Monell* discovery would prejudice Plaintiff and would not necessarily further the interests of judicial economy, while a denial of the Motion would not prejudice Defendants. The City's proposed Consent to Limited Entry of Judgment is inadequate, and the Motion should be denied.

### I. Bifurcation Would Prejudice Plaintiff

The primary, overarching reason to deny Defendant's Motion is that failing to do so would prejudice the Plaintiff.

First, bifurcation and a stay would impermissibly limit the deterrent and reformatory effect of this lawsuit while simultaneously restricting Plaintiff's goals in bringing suit in the first place. Second, it would exclude him from recovering damages for constitutional injuries on his continuing violation theory. *See* Plaintiff's Response to Defendant City's Partial Motion to Dismiss, Dkt. 59 at 20-25. Finally, the existence of a federal consent decree does not serve to immunize the City of Chicago from having to litigate any municipal liability actions based on the operation and conduct of its police department.

#### A. The City Is At Fault, And Plaintiff Is Entitled To Prove It

Plaintiff names the City as a Defendant consistent with the reformatory purposes of the Civil Rights Act of 1871, the Supreme Court's Decision in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), and his own rights as a person injured by a municipal custom—he would be prejudiced, on his own behalf and on behalf of his greater interest in deterrence, by bifurcation and a stay of discovery. He would also be prejudiced to the extent that any stay or bifurcation limited discovery of events or conditions as they existed prior to the limitations period on suit for the acts of the named defendants.

4

### 1. Plaintiff Would Be Prejudiced By Being Forced To Forego Litigation Consistent With His Intent To Deter Police Misconduct

Although this suit seeks money damages, consistent with the purposes of section 1983, Plaintiff's interest in bringing this lawsuit is not exclusively monetary. As the Supreme Court has stated:

> Congress expressly recognized that a plaintiff who obtains relief in a civil rights lawsuit does so not for himself alone but also as a private attorney general, vindicating a policy that Congress considered of the highest importance . . . If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual, suffers.

*City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986)

And as numerous courts in this District have recognized, a *Monell* plaintiff's interest in reform merits considerable weight in the bifurcation analysis. *See e.g.*, *Garcia v. Ramirez*, No. 19 C 5831, 2021 WL 1253448, at *2 (N.D. Ill. Apr. 5, 2021) ("there are important non-economic benefits that can be gained from suing a municipality that cannot be accomplished by proceeding against the municipality's employees individually. Foremost among these is the encouragement of reform by the defendant municipality"); *Estate of Loury by Hudson v. City of Chicago*, No. 16-CV-04452, 2017 WL 1425594, at *5 (N.D. Ill. Apr. 20, 2017) ("In sum, Plaintiff has other important objectives—most notably, deterrence and reform—that would be furthered by a judgment holding the City liable for the Defendant Officers' alleged misconduct."); *Estate of McIntosh v. City of Chicago*, No. 15 C 1920, 2015 WL 5164080, at *10 (N.D. Ill. Sept. 2, 2015) ("A judgment against a municipality can be a catalyst for change, because it not only holds that entity responsible for its actions and inactions, but also can encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue."); *Giles v. Ludwig*, No. 12-CV-6746, 2013 WL 6512683, at *3 (N.D. Ill. Dec. 6, 2013) ("mere monetary compensation for constitutional injuries may not have the same deterrent effect as a judgment naming the municipality as responsible based on its policies

and customs").

Denying bifurcation and allowing the operation of the *Monell* claim thus serves a vital societal objective, well recognized by the judiciary, that is of vital importance to Plaintiff—enforcing accountability for systemic practices that cause constitutional harm. After years of police abuse and harassment, Plaintiff counts himself lucky to be alive. It is, thus, not only for himself that he names the City of Chicago as a Defendant. Though Defendants object to *Monell* discovery here in what it calls "a relatively straightforward case," (Motion at 2), this statement diminishes what Chicago police have done to Plaintiff and is indicative of the generalized disregard the City has for its obligations to lawfully police, the status quo that Plaintiff so desperately wants to change.

