# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AARON BURDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | 22-cv-00046 |
| CITY OF CHICAGO, a municipal ) | |
| corporation; Officer ALBERT TORRES, Star ) | Honorable Judge Edmond E. Chang |
| #13067; Officer MOHAMMAD BAKER., ) | |
| Star #19740; Officer ANDREW KATS, Star ) | Honorable Magistrate Judge Young B. |
| #17577; Officer ANGELO DICERA Star ) | Kim |
| #14902; and J. DOE OFFICERS 1-5. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT CITY OF CHICAGO'S REPLY IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant City of Chicago ("the City"), by and through one of its attorneys, Raoul Vertick Mowatt, Assistant Corporation Counsel Supervisor, for its reply in support of its partial motion to dismiss Plaintiff's First Amended Complaint, states as follows:

## INTRODUCTION

The City in its opening brief showed that Plaintiff attempted to seek liability against the City for alleged constitutional violations that were barred by the applicable two-year statute of limitations by incorrectly claiming that the continuing violation doctrine applies or should apply. It does not and should not. The City incorporated by reference the case law and arguments made by the Defendant Officers in their motion to dismiss. Dkt. 37. The City further demonstrated that Plaintiff failed to plead sufficient facts to lend plausibility to his *Monell* claim. First, Plaintiff failed to plead facts sufficient to show the existence of any of the four alleged widespread practices. Second, Plaintiff failed to plead facts showing that the final policymaker was deliberately indifferent to the alleged practices

1

and failed to account for items subject to judicial notice that showed that the City was actively attempting to combat the alleged widespread practices. Finally, Plaintiff failed to plead facts sufficient to show that the alleged practices were the moving force behind the constitutional violations.

In response, Plaintiff essentially concedes that no court has applied the continuing violation doctrine in the way that he thinks should be done, but asks for the Court to use its "power to extend the law." Response at p. 20. But Plaintiff gives the Court no valid reason to do so and ignores precedent saying it should not. Any part of Plaintiff's claims predicated on incidents that took place before the statute of limitations should be dismissed. As to Plaintiff's *Monell* claim, Plaintiff contends repeatedly that the City seeks to hold him to a heightened pleading standard. This is untrue. The City seeks to hold Plaintiff to the pleading standard ushered in by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and their progeny. The City adopts by reference the case law and argument made by the Defendant Officers in their reply. Dkt. 70. Despite his protests to the contrary, Plaintiff fails to meet this standard and therefore, his *Monell* claim should be dismissed.

## ARGUMENT

### I. PLAINTIFF'S TIME-BARRED CLAIMS SHOULD BE DISMISSED.

The City showed in its opening brief that Plaintiff sought liability for a series of acts that dated back to 2017 in which he allegedly was stopped, searched and harassed by Chicago Police officers on at least 18 separate occasions. Since Plaintiff sued in January 2022, any incident prior to January 2020 would be beyond the statute of limitation for Section 1983 claims and any incident prior to January 2021 would be beyond the statute of limitations for state law claims. Plaintiff attempts to circumvent these statute of limitations by arguing that the alleged offenses should be considered part of a continuing violation by the City. The City showed that this flies in the face of Seventh Circuit law on the subject. "The Seventh Circuit has applied the continuing violation doctrine (1) when a plaintiff could not reasonably be expected to perceive that the alleged wrongdoing before the expiration of the

statute of limitations, (2) when the violation only became apparent in light of later events, and (3) when a state actor has a policy that brings a fresh violation each day. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). As the City argued in its opening brief, none of these elements apply to the allegations Plaintiff brings. Plaintiff pleads in his amended complaint that he was aware of the wrongdoing at the time of the incident and even made complaints to the Civilian Office of Police Accountability about the alleged wrongdoing at the time. *See* Amended Compl. at ¶¶ 21-22, 27, 30. The City also showed that Judge Rowland recently rejected a similar attempt by one of Plaintiff's current attorneys to allow time-barred incidents to circumvent the statute of limitations by arguing a continuing violation theory in *Cole v City of Chicago*, 2021 cv 1640. Similarly, the City showed that Plaintiff could not bring any state law claims arising out of incidents older than January 2021 since the state law statute of limitations is one year and state law does not permit the continuing violation doctrine to apply in the fashion Plaintiff seeks either.

