IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AARON BURDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 22-cv-00046 |
| CITY OF CHICAGO, a municipal corporation; Officer ALBERT TORRES, Star #13067; Officer MOHAMMAD BAKER., Star #19740; Officer ANDREW KATS, Star #17577; Officer ANGELO DICERA Star #14902; and J. DOE OFFICERS 1-5. | ) ) ) ) ) ) ) ) | Honorable Judge Edmond E. Chang<br><br>Honorable Magistrate Judge Young B. Kim |
| Defendants. | | |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTION TO BIFURCATE PLAINTIFF'S *MONELL* CLAIM AND TO STAY *MONELL* DISCOVERY**

Defendant City of Chicago ("the City"), by and through one of its attorneys, Raoul Vertick Mowatt, Assistant Corporation Counsel Supervisor, and Defendants Albert Torres, Mohammad Baker, Andrew Kats and Angelo Dicera ("Individual Defendants"), by and through one of their attorneys, Emily R. Bammel, Assistant Corporation Counsel, (collectively, "Defendants") for their joint reply in support of their motion to bifurcate Plaintiff's *Monell* claim and stay discovery on that claim, state as follows:

**INTRODUCTION**

In their opening brief, Defendants demonstrated that bifurcation would be appropriate in this case for three reasons. First, bifurcation would promote judicial economy and streamline the case. Defendants showed how Plaintiff's *Monell* claim would turn a relatively straightforward case about a handful of brief and discrete incidents into a sprawling monster encompassing subjects

Page **1** of 13

ranging from the City's disciplinary processes for its officers, traffic stop statistics, various studies of the Chicago Police Department, the Consent Decree, the City's reform efforts and their success, and on and on and on. The City showed that the myriad subjects to be raised would require a grossly disproportionate amount of time and resources to pursue, almost certainly engender discovery disputes that would require court intervention, and likely lead to a motion for summary judgment. Defendants also showed that they would be prejudiced by the *Monell* claim because a jury would be unlikely to parse the evidence properly. Third, Defendants showed that Plaintiff would not be prejudiced by bifurcation. Finally, Defendants offered the City's limited consent to entry of judgment as a compromise that would allow for Plaintiff to obtain judgment against the City if the officers are found to have violated his rights.

Plaintiff makes several unavailing arguments in response. Plaintiff concedes that the *Monell* claim will make the litigation "extensive, complex, costly, and time-consuming." Response at p. 8. Plaintiff, however, attempts to downplay how extensive, complex, costly and time-consuming the claim would make the case at bar. Plaintiff also wrongly attempts to argue that many of the subjects of the underlying claim co-exist with the *Monell* claim and therefore bifurcation would not provide much of a time savings or reduce the number or type of disputes between the parties. That is patently untrue. Plaintiff claims that it is premature to consider the possible prejudice to Defendants and contends that limiting instructions would suffice to stave off prejudice to Defendants. Response at p. 9. But the threat of prejudice is both real and profound, and limiting instructions may not be enough. Next, Plaintiff spends considerable time arguing that Plaintiff would suffer prejudice if bifurcation is granted. But the only way in which Plaintiff claims that he would suffer prejudice is from an abstract inability to use the lawsuit as a vehicle for reform. Response at p. 5. This argument is also unavailing for several reasons. First, it is unclear whether

that is the sort of prejudice to be considered in evaluating whether bifurcation is proper. Second, Plaintiff still could choose to pursue the lawsuit as a vehicle for reform; he would just be obligated to prove the underlying constitutional violations first. Third, even assuming for argument's sake that Plaintiff would suffer an inability to pursue reform through the lawsuit, that prejudice does not outweigh the strain on judicial economy that Plaintiff's *Monell* claim would bring nor the undue prejudice to Defendants by having the claim remain. Finally, the City disagrees with Plaintiff about its limited consent to entry of judgment.

For these reasons, Defendants respectfully request this Honorable Court (1) bifurcate Plaintiff's *Monell* claim pursuant to Rule 42; (2) stay discovery and/or litigation of the *Monell* claim; (3) enter Defendant City's proposed *Limited Consent*; and (4) stay *Monell* discovery during the pendency of this Motion; and (5) for the grant of any such other relief as the Court deems just.