Though Defendants argue that prosecuting his case in the manner he prefers will actually prejudice him, this is a) incorrect; and b) not an argument the Court should credit. "[A] plaintiff is the master of [their] claim," and Plaintiff knows better than Defendants what will and won't prejudice him in maintaining his action. *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010); *see also Okoro v. Callaghan*, 324 F.3d 488 (7th Cir. 2003). He should be allowed to bring suit against Defendants in a manner that aligns with his goals, consistent with the Rules, and bifurcation and stay should be rejected here.

### 2. Bifurcation Would Prematurely And Improperly Prevent Plaintiff From Proceeding On His Continuing Violation Theory

In the event that the Court accepts Plaintiff's argument that he has stated a *Monell* claim to which the continuing violation doctrine applies, bifurcating individual and municipal claims would also prejudice him by restricting his ability to take necessary discovery and provide requisite proof on this theory. Thus, to the extent that the Court adopts Plaintiff's position with regard to the continuing violation doctrine, as set forth more fully in his Response to Defendant City's Partial Motion to Dismiss, Dkt. 59. This Motion should also be denied.

6

### B. The Consent Decree has no Bearing on a Bifurcation Motion

Defendants' Motion to Bifurcate, like the City's Partial Motion to Dismiss, attempts to wield the federal Consent Decree entered before Judge Dow as a shield to any scrutiny of the Chicago Police Department, but this argument is unpersuasive and should be rejected.

First, Plaintiff was not personally involved in negotiating the consent decree, nor is he involved in monitoring it. He has, practically speaking, no interest or input in it. The decisions of the parties there, though in a sense representative of his goals, did not and do not foreclose his maintenance of an independent action along the grounds he sees fit. Secondly, Plaintiff's Complaint details misconduct both before and after the entry of the Consent Decree. The problems obviously have not been fixed, as is evident from both his lived experience and the City's failure to meet compliance deadlines of the decree.

To assert that a negotiated settlement agreement to which Plaintiff is not a party to removes his right to seek reform through section 1983 litigation is simply inaccurate. Indeed, multiple courts in this district have rejected attempts to bifurcate that occurred after the entry of the consent decree. *See, e.g.*, *Rodriguez v. City of Chicago*, 429 F. Supp. 3d 537 (N.D. Ill. 2019); *Garcia v. Ramirez*, No. 19 C 5831, 2021 WL 1253448, at *2 (N.D. Ill. Apr. 5, 2021). The Motion should thus further be denied.

### II. Bifurcation Will Not Advance the Goals of Judicial Economy

Defendants' invocation of judicial economy is made with clear intention: Defendants (particularly the City), simply do not want to participate in discovery into or go to trial on the practices of the Chicago Police Department. Despite the prejudice that would accrue to Plaintiff, the City seeks to essentially moot a viable claim in the name of efficiency. Although Plaintiff, the non-moving party, has established that he would be prejudiced by bifurcation, he nonetheless addresses judicial economy here. *See Chlopek v. Fed. Ins. Co.,* 499 F.3d at 700.

7

*Monell* litigation is extensive, complex, costly, and time-consuming—Plaintiff does not dispute this. But judicial economy is not a magic phrase that a defendant can utter in order to avoid participating in a lawsuit for which it is a proper party.

Many courts have noted that bifurcation does not in itself guarantee judicial economy—that it can ensure, for example, that discovery will move smoothly. *See, e.g.*, *Cadiz v. Kruger*, No. 06 C 5463, 2007 WL 4293976, at *7 (N.D. Ill. 2007) ("deferring discovery of the *Monell* claim is unlikely to eliminate discovery disputes… bifurcation more likely will shift the locus of discovery disputes from the appropriate scope of *Monell* discovery to whether discovery sought by plaintiff is permissible discovery into the individual claims or impermissible *Monell* discovery."); *Loury*, 2017 WL 1425594, at *3–4 ("Given the factual overlap between the Monell claims and the constitutional claims, a stay of Monell discovery will likely result in continual discovery disputes between the parties about whether Plaintiff's discovery requests invoke her Monell claim or her other claims. As several courts in this district have noted, forcing a court to resolve constant disputes about discovery requests' connection to Monell liability can introduce additional confusion to a matter and make litigation less efficient."); *Cadle v. City of Chicago,* No. 15 C 4725, 2015 WL 6742070, at *2 (N.D. Ill. Nov. 2, 2015) (denying bifurcation noting "[a] stay of Monell discovery could, and often does, give rise to arguments about whether Plaintiffs discovery requests relate to his Monell claim or to his other claims."); *Rodriguez v. City of Chicago*, No. 17 CV 7248, 2018 WL 3474538, at *3 (N.D. Ill. July 19, 2018) (same).