In response, Plaintiff generally has not attempted to rebut to any of these arguments in any substantive fashion. He has not, for example, cited to any cases anywhere that allowed a *Monell* claim to proceed based on incidents that would be time-barred in the context of police misconduct. He acknowledges that courts in the Circuit "have yet to apply the continuing violation doctrine under circumstances like that presented by Plaintiff's claim." Response at p. 20. He acknowledges that the appropriate statute of limitations for civil rights claims is two years and that the general rule is that such claims accrue when the plaintiff has reason to know his rights have been violated. *Id.* But he essentially argues that this Court should allow him to move forward with his time-barred claims just because he is seeking reform. Plaintiff veers between ignoring the law and misconstruing case law in his attempt to justify his bid to circumvent the statute of limitations. Plaintiff never addresses that he knew about the alleged misconduct well before the expiration of the statute of limitations, and so under *Savory*, the continuing violation doctrine should not apply. Plaintiff refers to the portion of the

3

City's brief that cites to *Savory's* rule about violations that only became apparent in light of later events. Response at p. 21. But Plaintiff does not attempt to claim that such is the case with his injuries. Nor could he. It is apparent from his pleading that he knew he had been injured at the time of each separate alleged injury. Plaintiff does attempt to claim that *Savory* supports his position in saying that "a state actor has a policy that brings a fresh violation each day." Response at p. 22. But again, Plaintiff is misconstruing this case. Even taking Plaintiff's factual pleadings as true, as we must for the purposes of this motion, Plaintiff does not plead that he himself had violations occur to him each day as a result of the City policies. Nor do his pleadings support the notion that there was a violation every day because of any policy. More importantly, *Savory* itself rejects the notion that the ongoing refusal of the state to perform testing is a continuing violation but considers it the result of a discrete act. 469 F.3d at 673. Similarly, each of the alleged violations in this case prior to 2020 is a discrete act that started the clock for the statute of limitations. Plaintiff attempts to dismiss the case law cited by the City in its opening brief as not binding on the Court. Response at p. 23-24. Plaintiff does not explain how the Seventh Circuit authority is not binding on the Court, nor does he attempt to explain why the Court should not reach the same conclusions as its sister court in this district that decided essentially the same issue in *Cole*. Plaintiff incorrectly claimed that Judge Rowland misunderstood the argument and that counsel in that case might have asked the Court to revisit its reasoning at summary judgment had the case proceeded to that point. Response at p. 24. Plaintiff's argument that he is trying to hold the City accountable does not address the notion that he still is bound by the statute of limitations. Plaintiff argues, "Ultimately, Plaintiff's remedy is in the courts, but the law does not, or should not, contemplate that Plaintiff keep an army of attorneys on retainer to sue every time police violate the law." Response at p. 24. The law, however, does contemplate that a plaintiff should sue within two years of sustaining a discrete injury. Plaintiff in this case failed to do that and cannot overcome that failure by rebranding separate incidents that happened in 2017 to 2019 as part of a "continuing violation."

4

Plaintiff further argues that the righteousness of his cause and of the desire for police reform in general should allow him to proceed as to incidents older than 2020 under the continuing violation theory. "It would be a strange outcome to recognize that, for example, a code of silence exists and caused violations over several years, but nonetheless conclude that the longstanding de facto policy that caused prior infringements of rights is not subject to continuing violation analysis." Response at p. 24. It would be an even stranger outcome for a court to hold in the face of 7th Circuit and Supreme Court precedent that because a plaintiff has a noble goal or a worthy cause that statutes of limitations should not apply to him.

Plaintiff never addresses the case law the City cites that the continuing violation doctrine does not apply to his state-law claims. Such failure to address arguments should be considered waiver of these points. *See Bonte v. U.S. Bank*, N.A., 624 F.3d 461, 466 (7th Cir. 2010) (citing *United States v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008)).