## ARGUMENT

### I. Bifurcation Serves The Interests of Judicial Economy.

Defendants argued in their opening brief that bifurcation would allow the parties to avoid burdensome and potentially unnecessary discovery and litigation costs. There are three separate incidents within the statute of limitations. Two of the three incidents captured entirely on video and the third is at least partially captured on Plaintiff's cell phone video. Thus, there is a narrow window for the dispute about the facts of what happened in any of these incidents. The number of witnesses as to these incidents and the production of documents as to these incidents is relatively simple.

By contrast, Defendants established that including the *Monell* claim would exponentially expand discovery into areas that have nothing to do with Plaintiff or these incidents: dozens, if not hundreds, of unrelated cases of alleged police misconduct; traffic stop statistics and their meaning,

or lack thereof; the type of training police officers received; the content and meaning of reports by such agencies as the U.S. Department of Justice, the Police Accountability Task Force, the City's Office of Inspector General, the American Civil Liberties Union and more; the Consent Decree reached between the City and the Illinois Attorney General's Office in No. 17 CV 6260 at Dkt. 703. ("Consent Decree"); the City's reform efforts in the wake of the aforementioned reports and the Consent Decree. Defendants pointed out that this list is derived from the starting point of Plaintiff's allegations and that the actual discovery Plaintiff might seek if allowed to go forward could be even more extensive. Defendants pointed out that the *Monell* claim would require numerous witnesses from various parts of the City and potentially numerous third-party witnesses. It would almost certainly be time-consuming and engender discovery disputes. Expert discovery and dispositive motion practice would be inevitable. Defendants cited to Seventh Circuit case law suggesting that courts should actively manage lawsuits to stop straightforward cases from spiraling out of control. *Montanez v. Simon*, 755 F.3d 547, 552 (7th Cir. 2014). Defendants further cited to Seventh Circuit case law that bifurcation is a sensible solution to the problems posed by *Monell* discovery in cases where a municipal defendant will indemnify the individual defendants and there is no basis for injunctive or other relief. *Swanigan v. City of Chicago*, 775 F.3d 953, 957 (7th Cir. 2015).

In response, Plaintiff does not truly dispute any of the foregoing. Rather, Plaintiff simply attempts to downplay the importance of judicial economy and the extent to which bifurcation would support it. Plaintiff argues that courts "have noted that bifurcation does not in itself guarantee judicial economy." Response at p. 8. This argument, of course, misses the point that without bifurcation in this case, there is likely to be the sprawling discovery that is easily avoided. Plaintiff cites four cases for the proposition that there could be discovery disputes over whether

Page **4** of **13**

something goes to the claims against the individual officers or the *Monell* claim if bifurcation is granted. Response at p. 8. With all due respect to the courts that made those points, Defendants believe that argument to be misplaced. First, it is relatively easy to distinguish between *Monell* discovery and discovery into the underlying incidents in this case and in general. Discovery as to the Individual Defendants, their disciplinary background and the general orders of the Chicago Police Department are frequently produced in most cases. By contrast, the sort of discovery Plaintiff are seeking in terms of investigations into potentially hundreds of unrelated officers' misconduct, the disciplinary system, the code of silence, bias-based policing, the training of officers and so forth clearly go to Plaintiff's policy claim. Plaintiff's arguments that there is much overlap between the policy claim and the claims against the individual officers is misplaced. It would be fairly simple to establish evidence about what the officers in the incidents involved with Plaintiff allegedly did or failed to do, and make a claim that Plaintiff is entitled to damages without delving into dozens of other areas of inquiry. Second, to the extent that there might be disputes over whether something is properly categorized as non-*Monell* discovery, it is likely that such disputes would be resolved short of court intervention. In most cases, Defendants anticipate the appropriate party would make an objection and then provide the answer. And even assuming that court intervention might be needed in some cases, it is simply not the case that the times such disputes might arise would be anywhere close to the times disputes over the burdensomeness of *Monell* production or other aspects of *Monell* discovery would come up. Plaintiff is simply wrong when he argues "the interest of judicial economy is slight." Response at p. 9.

Because there is a strong interest in judicial economy, and because the *Monell* claim would prolong the case and bring about numerous discovery disputes, Defendants respectfully request that the Monell claim be bifurcated and discovery be stayed.