This rationale is particularly salient here, given that Plaintiff's claims against the individual officers—which include allegations of racially discriminatory policing and a class of one—will require in-depth discovery that is in important ways co-extensive with his discovery of, for example, his *Monell* bias-based policing theory. Though Plaintiff sincerely hopes to not be before the Court on a series of discovery motions, it is not evident that bifurcation and stay will reduce disputes; rather, it may just shift them. Allowing *Monell* discovery, as this Court already has in this matter, (Dkt. 30), would

8

establish a benchmark that would in fact *eliminate* many discovery disputes because the parties would not be forced to contend with the uncertainty of where the overlapping lines fall.

Ultimately, the interest of judicial economy is slight, and the potential benefits of bifurcation are outweighed by the prejudice to Plaintiff.

### III.     There Is No Threat Of Undue Prejudice To Defendants At This Stage

Defendants argue that they will face "severe and undue prejudice" in a single trial if Plaintiff's claims are not bifurcated. (Motion at 9.) This assessment is both inaccurate, given the curative function of limiting instructions and the Rules of Evidence, and premature, given that the case is still at a very early stage. In either event, it is outweighed by the prejudice to Plaintiff, the non-moving party.

The judicial system "trusts jurors to understand and follow limiting instructions regarding consideration of evidence against some defendants and not others—even in criminal cases, where a person's liberty is at stake." *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 897 (N.D. Ill. 2000). The fact that a single trial would present jurors with evidence relevant to the *Monell* claim as well as the claims against the individual officers does not automatically justify bifurcation. *Cadiz,* 2007 WL 4293976, at * 6; *see also Elrod v. City of Chicago*, No. 06 C 2505, 2007 WL 3241352, at *7 (N.D. Ill. Nov. 1, 2007) ("Generally, the issue of avoiding prejudice at trial is better addressed by application of the Rules of Evidence, rulings *in limine,* and limiting instructions").

There is ample authority to support the conclusion that a jury can, with the assistance of limiting instructions, consider, weigh, and apportion appropriate the probative value of evidence against the individual Defendants rather than against the City itself, and vice versa. *See, e.g.*, *Giles*, 2013 WL 6512683, at *2 (denying bifurcation because "any potential prejudice that might arise from a unitary trial can be mitigated through the use of limiting instructions, motions *in limine*, and the Rules of Evidence"); *Rodriguez*, 2018 WL 3474538, at *4 (same); *Loury*, 2017 WL 1425594, at *4 (same). This

9

argument, then, largely hinges on a belief that jurors will be unable to use their common sense and sober reasoning to fairly resolve a dispute.

Further, while addressing potential prejudice to Defendants, the Motion asks the Court to draw conclusions about Plaintiff's claim generally, and make relevance determinations, without adequate information in the record. For example, after listing a variety of evidence that Plaintiff could theoretically offer at trial to prove his *Monell* claim, Defendants conclude, absent any analysis or basis to do so, and in direct contravention of the facts before the Court, that "all of this [evidence that may be offered] is completely unrelated to the underlying incidents of the FAC." (Motion at 9). Defendants do not cite any authority for this contention. Plaintiff, of course, disagrees. And, given that discovery has barely begun, this is not really an argument about prejudice in the first place—this is an attempt to shoehorn merits arguments into a bifurcation motion.

Not only have Defendants not shown that a unitary trial would prejudice them, they have also failed to argue how simply *pursuing* Monell discovery and discovery on individual claims simultaneously will prejudice both the individual officers and the City. Assessing the possibility of prejudice to defendants at a trial is often "premature and too speculative" at the early stages of litigation. *McIntosh*, 2015 WL 5164080, at *9; *Love v. City of Chicago*, 363 F. Supp. 3d 867, 875 (N.D. Ill. 2019); *Jackson v. City of Chicago*, No. 14 C 6746, 2017 WL 8199322, at *3 (N.D. Ill. Dec. 12, 2017) ("[T]he better time to evaluate [prejudice from trying individual and Monell claims together] is shortly before trial, when the court (and the parties) will have a much better understanding of the evidence and its relevance to the individual and Monell claims.").