Plaintiff cites to *Heard v. Shea*han, 253 F.3d 316, 319 (7th Cir. 2001) for the proposition that the continuing violation doctrine should apply in the case at bar, in part because that court opined "we have enough prisoners' suits without having to create incentives to bring multiple suits arising out of the same course of events." Response at p. 20. Plaintiff argues that reasoning should apply to police misconduct actions as well. *Id*. But a closer examination of *Heard* shows how flawed Plaintiff's reasoning is. In *Heard*, an inmate sued over failure to provide proper medical care. The allegation of being deliberately indifferent to a prisoner's ongoing medical needs is obviously distinguishable from acts of different police officers allegedly wrongly detaining or using force on someone in separate instances. Moreover, *Heard* itself undercuts Plaintiff's rationale that the continuing violation doctrine should apply. The *Heard* Court states that the continuing violation doctrine should apply "when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." 253 F. 3d at 319. Such is not the case with the lawsuit at bar. Plaintiff

5

was perfectly well positioned to sue over any times he was allegedly unjustly stopped, harassed or abused by police prior to 2020. The *Heard* Court further discusses cases in which "repeated events give rise to discrete injuries." *Id.* at 320. The Court specifically discusses wage discrimination claims and states, "the damages from each discrete act of discrimination would be readily calculable without waiting for the entire series of acts to end. There would be no excuse for the delay. And so the violation would not be deemed 'continuing.'" *Id.* This is perfectly analogous to the case at bar. The injuries alleged by the incidents prior to 2020 are discrete injuries, and there is no excuse for Plaintiff's delay in suing over them.

Plaintiff attempts to cite to two cases out of this circuit for support that the continuing violations doctrine should apply. Plaintiff first cites to *Gutowski v. Cnty of Placer*, 108 F.3d 256, 259 (9th Cir. 1997). However, that decision comes before the U.S. Supreme Court invalidated the related acts method of showing a continuing violation that the 9th Circuit used in that case. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act."). Plaintiff next cites to *Lucente v. Cnty of Suffolk*, 980 F. 3d 284, 309 (2d Cir. 2020), but this too is misplaced. *Lucente* explicitly cites to *Morgan* in stating "The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of 'serial violations,' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Lucente*, 980 F.3d at 309. Plaintiff even concedes that he alleges that he suffered "repeated discrete constitutional injuries." Response at p. 25. Thus, even if Plaintiff were correct that he had been the victim of serial violations by the City's police officers where the moving force was one or more of the City's policies and he adequately pled such, he would still be time-barred from bringing claims as to incidents prior to 2020.

Plaintiff complains that plaintiffs are placed in a dilemma without the use of a continuing

6

violation doctrine: either bring their *Monell* claims early and risk failing to show a practice is widespread or wait until a pattern is demonstrably widespread and risk being time-barred. Response at p. 21-22. This is a false dilemma. A plaintiff can easily bring a claim within the statute of limitations and, if there are sufficient facts to support it, at that time bring a well-pled *Monell* claim. Or a plaintiff could ask for leave to amend once a plaintiff develops sufficient facts to plead a *Monell* claim. Or a plaintiff can simply bring a claim as to the underlying injury and forego pleading a *Monell* claim. Plaintiffs have two years from when an incident occurs to develop facts sufficient to state a *Monell* claim under a deferential standard. There is no particular reason to excuse a plaintiff who is well aware that he has suffered an injury and fails to sue to seek redress for that injury for two years. The City respectfully requests the Court dismiss any aspect of Plaintiff's federal claim that purports to rely on incidents preceding January 2020 and any aspect of Plaintiff's state claims that purport to rely on incidents preceding January 2021.

## II. PLAINTIFF FAILS TO ADEQUATELY PLEAD ALL THE ELEMENTS OF A *MONELL* CLAIM.

The City in its opening brief demonstrated that Plaintiff failed to sufficiently plead that any of the elements of a *Monell* claim for the four alleged widespread policies and that his claim should therefore be dismissed. Plaintiff alleged four separate policies: a failure to train its officers, bias-based policing, a failure to discipline officers and a code of silence. The City showed that in attempting to establish that any of these alleged policies were so widespread that Plaintiff either failed to provide sufficient facts, or misconstrued the facts and the documents that he intended to rely on. To cite some examples, Plaintiff simply said that the training the City offered was deficient without saying anything about how. Plaintiff used examples of the code of silence that far predated the relevant time frame in citing to previous lawsuits, *Obrycka v. City of Chicago*, 07 CV 2372 and *Spalding v. Chicago*, 12 C 8777. Plaintiff relies heavily on the DOJ Report and the PATF Report in support of the alleged existence of