## II. Bifurcation will assist in eliminating the risk of unfair prejudice.

Defendants demonstrated in their opening brief that bifurcation would help avoid the severe and undue prejudice that Defendants will face in a single trial of both the underlying issues and the *Monell* claim. The *Monell* claim would turn the trial from a straightforward determination of what happened to Plaintiff on three occasions into something that would require examinations of scores of such cases that have nothing at all to do with the Defendant Officers, statistical analysis on subjects ranging from traffic stops to officer discipline, explanations of complicated systems and rules, expert testimony, and on and on and on. Defendants showed that there is a "real danger that evidence admissible on the issues relating to conduct by the City . . . will contaminate the mind of the finder of fact in its consideration of the liability of the other defendant[s]." *Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *3 (N.D. Ill. July 16, 2008). Simultaneously, the City would potentially have the jury believe that it should be found liable for the acts of the individual Defendant Officers just because it employed them, even though *Monell* and its progeny emphatically reject that as a possibility.

Plaintiff does not truly dispute that a trial of the *Monell* claim alongside the claims against the Defendant Officers would involve abundant evidence of unrelated misconduct that could wrongly attributed to a party.

Plaintiff rather argues that assessing the prejudice that Defendants would face is premature and could be cured with limiting instructions. Response at p. 9. It is not premature to expect that the prejudice would ensue from a unified trial of the *Monell* claim and the claims against the officers. Indeed, that is why the cases Defendants cited in their opening brief referred to it. Plaintiff makes an argument to the effect that Defendants do not cite any authority to support the notion that the evidence about the underlying incidents are completely unrelated to the broader *Monell*

case. Response at p. 10. It is unclear what Plaintiff is trying to contend here. It is self-evident that the plethora of subjects Plaintiff wishes to introduce such as the Consent Decree, the performance of COPA and so forth are separate and distinct from what happened to Plaintiff on three separate occasions. Moreover, the authorities Defendants cited spoke directly to this phenomenon in other cases. Plaintiff accuses Defendants of attempting to "shoehorn merits arguments into a bifurcation motion." Response at p. 10. Although Defendants would contend that Plaintiff's claims lack merit, nothing in Defendants' opening brief is dependent on or reflects that lack of merit. If Plaintiff has the most meritorious claims imaginable, there would still be a large risk of undue prejudice to having those claims tried together. Indeed, Defendants are seeking for bifurcation in large part because it allows for a trial exclusively on the merits and avoids the risk of guilt by association. As for the efficacy of limiting instructions, Defendants anticipated that Plaintiff would make that argument and cited to an observation from Judge Castillo that, "It is true that courts may minimize this risk by instructing the jury, and juries are presumed to dutifully follow limiting instructions. However, while jury instructions may correct for such prejudice, bifurcation avoids it entirely." *Ackerman v. Allen*, 2017 WL 1536447 at *5, No. 16 CV 6199 (N.D.Ill. Aril 27, 2017)(citation omitted). Similarly, Judge Tharp wrote in response to such an argument, "in the Court's view, additional jury instructions limiting the jury's consideration of the *Monell* evidence, on top of the limiting instructions that will be needed with respect to Rule 404(b) evidence, would only add complexity to what already promises to be a complex trial and substantially exacerbate the potential for juror confusion." *Kitchen v. Burge*, No. 10 CV 4093 at Dkt. 399, p. 13. (N.D.Ill. November 2, 2012). Even accepting the presumption that juries are expected to follow instructions, that presumption is not always going to hold true. It is clearly better to eliminate the risk of such prejudice entirely through bifurcation. Plaintiff fails to address this point. Plaintiff also fails to

address the point Defendants raised that they would be prejudiced by the dramatically increased cost in time and other resources that would happen if the *Monell* claim is not bifurcated and discovery stayed.

Because the potential prejudice to Defendants is great and Plaintiff's arguments to the contrary are unavailing, Defendants respectfully request the Court stay and bifurcate Plaintiff's *Monell* claim.