In sum, any threat of prejudice to Defendants is curable and outweighed by prejudice to plaintiff, and further not ripe for assessment at this time.

**IV.     Defendants' Proposed Limited Entry
          Of Judgment Does Not Justify Bifurcation**

Although Defendants attempt to do away with Plaintiff's right to take discovery and proceed to trial on claims of his choosing by offering a proposed Consent to Limited Entry of Judgment, this proposed resolution is inadequate for three reasons.

First, the City's proposed Consent to Limited Entry of Judgment, to be used only in the event of a finding of individual liability, does not admit what Plaintiff seeks to prove with his *Monell* claim— that the City is culpable for the challenged customs and practices that exist and caused his injuries. (Dkt. 47-1 at 2.) In fact, the City's proposed consent explicitly denies this, the crux of the instant lawsuit; it is, essentially, only a promise to indemnify. (Dkt. 47-1 at 2.) "[C]ourts in this district have taken issue with similar consents as offering little, if any, deterrent effect where… the proposed consent expressly denies any wrongdoing on the part of the City." *[Ricardo] Rodriguez v. City of Chicago*, 429 F. Supp. 3d at 541–42; *see also [Venus] Rodriguez v. City of Chicago*, 2018 WL 3474538, at *3 ("A proposed consent judgment is particularly ill-designed to have any deterrent effect where, as here, it expressly denies any wrongdoing on the City's part.").

Second, the City's proposed Limited Consent to Entry of Judgment does not adequately address qualified immunity. Though paragraph 5 aims to address liability in the instance of a finding of both a constitutional violation and the applicability of qualified immunity, thus protecting Plaintiff's interests, it ignores that a finding of liability is not a required step in a court's application of qualified immunity principles. *Pearson v. Callahan*, 555 U.S. 223 (courts are not required to sequentially assess violation followed by the applicability of qualified immunity, and may start and stop the analysis on the second prong). It thus forces both Plaintiff's and the Court's hands, and does not satisfy the needs of the litigation.

11

Third, the City's proposed consent does not address the possibility, only possible through litigating Plaintiff's case as a cohesive whole, that liability is present against the municipality without individual liability of an officer. *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) ("a municipality can be held liable under *Monell,* even when its officers are not, unless such a finding would create an *inconsistent* verdict") (emphasis original); *see also Marshbanks v. Calumet City*, 2015 WL 1234930 (N.D. Ill. March 16, 2015) (in excessive force case, denying bifurcation due to potential for municipal liability without individual liability).

Plaintiff alleges, in part, that officers used excessive force against him. It is, at this stage, it unclear which officer undertook precisely which action—which officer punched his ribs, which one pulled his hair, which one slammed him against a car hood—and it is possible, though unknown given the extremely early stage of discovery, that deposition and other tools will not elicit consistent stories from Defendants Kats and Dicera that show precisely which officer committed a constitutional violation while still generating facts sufficient to establish that a constitutional violation occurred. In this event, the City's presence and active participation in the case as a *Monell* defendant actually fills a gap and increases efficiency, removing the Defendants' ability to argue that Plaintiff cannot not allege with requisite specificity the personal involvement of a given officer in a constitutional violation and removing the need to "redo" the whole process should this argument be successful. Separately, it is possible that discovery will elicit facts tending to show that there is another vector through which municipal liability is possible without individual liability. At this stage, prior to the exchange of any discovery responses or oral discovery, Plaintiff simply doesn't know, but he should not be forced to proceed on his claim with this viable route to recovery foreclosed so early in the litigation.

## **CONCLUSION**

Plaintiff has shown prejudice to him, Defendants have not shown the same, and neither side has a monopoly on judicial economy. The Consent Decree is not a get-out-of-litigation-free card, and

the Court should deny Defendants' Joint Motion and allow discovery to proceed as previously Ordered.

                                            Respectfully Submitted,

                                            AARON BURDEN

                                            By: */s/ Daniel Massoglia*
                                                    One of His Attorneys

13

**CERTIFICATE OF SERVICE**

I, Daniel Massoglia, an attorney, hereby certify that a copy of this document was filed before 11:59pm on August 11, 2022 using the Court's CM/ECF filing system, which generates electronic notice to all parties of record in the case.

/s/ *Daniel Massoglia*