the policies, when those reports are based on a review of incidents prior to 2016, and thus do not necessarily reflect the state of affairs in 2020. The City cited to an opinion in *Echols v. Niznik et al.*, No. 20 CV 2226 that statistics showing racial disparities in arrests merely shows correlation rather than causation. The City further demonstrated that even assuming the existence of these alleged policies had been sufficiently pled, Plaintiff had failed to establish the second element necessary for *Monell* liability: deliberate indifference by the final policymaker. In particular, Plaintiff failed to address that the DOJ Report, the Consent Decree and laws enacted by the City – all matters subject to judicial notice -- showed that the City had agreed through the Consent Decree and other mechanisms to attempt to reform the police department. Given that the City had made undisputed efforts to try to constrain the alleged widespread practices, the City cannot reasonably be said to have acquiesced in them, and therefore Plaintiff's *Monell* claim fails. The City further showed that even setting aside the items requiring judicial notice, Plaintiff failed to plead facts sufficient to show the City's final policymaker was deliberately indifferent to any of the alleged practices. Finally, the City demonstrated that Plaintiff had failed to plead facts sufficient to establish plausibility for the notion that any of the alleged widespread policies was the moving force behind the alleged constitutional violations.

In response, Plaintiff once again fails to truly address any of the City's case law or arguments. Plaintiff claims that "all that Plaintiff is required to do at this stage" is to identify customs sufficient to give the City notice of the subject matter of his claims. Response at p. 5. That is the incorrect pleading standard. Plaintiff describes the pleading standard from *Conley v. Gibson*, 355 U.S. 41 (1957), which was replaced with the *Iqbal/Twombly* standard that is far more demanding. A plaintiff must make a claim that has facial plausibility. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiff repeatedly accuses the City of seeking to have Plaintiff abide by a heightened pleading standard. See, *e.g.*, Response at p. 10 . What Plaintiff fails to

8

comprehend is that the *Iqbal/Twombly* pleading standards demands more to state a claim than merely putting a defendant on notice of the general contours of a claim.

### A. Plaintiff fails to plead "widespread practice"

Plaintiff cites to *Arquero v. Dart*, 2022 WL 595730 (N.D.Ill. Feb. 28, 2022) for the proposition that a plaintiff does not have to come forward with facts proving a widespread practice in attempting to make a *Monell* claim. Response at p. 5-6. But this involves misreading *Arquero*. The *Arquero* court states that there need be enough facts pled to lend plausibility to a claim for relief not to prove his claims. *Id.* at *6. The *Arquero* court went on to find that with facts added by Plaintiff in response, there were enough facts pleaded to lend plausibility to one theory of *Monell* liability, but not another. *Id.* at *7. Here, the City argues that there were not enough facts pleaded to lend plausibility to any of the four theories of *Monell* liability.

Plaintiff claims that the City asserted that the DOJ Report provides "no support" for Plaintiff's allegations. Response at p. 6. This misconstrues the argument the City has made. The City cited to *Taylor v. City of Chicago*, No. 21 CV 2197, 2021 WL 4523203, at *3 (N.D. Ill. Oct. 4, 2021) for the proposition that the Report, standing alone, is not sufficient to establish that the practices it documents were still present in 2020, the relevant time frame. Plaintiff never pleads facts sufficient to establish that the practices documents in the DOJ Report were still in place in 2020. Therefore, as the *Taylor* court held, it is not relevant to establishing a *Monell* claim for behavior in 2020 due to the passage of time. Plaintiff fails to address this point. Plaintiff cites a number of cases to show that various courts have held that the DOJ Report is relevant to assert a widespread practice claim. Response at p. 6-7. The City does not dispute that the DOJ Report can be relevant for that purpose in general. Rather, the City contends that more needs to be shown in order to show that a report based on events prior to 2016 accurately depicts the customs and practices of the City in 2020. The City notes that most of the cases Plaintiff cites to pertain to decisions handed down in 2018, which mean a far narrower gap

in time between the DOJ and PATF Reports and the alleged misconduct. Plaintiff claims that the City "wishes to mark January 2020 as a miraculous break in time at which point the DOJ's sweeping and thorough investigation of CPD simply stops mattering for plaintiffs seeking municipal liability." Response at p. 7. Again, that is not at all what the City has argued. The City is contending that a plaintiff must connect these reports to the practices at the time of an alleged violation with non-conclusory facts for them to lend plausibility to a claim, and that Plaintiff here has failed to do so. Plaintiff attempts to distinguish between the case at bar and *Taylor* and *Carmona v. City of Chicago*, 2018 WL 1468995 (N.D.Ill. March 26, 2018) by saying that those are cases where the plaintiff only brought up the DOJ Report during briefing on the motion to dismiss. Response at p. 7. That distinction does not matter for the points for which the City cited to these cases: The DOJ Report does lose relevance as time goes forward, and the DOJ Report should not be used as a master key to unlock *Monell* discovery. Plaintiff argues that the argument that the DOJ Report is inapplicable without more to establish that the City's practices in 2020 is "premature" and would be "to resolve a dispute of fact against Plaintiff." Response at p. 7. That is incorrect. It is asking the Court to do the screening called for under *Iqbal/Twombly*: a "context-specific task that requires the reviewing court to draw upon its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Do the 2016 PATF Report and the 2017 DOJ Report, without more, reflect that the City had any of the widespread practices Plaintiff alleges in 2020? Common sense, and the record of reform efforts that both reports document, say no.