### 3. Bifurcation will not prejudice Plaintiff.

Defendants demonstrated in their opening brief that bifurcation and a stay of the *Monell* claim will not prejudice Plaintiff. It will not affect Plaintiff's recovery of any compensatory damages that a jury may award since Plaintiff cannot recover any additional compensatory damages based on his *Monell* claim if he has already recovered compensatory damages against the Individual Defendants. Should Plaintiff wish to pursue his *Monell* claim after a possible win on any of his constitutional claims, as Defendants argued, he would potentially be able to do so.

Plaintiff spends the bulk of his response attempting to argue that Plaintiff would be greatly prejudiced by the inability to pursue his *Monell* claim because of his intent to deter police misconduct. Response at p. 5-7. It is unclear to Defendants that an interest in attempting to deter police misconduct falls within the sort of prejudice contemplated by Rule 42. Even assuming *arguendo* it is, staying and bifurcating the *Monell* claim would not prejudice Plaintiff in a meaningful way. First, Plaintiff can seek to deter police misconduct through means other than the lawsuit, from petitioning government officials to working with community groups to leading protests. Second, Plaintiff's interest in deterring police misconduct is already being served by the Consent Decree and other mechanisms. Plaintiff accuses the City of trying to wield the Consent Decree "as a shield to any scrutiny of the Chicago Police Department." Response at

p. 7. This hyperbole misconstrues both the reality of the situation and Defendants' arguments in this motion and the motion to dismiss. It is an indisputable fact that the City has agreed to be under close scrutiny in all aspects of its police and police-accountability practices through the Consent Decree among other mechanisms, not attempted to shield itself from scrutiny. Despite this, Plaintiff complains that he has not had an involvement in shaping the Consent Decree and that the problems the Consent Decree attempts to address have not been fixed. Response at p. 7. But no one has pretended that the Consent Decree would solve every issue that it attempts to address instantaneously. Nor should it be significant that Plaintiff has not put his own stamp of approval on the reform process through the Consent Decree or other means. Defendants pointed out in their opening brief that Judge Guzman reasoned in staying and bifurcating *James v. City of Chicago*, 21 C 6750, the comprehensive nature of the Consent Decree makes it less meaningful that individual plaintiffs have personal stakes in pursuing deterrence of police misconduct through a lawsuit. This is a point Plaintiff here either failed to understand or chose not to address. Most importantly, even assuming it crucial that Plaintiff put his own personal spin on deterring misconduct, staying and bifurcating Plaintiff's *Monell* claim would not prevent that. Should he be able to prove an underlying constitutional violation, bifurcation would only postpone it.

Plaintiff argues that he should be allowed to pursue the *Monell* claim as "master of [their] complaint." *Id*. at p. 6. But even being master of a complaint has limits. As Defendants argued in their opening brief, courts have broad discretion under Rule 42 to structure discovery and to stay claims to promote the interests of judicial economy and avoidance of undue prejudice and the Seventh Circuit has endorsed bifurcation in *Monell* claims in cases like the one at bar to allow courts to better manage their dockets. Rather, the Plaintiff would not be prevented from pursuing his *Monell* claim forever if the motion were granted. As Judge Kendall observed in granting a

motion to stay and bifurcate a *Monell* claim, "although the Court acknowledges that Andersen, as the master of his Complaint, brought his *Monell* claim to hold the City accountable for its systemic practices, as discussed above, a stay of discovery of the *Monell* claim does not foreclose him from pursuing his *Monell* claim at a later date if he is successful against the individual officers." *Andersen v. City of Chic*ago, 2016 WL 7240765 at *6 (N.D.Ill. December 14, 2016). Plaintiff further argues in cursory fashion that the prejudice he would face from not being able to pursue his *Monell* claim outweighs the interest of judicial economy and the potential prejudice to Defendants. Response at p. 9-10. Defendants acknowledge that courts in the cases Plaintiff cited and others have acknowledged that there are valid non-economic reasons to pursue a *Monell* claim. But in Defendants' view, none of those cases cited have hinted that such non-economic reasons should trump the avoiding the drain of time and resources and the undue prejudice that would come with the pursuit of Plaintiff's *Monell* claim.