Plaintiff cites to *Milan v. Schulz*, 2022 WL 1804157 (N.D.Ill. June 2, 2022) for the proposition that even a conclusory *Monell* claim may survive a motion to dismiss when the complaint puts the City on notice. Response at p. 8. But reading the *Milan* decision in full would reveal that the court dismissed the *Monell* claim in that case as insufficiently pled. The Milan court reasoned that failure to identify particular training procedures or policy failed to provide the City notice of the nature of the failure to train claim. *Id.* at * 4. It further reasoned that the citation to the DOJ did not make clear how its

findings relate to that plaintiff's *Monell* claim, in particular because the report focused on police officer shootings and the City's oversight of use of force. *Id.* at *5. The Milan court rejected the citation to former Mayor Emanuel's statement about the code of silence because it came in the context of a police shooting and because Plaintiff failed to connect the code of silence to the facts at issue in that case. *Id.* In short, *Milan* supports the City's position and not Plaintiff's.

Plaintiff also cites to *Taylor v. Norway*, No 20 C 7001, 2021 WL 4133549 (N.D.Ill. Sept. 2021) as an example where a *Monell* claim pertaining to the failure to discipline was found to be sufficiently pleaded. Response at p. 9. The City notes that the examination of whether a complaint plausibly states a claim is context-specific. For instance, the alleged misconduct in *Taylor* happened in 2018, years earlier than the relevant alleged misconduct in this case. Moreover, the City points out that Judge Dow in *Taylor* dismissed that Plaintiff's failure to train claim as insufficiently pled. No. 20 C 7001 at Dkt. 21, p. 6-7.

In the City's opening brief, the City demonstrated that Plaintiff misconstrued what was being said by the Civilian Office of Police Accountability, by the Illinois Attorney General and the Office of the Independent Monitor in evaluating the City's efforts to reform its behavior. The City quoted directly to the documents Plaintiff cited to. Plaintiff attempts to say that analysis requires the Court to find facts and therefore is improper. Response at p. 11. The City contends it is perfectly proper for the Court to note what the agencies in question actually said in determining whether Plaintiff has plausibly stated a claim for relief. Plaintiff argues that the City's citation of the fact that the City advanced the use of bodyworn cameras as an effort to minimize the code of silence creates a question of fact and should not be considered. Response at p. 11. The City states that there is no question of fact about it. Plaintiff cited to the DOJ Report, which is therefore incorporated by reference in his Amended Complaint. The DOJ Report states repeatedly that the City had begun the use of bodyworn cameras and was seeking to expand their use at the time it was issued in 2017. See, *e.g.*, DOJ Report

at p. 3, 6, 78. Further, the Consent Decree also states that the City will use body-worn cameras. See *State of Illinois v. Chicago*, No. 17 CV 6260 at Dkt. 703. ("Consent Decree"), p. 67-69. Plaintiff does not seem to dispute these facts either in his Amended Complaint or his Response.

Plaintiff cites to *Howard v. Sheriff of Cook County*, 15 C 9384, 2016 WL 4366598 (N.D.Ill. Aug. 16, 2016) for the proposition that courts allow for conclusory pleading in *Monell* claims even after *Iqbal* and *Twombly*. Response at p. 12. *Iqbal* and *Twombly*, however, instructs courts that they may disregard conclusory allegations. See *Iqbal*, 556 U.S. at 678, 681.

Plaintiff argues that the City's arguments about the DOJ Report's statement as to the code of silence is self-contradictory. Response at p. 12. Far from it. It can be true that the DOJ Report does not adequately reflect the status of customs in 2020 on the one hand and that it is an insufficient basis on which to plausibly assert that even in 2017 the code of silence was not widespread within the Chicago Police Department on the other. The City's contention is that even in the light most favorable to Plaintiff, since the DOJ could not tell how widespread the code of silence was, it is not a fair inference that the code of silence was so widespread that it could be fairly considered a custom of the Chicago Police Department.