Plaintiff argues that bifurcation of his *Monell* claim would prevent him from pursuing his "continuing violation" theory. Response at p. 6-7. In brief, Plaintiff seeks to incorporate a number of time-barred allegations of police misconduct that he claims to have personally experienced dating back to 2017 under his *Monell* claim. Defendants reply by incorporating here the case law and arguments from the City's motion to dismiss and their reply to that motion on this point. In brief, Plaintiff's theory of a continuing violation has already been rejected when it was advanced by Plaintiff's counsel in a similar case. But even assuming *arguendo* that this Court allowed Plaintiff to pursue that approach, the Court could allow Plaintiff to pursue evidence as to what may have happened to him personally between 2017 and 2020 without bringing in the slew of *Monell* evidence as to the City's training of officers, use of force, reform efforts, whether its policing was bias-based and so forth.

Because Plaintiff would not face meaningful prejudice from bifurcation, Defendants respectfully request his *Monell* claim be stayed and bifurcated.

**4.     The City's Limited Consent is beneficial.**

The City has offered its limited consent as a way to potentially streamline the litigation, offering Plaintiff the potential benefit of a victory against the City even in the face of qualified immunity, at a saving of cost and time to all parties.

Plaintiff in response raises three issues with the limited consent: that it does not permit Plaintiff to prove the City's culpability, that it allegedly does not adequately address qualified immunity, and that it does not address the possibility that there could be liability as to the municipality but not any individual defendants. Response at p. 11-12. To reply to these arguments briefly, Defendants acknowledge that some courts have approved of the limited consent and some have not. The limited consent is not a necessity for bifurcation; courts have agreed to stay and bifurcate *Monell* claims without entering it. The issue Plaintiff raises about it not addressing qualified immunity sufficiently is not valid, given the circumstances. As Judge Durkin reasoned in granting bifurcation in *Tate v. City of Chicago*, 19 CV 7506, a special interrogatory could be posed to the jury to determine if there was a constitutional violation by any officer. See *Tate*, Dkt. 129 at p. 5. As to the possibility that there might be a valid claim against the City but not against the individual officer, that simply does not apply to the case at bar. Plaintiff cites to *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 305 (7th Cir. 2010). But the *Thomas* Court envisioned a scenario where the individuals could have acted constitutionally while the County did not in a failure to provide medical care. Plaintiff here alleges that the Defendant Officers violated the Constitution in various ways. Plaintiff needs to prove that they in fact did so. If he cannot, it would be an impermissible, inconsistent verdict under *Thomas* to hold that the Defendant

Officers did not violate Plaintiff's rights but the City did.

## CONCLUSION

WHEREFORE, Defendants respectfully request that the Court: (1) bifurcate Plaintiff's *Monell* claim pursuant to Rule 42; (2) stay discovery and/or litigation of the *Monell* claim; (3) enter Defendant City's proposed *Limited Consent*; and (4) stay *Monell* discovery during the pendency of this Motion; and (5) for the grant of any such other relief as the Court deems just.

**Dated: September 26, 2022**

Respectfully submitted,

*/s/ Raoul Vertick Mowatt*
Assistant Corporation Counsel Supervisor

Caroline Fronczak, Deputy Corporation Counsel
Danielle Alvarez Clayton, Assistant Corporation Counsel III
Mitchell R. Paglia, Assistant Corporation Counsel III
2 N LaSalle Street, Suite 420
Chicago, IL 60602
(312) 744-3283 (Mowatt)
Raoul.Mowatt@cityofchicago.org

*/s/ Emily R. Bammel*
Assistant Corporation Counsel III

Jessica L. Griff, Assistant Corporation Counsel Supervisor
Michael J. Bradtke, Assistant Corporation Counsel III
2 N. LaSalle Street, Suite 420
Chicago, IL 60602
(312) 744-3982 (Bammel)
Emily.Bammel3@cityofchicago.org

## CERTIFICATE OF SERVICE

I, an attorney, hereby certify that on September 26, 2022, I have served this notice and the attached document **DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTION TO**

**BIFURCATE PLAINTIFF'S *MONELL* CLAIM AND TO STAY *MONELL* DISCOVERY**

by causing it to be filed with the Court's CM/ECF system, which cause it to be served to all counsel of record.

                                             */s/Raoul Vertick Mowatt*
                                             Raoul Vertick Mowatt
                                             Assistant Corporation Counsel Supervisor