Plaintiff cites to the decision in *Svec v. City of Chicago*, 2020 L. 10535 as a purported example of the code of silence. Response at p. 13. The City notes that the fact of the verdict may be properly the subject of judicial notice, but not the substance of the facts underlying the verdict. The City further notes that the verdict in *Svec* is being challenged with post-trial motions.

Plaintiff alleges that his claims that he has repeatedly been discriminated against in addition to the statistics he has cited are sufficient to assert that the City has a widespread practice of biased policing. Response at p. 14. The City has already demonstrated that more is needed, and through its citation to the *Echols* case, shown that citing traffic statistics is not enough to show a widespread practice.

## B. Plaintiff fails to plead deliberate indifference

Plaintiff misconstrues the City's position when he claims the City believes that it is "immune from *Monell* liability" because it entered into the Consent Decree. Response at p. 15. In reality, the City contends that given that it has entered into the Consent Decree, there needs to be a greater showing by Plaintiff that the City's final policymaker was deliberately indifferent to the problems the Consent Decree addresses, which include all the policies Plaintiff complains of. Plaintiff cites several cases where motions to dismiss were not granted on purportedly similar grounds to the ones argued here. Response at p. 15-16. Of these cases, only one references the Consent Decree itself. In *Haligas v. City of Chicago*, 2022 WL 2340878, the Court says in a footnote that it is unclear if it could take judicial notice of any of the facts involved with the Consent Decree other than its existence, and that the cout was unaware of how it fit into the City's argument. *Id.* Hopefully, the City in this case has made it sufficiently clear: Because the Consent Decree establishes that the City has agreed to reform its police department in the areas sought by Plaintiff, Plaintiff has not sufficiently alleged that the City is deliberately indifferent to the practices Plaintiff claims existed. Thus, Plaintiff has not plausibly stated a *Monell* claim.

Plaintiff argues in his response that the City has engaged in "routine noncompliance" with the Consent Decree and that the has not been sufficient follow-through. Response at p. 16. But even taking those types as facts as true, the City's alleged failure to eliminate the complained-of practices does not show that it has endorsed the practices. The Seventh Circuit established this in *Wilson v. City of Chicago*, 6 F.3d 1233 (7h Cir. 1993). ("More was needed to show [final policymaker] approved the practice. Failing to eliminate a practice cannot be equated to approving it").

Plaintiff does not address the arguments the City made as to the lack of pleading about deliberate indifference. Those arguments are therefore waived. *Bonte v. U.S. Bank*, N.A., 624 F.3d 461, 466

### C. Plaintiff fails to plead causation

Plaintiff claims that he has sufficiently shown causation. Response at p. 17-18. The City stands on the arguments and case law cited in its opening brief that Plaintiff fails to plead non-conclusory facts sufficient to show causation.

### CONCLUSION

WHEREFORE, Plaintiff failed to satisfy the factual specificity required under *Iqbal* by merely alleging legal conclusions and repeating boilerplate *Monell* allegations throughout their Complaint; Because their allegations are nothing more than mere conclusions and too attenuated to support their claim, the Court should dismiss Count VI of Plaintiff's First Amended Complaint with prejudice and provide any other relief this Court deems appropriate and just.

DATED: September 26, 2022

                                              Respectfully submitted,

                                              */s/ Raoul Vertick Mowatt*
                                              Raoul Vertick Mowatt
                                              Assistant Corporation Counsel Supervisor

Mitchell R. Paglia, Assistant Corporation Counsel III
Danielle A Clayton, Assistant Corporation Counsel III
Caroline Fronczak, Deputy Corporation Counsel
City of Chicago, Department of Law
2 North LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-3283 (Mowatt phone)
(312) 744-6566 (Fax)
raoul.mowatt@Cityofchicago.org
**Attorneys for the City of Chicago**

### CERTIFICATE OF SERVICE

I, an attorney, hereby certify that on September 26, 2022 I served the foregoing document upon all counsel of record by filing a copy with the Clerk of the Northern District of Illinois using the Court's electronic filing system.

                                              */s/ Raoul Vertick Mowatt*
                                              Assistant Corporation Counsel Supervisor