**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Aaron Burden,<br><br>           Plaintiff,<br><br>    v.<br><br>The City of Chicago, and Chicago Police Officers Albert Torres (#13067), Mohammad Baker (#19740), Andrew Kats (#17577), Angelo Dicera (#14902), and J. Doe Officers 1-5,<br><br>          Defendants. | No. 22-cv-46<br><br>Hon. Judge Edmond E. Chang<br><br>Hon. Mag. Judge Young B. Kim<br><br><br>JURY TRIAL DEMANDED |

## JOINT STATUS REPORT

The parties, by and through their undersigned counsel, submit the following Joint Status Report in accordance with this Court's Order of December 8, 2022 [Dkt. 75]:

The Court has ordered the parties to confer "about the adequacy of their discovery responses by January 6, 2023, and then file a joint status report identifying each side's written discovery issues (must identify the specific interrogatories and requests to produce), along with the relevant written discovery responses as exhibits, by January 13, 2023." Dkt. 75. The Court further stated that "written discovery is now closed, except for supplementing earlier discovery responses as required under Rule 26(e) and serving requests to admit and subpoenas for records. If the parties wish to serve supplemental written discovery requests, they must seek leave of court by filing a motion and attaching the proposed set of supplemental requests as an exhibit to the motion." *Id*.

The parties summarize elements of the history of this litigation to provide the Court with context for the disputes described below.

The instant lawsuit includes allegations that Chicago police have violated Plaintiff's through a course of conduct dating back to 2017. Against the backdrop of motions to dismiss and a motion to bifurcate Plaintiff's *Monell* claims on various grounds, the parties have proceeded with discovery as to the incidents that indisputably fall within the statute of limitations: a May 28, 2020 incident, a January 5, 2021 incident and a March 21, 2021 incident.

Plaintiff propounded written discovery requests on the City and Defendant Officers on July 1, 2022. On that same date, Defendant Officers propounded discovery requests on Plaintiff. The City has not yet propounded discovery requests on Plaintiff because it was awaiting the results of the pending partial motion to dismiss and motion to bifurcate Plaintiff's *Monell* claims. Dkt. 44, 47. By September all parties had responded to the propounded discovery.

In October, Defendant Officers scheduled and the parties held a 37.2 to address their issues with Plaintiff's discovery responses. In response, Plaintiff supplemented some of his discovery responses and said he would have to deliberate on other issues. In December, Plaintiff raised various issues with Defendants' discovery responses.

After exchanging emails, the parties met and conferred about discovery issues on January 5, 2023.

Plaintiff's position is that all matters below, except as otherwise noted, are ripe for decision.

I.     **PLAINTIFF'S DISCOVERY ISSUES WITH DEFENDANTS' RESPONSES**

Defendants' Responses and Objections to Plaintiff's discovery requests, including the original requests, are attached to this Status Report as Exhibits 1-8. They are:

1.   Defendant Baker's Responses to Plaintiff's First Interrogatories (**Exhibit 1**);

2. Defendant Torres' Redacted Responses to Plaintiff's First Interrogatories (**Exhibit 2**)[1];
3. Defendant Kats' Responses to Plaintiff's First Interrogatories (**Exhibit 3**);
4. Defendant Dicera's Responses to Plaintiff's First Interrogatories (**Exhibit 4**);
5. Defendants Baker and Torres' Responses to Plaintiff's First Requests to Produce (**Exhibit 5**);
6. Defendants Kats and Dicera's Responses to Plaintiff's First Requests to Produce (**Exhibit 6**);
7. Defendant City's Responses to Plaintiff's First Requests to Produce (**Exhibit 7**); and
8. Defendant Officers' Proposed Contested Subpoena (**Exhibit 8**).

Defendants refer to the following discovery Responses: Plaintiff's Responses to Defendant Baker's Interrogatories (Aug. 20, 2022) is attached as **Exhibit 9.** Plaintiff's Responses to Defendants' First Set of Requests for Production (August 19, 2022). **Exhibit 10;** and Plaintiff's Supplemental Responses to Defendants' Interrogatories (Nov. 14, 2022), **Exhibit 11.**[2]

The parties' positions are briefly summarized below, and the parties are happy to submit additional briefing about any of the below items if the Court so requests.

**A.  Plaintiff's Discovery Issues with Named Officers' Responses**

**Interrogatory No. 4 to Named Officers**

Plaintiff's Position: This Interrogatory sought information regarding the nature of prior lawsuit(s) the named Defendants have been defendants in. **Exhibits 1-4** at pp. 3-4. Plaintiff clarified in response to the vagueness objection that "nature of the charges" meant "nature of the claim" during the parties' January 5, 2023 telephonic meet and confer. Plaintiff does not believe that Defendants' principal objection, that this information is publicly available, is a valid objection, which he

---

[1] Defendants' counsel provided a redacted version of this response due to concerns about potential information subject to the protections of the Juvenile Court Act, 705 ILCS 405 *et seq*.
[2] A redacted version of Exhibits 9 and 11 have been filed obscuring portions of certain materials not at issue or cited in this Joint Status Report, including personal telephone numbers for individuals who are not parties to this case, legal matters for which confidentiality was a material term of a settlement, medical information, and other private information.

outlined to Defendant Officers in a December 23, 2022 LR37.2 Letter and during the meet and confer, in which Plaintiff cited *Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 616 (N.D. Ill. 2001) and *Avennatti v. Gree USA, Inc.*, No. 20-CV00354-JPH-MJD, 2021 WL 1034392, at *3 n.3 (S.D. Ind. Mar. 17, 2021). Plaintiff is asking for one sentence from each officer that describes the nature of the claims against them.

<u>Defendants' Positions</u>: Defendants' Responses sufficiently provide the information requested and answered the Interrogatory. The nature of the case or claims as Plaintiff is requesting, is publicly available and equally accessible to Plaintiff. Further, such additional information requested by Plaintiff seeks a narrative responsive, which is better suited (and available to discover) through a deposition.

Plaintiff's request that Defendants supplement their responses with sentence(s) explaining the nature of prior lawsuits is unnecessary, irrelevant and burdensome, as Plaintiff can easily access the cases' Complaints and ask for narrative descriptions at Defendants' depositions. Defendants stand on their Responses.

**Interrogatory No. 8 to Named Officers**

<u>Plaintiff's Position</u>: This Interrogatory sought a description of the threat that the officers perceived from Plaintiff, which Defendants answered by misplaced reference to non-responsive or not fully responsive documents. **Exhibits 1-4** at pp. 6. A request that officers write down a brief description of the threat they perceived from Mr. Burden is not in any way objectionable, nor sufficiently answered by reference to documents.

For example, Defendants' Kats and Dicera's responses rely on the body-worn camera footage ("BWC"), which does not show the vital opening seconds of the interaction between

these officers and Plaintiff. It references a Tactical Response Report ("TRR"), which does not fully answer the question. Defendants' Responses also reference Civilian Office of Police Accountability ("COPA") statements, but do not identify where in this document the responsive answer allegedly lies—this is not what Fed. R. Civ. P. 33(d)(1) contemplates, as Defendants can provide a succinct statement of the supposed threat more easily than Plaintiff can sift through a lengthy interview and then guess at which portion Defendants' may rely upon. The Baker and Torres Investigatory Stop Report ("ISR") report is also insufficient to determine an answer to the question, which asks for specific detail regarding the perceived threat. Defendants' preference to answer deposition questions on this subject rather than via interrogatory answer is not a valid basis to decline to give a succinct interrogatory answer.

Defendants' Positions: Defendants' Responses sufficiently provide the information requested and answered the Interrogatory. Defendants referred Plaintiff to the records and documents that have responsive information, which is appropriate and proper under Fed. R. Civ. P.33(d). Defendants have specified the records to Plaintiff, as well as produced them to Plaintiff for review and analysis. Defendants Kats and Dicera's Response also included a reference to the Arrest Report, which in fact includes a narrative response. Plaintiff's objections takes no issue with this Report, and instead objects that the others are insufficient. Further, any additional narrative response that Plaintiff seeks in a supplement, is better suited (and available to discover) through Defendants' depositions. Defendants stand on their Responses.

**Interrogatory No. 10 and 11 (Kats and Dicera)**

Plaintiff's Position: This Interrogatory sought information about contact Defendants and other officers made with Plaintiff. Defendants responded with multiple objections, but ultimately relied again on documents for their answer. **Exhibit 3-4** at p. 7. The generalized narrative accompanying

the Kats and Dicera TRR, however, does not fully and adequately answer the question, which asks for specific detail about who made contact, where they made the contact, the "reason" for the contact (for which the plain meaning suffices), and actions taken to prevent the contact. *Id.*

The BWC is similarly non-responsive; it is difficult to discern who is making contact with Plaintiff and how, and additionally the camera is obstructed for critical moments or had not yet been activated at others. Plaintiff renews his request for a responsive answer that does not rely on documents that do not provide a complete response.

Defendants' Positions: Defendants' Responses sufficiently provide the information requested and answered the Interrogatory. Defendants referred Plaintiff to the records and documents that have responsive information, which is appropriate and proper under Fed. R. Civ. P.33(d). Defendants have specified the records to Plaintiff, as well as produced them to Plaintiff for review and analysis. Further, any additional narrative response that Plaintiff seeks in a supplement, is better suited (and available to discover) through Defendants' depositions. Defendants agree to supplement and amend their Responses to include reference to the Arrest and case reports which includes a narrative response and further Defendants stand on their Responses.

**Interrogatory No. 16 (Baker/Torres)**

Plaintiff's Position: This Interrogatory sought an explanation of the officers' decision to seize Plaintiff on May 28, 2020. Defendants' answer again relies on inadequate documents. **Exhibit 1-2** at p. 9. Plaintiff maintains that it is not in any way objectionable for the officers to provide a single sentence setting forth the officers' decision to seize Plaintiff on May 28, 2020.

Defendants Positions: Defendants' Responses sufficiently provide the information requested and answered the Interrogatory. Defendants referred Plaintiff to the records and documents that have

responsive information, which is appropriate and proper under Fed. R. Civ. P.33(d). Defendants have specified the records to Plaintiff, as well as produced them to Plaintiff for review and analysis. Defendants refer Plaintiff to their COPA statement, which by definition are narrative responses as he seeks. Further, any additional narrative response that Plaintiff seeks in a supplement, is better suited (and available to discover) through Defendants' depositions. Defendants stand on their Responses.

**RFP No. 1 to Named Officers**

Plaintiff's Position: Plaintiff requested "Any and all documents related to the allegations in Plaintiff's Complaint and/or any of the Answers and/or affirmative defenses filed by any Defendants." All Defendant Officers raised several objections and produced or referred to a number of documents included within the relevant COPA log numbers. **Exhibit 6** at p. l-2; **Exhibit 5** at p. 1-2.

The files produced, however, are missing critical information, including the COPA investigator's analysis and other organizing COPA documents. During the parties' January 5, 2023 telephonic meet and confer, Plaintiff asked Defendants to reach out to COPA so that they can provide the investigator's portion of the log. Defendants were to discuss internally but have not provided an update. Plaintiff seeks production of the *entirety* of the COPA files.

Defendants' Positions: To the extent Plaintiff seeks additional records related to COPA 2021-0043, specifically the "investigator's file" Defendant Officers rely on their objection that it is more appropriately directed toward Defendant City. Defendant City concurs. It has agreed to see if there are supplementary materials, but maintains the objections in its response to the corresponding request for production.

**RFP No. 5 to Named Officers**

<u>Plaintiff's Position</u>: This Request sought electronic correspondence (like emails, instant messages, text messages, and social media posts) regarding the Plaintiff. As to Officers Kats and Dicera specifically, the Request was limited to the January 5, 2021 incident. Plaintiff proposed a number of search terms intended to yield the relevant results, including the following: "Burden," "Aaron Burden," "lawsuit," "22 cv 46," "2022-cv-000046" (and all further variations thereof), "Judge Lee," "Judge Chang," "Judge Kim," "January 5, 2021," "Jan 5," "January 5," "1/5/21," "1.5.21," "1-5-21," "TRR," "COPA," and "obstructing identification."

The Defendants objected, alleging that the Plaintiff's proposed search terms, custodians, and timeframes would yield an allegedly vast number of documents. **Exhibit 5, p. 3**; **Exhibit 6, p. 6.** However, the Defendants refuse to even run the searches to justify or provide a basis for a burden objection that can be adequately tested or evaluated.

With regard to Defendants Kats and Dicera , Plaintiff is willing to modify the term "Burden" to "Burden v Chicago" given the commonality of that word. Plaintiff is similarly willing to remove "TRR," "COPA" and custodians Torres and Baker.

With regard to Torres and Baker, for the first proposed search, Plaintiff is willing to modify the term "Burden" to "Burden v Chicago" given the commonality of that word. Plaintiff clarifies that the iterations of January 5, 2021 (1-5-21, 1.5.21) listed in his 12-23-22 LR37.2 letter should instead be iterations of May 28, 2020 for these custodians. Plaintiff is further willing to remove custodians Dicera and Kats from this search, as well as the terms "obstructing identification," "TRR," and "COPA."

For the second Torres and Baker proposed search, Plaintiff reiterates his clarification that the search duration is 5/27/20 through 6/3/20, and agrees to remove "elbowed," "handcuffs," and "handcuffed" from the search terms, which Defendants' indicated would return duplicate results.

As a general matter, Plaintiff maintains that it is not unduly burdensome—particularly for a Defendant as well-resourced as the City of Chicago, which has a multi-billion dollar yearly budget—to ask IT personnel to enter a sentence long string of search terms, separated as necessary by quotations and parentheticals, for two email custodians, and report on the result. If the result is, in fact, tens of thousands of emails as Defendant City's counsel suggested would be the result, Plaintiff remains opening to discussing further means of narrowing the proposed searches.

<u>Defendants' Positions</u>: Defendants do not agree to conduct the ESI/ email searches for the four named Defendant Officers for the 18 search terms Plaintiff proposes. As discussed in the 37.2 conference, Plaintiff's sur-name is common in the English language, searches for Judicial names are not related to the claims or defenses within Plaintiff's lawsuit, six variations of the date of incident is unnecessary and duplicative and will likely produce all emails sent on received on the date used as a search time alone, as well as the proposed time frame "to present" being undefined, ambiguous, burdensome and not proportional to the needs of the case.

As relayed during the conference, after further discussion, Defendant Officers supplement their Response by agreeing to search the following CPD email addresses, Andrew.Kats@chicagopolice.org, Mohammed.Baker@chicagopolice.org, Angelo.Dicera@chicagopolice.org, Albert.Torres@chicagopolice.org in the time period of January 4, 2021 to January 4, 2022, for the following terms : "Aaron Burden," "22 cv 46," 22 cv 000046," "obstructing identification."

Defendants do not agree to the additional remaining search terms included by Plaintiff. Conducting such an overbroad search at the forefront to then see if it is unduly burdensome for review and production is unnecessary and disproportional to the needs of the case.

**RFP No. 8 to Named Officers**

Plaintiff's Position: Plaintiff requested "Any and all documents related to any disciplinary action(s), including but not limited to, suspension, reprimands (verbal or written), and termination, which you have received from the City of Chicago." **Exhibit 5-6** at p. 7. The issue of producing disciplinary records was taken up with the City and the resulting positions are described below as a threshold matter relating to several city RFPs and specifically within the discussion of City RFPs. A prior disagreement as to time frame of production was resolved in anticipation of this report for the purposes of non-*Monell* discovery.

**RFP No. 9 to Named Officers**

Plaintiff's Position: During the January 5, 2023 conferral, this Request, which sought disciplinary records from other employers, was inadvertently moved by Plaintiff to City discussion of Officers' disciplinary records at CPD. **Exhibit 5-6** at p. 7. Plaintiff thus does not know Defendant Officers' position in response to this item.

Defendants' Positions to RFP No. 8 and 9: Defendant Officers stand on their Responses to these Requests as it pertains to the disciplinary records they have agreed to produce. Plaintiff's objections and increase of file production proposed is unproportional to the needs of the case, unduly burdensome and premature.

The production of records Defendant Offices agreed to produce over the 5 year periods, includes over 30 to 40 files to be reviewed as responsive for production. Extending to the time

frame to 10 years would increase the number of records to be requested, located, received reviewed for potential discovery responsiveness, and production. Entities hosting said records, such as COPA, are currently sufficiently backlogged, working on requests from over a year ago. Extending the time frame of records sought is unduly burdensome and not proportional to the needs of the case.

Additionally, as Defendants agreed to produce full files where allegations have been "sustained" or contain similar allegations as to those presented in Plaintiff's Complaint (ie: false arrest, unlawful seizure, excessive force, etc.), and Facesheets for all others, this is sufficient in terms of proportional needs to the case. As Defendants receive, review and produce to Plaintiff, he then has to opportunity to determine if based on a matter's Facesheet, they believe additional materials are responsive. Moreover, Defendants disciplinary history reports have been produced to Plaintiff which include all complaint matters. Plaintiff has had these history reports since the September 2022 production. Plaintiff's objections to Defendants' Responses in his December 23, 2022 letter did not reference any matters included, nor identify any he believes are not encompassed in Defendants' Responses. As such, Plaintiff can rely on these records along with the disciplinary files and records produced in Response as received. The Defendants have offered to evaluate on a case by case basis the need for a full CLEAR file upon Plaintiff's review of certain Facesheets and believes there is a basis to obtain the file. Overall, Plaintiff's blanket request is overly broad and burdensome. Thus, Plaintiff's evaluation of the scope and type of records Defendant Officers have agreed to produce is premature at this point in discovery.

Defendants stand on their Responses.

**RFP No. 10**

<u>Plaintiff's Position</u>: This interrogatory sought documents possessed by Defendants regarding other civil lawsuits to which they were parties. **Exhibit 5** and **6** at p. 5-6. Defendants objected on various grounds, but ultimately argued that the non-privileged documents are equally available to Plaintiffs as they are all allegedly public. As Plaintiff noted in his LR 37.2 Letter, this is a fair RFP, and the objection regarding public availability of documents is neither valid nor viable. ***See*** *Meyer*, 199 F.R.D. at 616 and *Avennatti*, 2021 WL 1034392, at *3 n.3. Plaintiff stands on his position.

<u>Defendants' Positions</u>: Defendant Officers agreed to supplement their Responses to specifically and directly answer the Interrogatory.

**RFP Nos. 22-24**

<u>Plaintiff's Position</u>: Plaintiff requested various disciplinary records. **Exhibits 5** and **6** at pp. 9-10. The issue of producing disciplinary records was taken up with the City and the resulting positions are described below as a threshold matter relating to several city RFPs and specifically within the discussion of RFPs.

<u>Defendants' Positions</u>: Defendants provided the same response as to their position regarding RFP Nos. 22 through 24, as to RFP Nos. 8 and 9. See Defendants' Response and position statement as to RFP No. 8-9 above.

**RFP No. 25**

<u>Plaintiff's Position</u>: Same as noted with regard to RFP No. 5 above.

<u>Defendants' Positions</u>: Defendants stand on their Responses that there are no responsive records. As it relates to their CPD email accounts, Defendant Officers object to Plaintiff's 16 proposed search terms on the following previously discussed bases: Plaintiff's sur-name is common in the English language, searches for Judicial names are not related to the claims or defenses within

Plaintiff's lawsuit, six variations of the date of incident is unnecessary and duplicative and likely to produce every email sent and received on the date utilized as a search term, as well as the proposed time frame "to present" being undefined, ambiguous, burdensome and not proportional to the needs of the case.

As relayed during the conference, after further discussion, Defendant Officers supplement their Response by agreeing to search the following CPD email addresses, Andrew.Kats@chicagopolice.org, Mohammed.Baker@chicagopolice.org, Angelo.Dicera@chicagopolice.org, Albert.Torres@chicagopolice.org in the time period of January 4, 2021 to January 4, 2022, for the following terms : "Aaron Burden," "22 cv 46," 22 cv 000046," "obstructing identification." Defendant Officers will produce any records that are responsive to the allegations of Aaron Burden within his operative Complaint.

Defendants do not agree to the additional remaining search terms included by Plaintiff. Conducting such an overbroad search at the forefront to then see if it is unduly burdensome for review and production is unnecessary and disproportional to the needs of the case.

### B. Plaintiff's Discovery Issues with Defendant City of Chicago's Responses

Discussed in detail below, the parties disagree as to RFPs 3, 20, and 21 with regard to the relevance of incidents the City considers time-barred.

### Threshold questions

### 1. Appropriate Time Frame and Nature of Production of Officer Disciplinary Records

Relevant to many of the below RFPs was a question with regard to the appropriate time-frame for production of full Complaint Register ("CR") files.

In its discovery response, the City stated that it would produce certain CRs and documents summarizing CRs under certain conditions that stemmed from incidents dating from five years before the May 28, 2020 incident. Ex. 8 at 4. Plaintiff originally sought to extend that period to 10 years. After 37.2 discussions, Plaintiff agrees to the five-year time frame but reserves right to a) seek a longer time frame if his *Monell* claim proceeds; b) request full files for any disciplinary events that the City has screened out that Plaintiff believes there is a good faith basis for production; and c) seek post-event discovery in the event *Monell* claims proceed.

The parties disagree as to whether the City should be required to produce investigator notes associated with the disciplinary records.

### 2. <u>Appropriate Time Frame and Nature of Production of Incidents the City Considers time-barred</u>

The City in its responses to interrogatories and requests for production stated that it would not be answering at this time as to incidents that it contends are time-barred or part of Plaintiff's *Monell* claim because of the motions to dismiss and bifurcate. See, *e.g.*, Ex. 7 at 1, 3, 5, 20.

Plaintiff called for the City to supplement its production to provide information as to incidents it considers time-barred. Plaintiff admitted that the time for *Monell* discovery is not yet ripe, but advanced the theory that Plaintiff remains entitled to the discovery on the theory that Plaintiff is entitled to such information to pursue his equal protection claims against the individual officers. Plaintiff cited to the case of *Mehta v. Vill. Of Bolingbrook*, 196 F.Supp.3d 855, 864 (N.D.Ill. 2016) in support of this position. The parties disagree as to the application of this case to discovery in the instant case.

Plaintiff interprets the 2016 summary judgment opinion as standing for the proposition that racially discriminatory actions and language outside of the statute of limitations can support an equal protection race-based discrimination claim. The City responded by pointing out that

Plaintiff's equal protection claims against the individual officers is also subject to a motion to dismiss. Further, the City said that Plaintiff cannot use the alleged misconduct of unrelated officers as evidence of the discriminatory intent of the Defendant Officers in this case, and therefore those records are not admissible evidence for that purpose. The City therefore is continuing to wait for the Court's ruling on its pending motions before producing the records as to the older incidents Plaintiff has called for.

As a result, the parties have a threshold disagreement regarding the discoverability of information about incidents that the City contends are time-barred. Regardless of the resolution of this issue at the present time, Plaintiff does not waive any right to renew his request for this information should his *Monell* claim proceed.

## Contested Requests to the City

**RFP No. 3**

Plaintiff's Position: This request sought, "All documents that relate to any of the other factual allegations of the Complaint, or any matters related to an Answer or Affirmative Defenses to the Complaint not encompassed within Request Nos. 1 and 2 above." **Exhibit 7 at 8.** Defendant City objected on several bases: vagueness, volume, ambiguity, timeframe and scope, various privileges, and that the documents are equally available to Plaintiff. *Id*. Plaintiff clarified in his letter that he is requesting in part that Defendant produce all relevant complaint register files (CRs)**.** The remaining disputed materials at issue in this request are CR files on the parameters described in **Threshold Question 1** immediately above.

In the January 5, 2023 conferral, Defendant City reported that it would check on the status of unproduced documents. Plaintiff requests production given that responses to these items were due in August and September of 2022.

Plaintiff's position on **Threshold Question 2** also applies to this Request with regard to purportedly time-barred incidents.

Defendant's Position: In the January 5, 2023 conferral, Defendant City stated that it would check on the status of document production as to the May 28, 2020, January 5, 2021 and March 21, 2021 incidents and would report back and supplement production as appropriate. It is not checking as to the incidents it considers time-barred or related to Plaintiff's *Monell* claim.

**RFP No. 8**

Plaintiff's Position: Plaintiff requested "any and all documents kept in the CLEAR system or any internal City computer system or software related to the Plaintiff." Defendant City objected on grounds of vagueness, ambiguity, time, scope, privilege, relevance, and proportionality; Defendant City has produced a one-page criminal history, but has stated it "is not searching for and will not be producing all CLEAR or 'internal City computer system or software related to' Plaintiff." **Exhibit 7** at 4.

After discussion, Plaintiff clarified this request as directed at *law enforcement* records about him, plainly relevant information. Plaintiff contends that a full CLEAR search is far from onerous and has also communicated his willingness to narrow the time and scope of a search, for example excluding records created *after* the instant suit was filed.

Defendant City was checking to determine its position but has not updated. Plaintiff requests production.

<u>Defendant's Position:</u> Plaintiff's original request was on its face overly broad and unduly burdensome because it would require searching the entirety of the City's bureaucracy for records as to Plaintiff and review of, for example, all information about Plaintiff's City stickers. Even narrowed to information contained in Chicago Police Department computer systems, the City's objections are still well-taken. There may be records contained that should remain confidential (for instance, because they involve juvenile information, confidential informants or other reasons). To execute some requests – such as a search of all CPD e-mail addresses for "Aaron Burden" – appear to be grossly disproportional to the needs of this case. There may be information that would be too burdensome to produce because of the sheer volume. The City has agreed to speak with CPD information technology experts to determine what sorts of information systems would lend themselves to a search that would be reasonable and proportional to the case. Afterward, it will continue discussions with Plaintiff to see if the parties can agree to reasonable parameters.

## RFP No. 14

Not addressed in light of *Burden v. Maloy*, 23-cv-54, described in Section IV below.

## RFP No. 16

<u>Plaintiff's Position</u>: Plaintiff requested "[t]he complete personnel file for each individual Defendant." **Exhibit 7** at p. 12. Defendant City objected on grounds of vagueness, ambiguity, irrelevance, proportionality, improper character evidence under Fed. R. Civ. P. 404(b), "the legitimate privacy and security interests of Defendant Officers and their families", and to the extent the request sought "information protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

Plaintiff suggests that in addition to disciplinary records, the personnel files could have impeachment information, which has been recognized in this District as a valid rationale for seeking discovery of an officer's personnel file (*see Gutierrez v. Aurora,* 21-cv-2211, Dkt. 24 (N.D. Ill. April 6, 2022)), as well as other discoverable material, and that paragraph D.2 the medical protective order entered in this matter, Dkt. 54, covers portions of these records as well.

Personnel files are regularly considered discoverable in section 1983 actions. *See, e.g.*, *Clark v. Ruck*, No. 13-CV-03747, 2014 WL 1477925, at *2 (N.D. Ill. Apr. 15, 2014); *Terry v. Zernicke,* No. 94 C 4052, 1996 WL 5183, at *2 (N.D. Ill. Jan. 2, 1996)). Plaintiff has no objection to redacting personal information of officers and family, and is additionally willing to confer if there are records contained in these files which Defendant believes are categorically undiscoverable. He requests production.

Defendant's Position: Defendant City has agreed to produce records pertaining to discipline under the terms listed in its response. **Ex. 7 at 4.** CPD keeps several other versions of what could be considered "personnel files," which contain a combination of information having nothing to do with any matter relevant to any party's claims or defenses. For instance, they typically contain statements that the officer in question has reviewed and will abide by such internal CPD policies as COVID-19 protocols, has accepted a transfer, requests time off or the like. Such files also contain information such as the officers' home addresses and their next of kin that represent a privacy and security concern for the officers. Given the minimal relevance to the litigation and the time it would take to review the documents for such private information, Defendant City believes its objections are well-taken. The notion that there might be impeachment material in the Officers' personnel records (the example given was that an officer might have lied in his job application) is a poor rationale, as it would justify producing any statement that a party had ever made to fish for

the possibility that it might contain impeachment material. However, in the interest of compromise, Defendant City agrees to request the four Defendant Officers' personnel files, review them to determine how much processing and redaction would be necessary, and either discuss the matter further with Plaintiff or produce them.

**RFP No. 18**

<u>Plaintiff's Position</u>: Plaintiff requested "Any and all non-disciplinary intervention files for each individual Defendant." **Exhibit 7** at p. 13. Defendant City objected on the bases of relevance, proportionality, character evidence under Fed. R. Civ. P. 404(b), overly broad scope, and lack of reasonable time limits. *Id.* Defendant City indicated that it would "request and produce, subject to the Confidentiality Order entered in this case, non-disciplinary intervention files for Defendant Officers that arose from events taking place from 5 years prior to Plaintiff's May 28, 2020 detention." *Id.* Time and breadth disputes have been resolved per **Threshold Issue 1** in this section discussed above with the exception of the question of investigator's notes.

During the parties' January 5, 2023 telephonic meet and confer, the City reported that it would check on the status of production. If there are any unproduced documents, Plaintiff requests prompt production.

<u>Defendants' Position</u>: The City will check on the status of production as stated above, and if there are relevant documents, it will produce them.

**RFP No. 20**

<u>Plaintiff's Position</u>: Plaintiff requested "Any arrest and/or incident reports, administrative notices of violation, traffic tickets, and/or 'blue slips:', and investigatory stop receipted and/or contact cards, completed by City Police Department Officers that relate to any of the Incidents set forth in

Plaintiff's Complaint, or related to an Answer or Affirmative Defenses to the Complaint." **Exhibit 7** at pp. 13-14. Defendant City objected on the grounds of scope, time-frame, and the ambiguity and vagueness of the terms "blue slips," "relate to" and "related to an Answer or Affirmative Defenses." *Id.* The City also referred Plaintiff to several documents already disclosed and indicated that it had requested and would produce "documents that may be responsive to this request as to the incidents from May 28, 2020, January 5, 2021 and March 21, 2021."

During the parties' January 5, 2023 telephonic meet and confer, the City reported that it would check on the status of production. Plaintiff has not received additional documents, and requests production if any documents remain outstanding.

Plaintiff's position on **Threshold Issue 2** also applies to this request with regard to purportedly time-barred incidents.

Defendant's Position: As to the May 28, 2020, January 5, 2021 and March 21, 2021 incidents, the City will double-check as to whether it needs to supplement its production. If it does, it will do so seasonably. It will not be searching for such documents as they pertain to the incidents it contends are time-barred.

**RFP No. 21**

Plaintiff's Position: Plaintiff requested "Any Supervisor Logs for any of the Incidents set forth in Plaintiff's Complaint, or related to an Answer or Affirmative Defenses to the Complaint." Defendant City objected because the terms "related to," "an Answer or Affirmative Defenses" were vague and ambiguous. **Exhibit 7**, Defendant City indicated it would produce "Supervisor Log" under separate cover and that requests had been made for documents that may be responsive to this request as to the January 5, 2021 incident, which it would produce should they exist.

20

During the parties' January 5, 2023 meet and confer, the City reported that it would produce these records where they had not yet been produced for incidents it considers non-time-barred. Plaintiff requests production of any outstanding records.

Plaintiff's position on **Threshold Question 2** also applies to this Request with regard to purportedly time-barred incidents.

Defendant's Position: Upon information and belief, there was a Supervisor Management Log pertaining to one of the incidents that has not been produced to Plaintiff. It will be seasonably produced.

## II. DEFENDANTS' COMPLAINTS WITH PLAINTIFF'S RESPONSES

Following Defendants' first 37.2 conferral with Plaintiff in October 2022, as well as the second 37.2 conference between the parties, which occurred on January 5, 2023, Defendant Officers believe the vast majority of disputes have been resolved. In email correspondence on January 11, 2023, Plaintiff agreed to provide additional supplemental information for identified responses, which Defendant Officers believe satisfies any outstanding discovery disputes they had.

## III. PLAINTIFF'S OBJECTION TO J. BURDEN AND ASSOCIATES SUBPOENA

Plaintiff's Position: On January 4, 2023, Defendant Officers provided notice of eight document subpoenas they intend to issue, including one to a former employer of Plaintiff's, and Plaintiff objected at the parties January 5, 2023 conferral to the employment subpoena. See **Exhibit 8**, J. Burden and Associates Subpoena. Plaintiff has disclosed several employers in the course of discovery. This is the only subpoena targeted at a former employer of Plaintiff—indeed, the only former employer of Plaintiff that is associated with his family—and relates to employment that is approximately 10 years old. Defendants point to a subpoena to the Illinois State Police Merit Board, but that is not a former employer of Plaintiff. The contested subpoena seeks documents that

are not relevant to this matter, and Defendants agreed to postpone service of this subpoena in anticipation of this status report.

<u>Defendants' Positions</u>: Defendants deny Plaintiff's accusations as to any harassment basis for this subpoena. After review of Plaintiff's discovery production to date, this entity was one of those chosen to seek records from. Defense counsel affirms that it was not chosen solely based on any familial relation to Plaintiff and certainly not in any attempt to be harassing.

Plaintiff's initial Response to Defendant Baker's Interrogatory No. 19 regarding loss of earning capacity claims, after objections, Plaintiff states: "Subject to and without waiving said objections, Plaintiff does claim a loss of earning potential, for at least two reasons: 1) Plaintiff is limited to remote jobs because he fears driving/interactions with the police on his commute; and 2) Plaintiff had previously considered a career in law enforcement, had prior to his move to Chicago begun the application process of becoming a CPD officer. His negative experience with the police has removed the availability of that career path to him." *See* **Exhibit 9 at No. 19.**

Additionally, Plaintiff's Response to Defendants' First Request to Produce, related to records for his loss of income, earnings, wages, sustained by Plaintiff as a result of the incident or injuries alleged, Plaintiff stated there were no records. *See* **Exhibit 10 at No. 28.**

In Plaintiff's Supplement in November 2022, Plaintiff merely stated "Plaintiff will produce relevant records related to job searches under separate cover to the degree they are available. Plaintiff further reiterates his objection that such a computation is an expert question and thus also premature." [*see* **Exhibit 11 at p.11]** and provided discovery which included primarily screenshots of email confirmation of applications for jobs submitted or correspondence to schedule job interviews, over approximately 22 pages. Plaintiff's records specifically show Plaintiff

corresponding via email on behalf of J. Burden and Associates as it relates to scheduling a job interview in 2010.

Plaintiff's assertion that J. Burden and Associates is the ***only*** entity subpoenaed seeking employment related records that Defense issued is inaccurate. Defense also issued a subpoena to the Illinois State police Merit Board regarding employment applications and related records as well, pursuant to discovery received from Plaintiff. Plaintiff has presented claims that he has suffered loss of income, loss of potential income, and has further missed out on job opportunities, and that his current and future employment opportunities are restricted and limited due to his emotional damages he blames at the hands of Defendants. These records included from Plaintiff were provided to support said claims. Defense counsel believes it is realistic that J. Burden & Associates would have discoverable information as to prior jobs, earnings, opportunities afforded to Plaintiff, to defend our case that liability of any loss of earning opportunities is not on that of the Defendants.

### IV. Related Case *Burden v. Maloy*, 23-cv-54

<u>Plaintiff's Position</u>: On the evening of January 4, 2023, Plaintiff filed a separate lawsuit related to the January 5, 2021 and March 21, 2021 incidents, which his civil cover sheet designated as related to the instant case. *Burden v. Maloy*, 23-cv-54, Dkt. 1-2. This suit was brought against officers who were not named as parties in this action and whose identities he ascertained in discovery. When filed, Plaintiff's deadline to amend pleadings or join parties in the instant action had passed, but his statute of limitations had not yet run. Plaintiff thus filed the action against individuals who were not parties in this suit, exercising his rights to pursue these viable claims. He did not do so to obtain a tactical advantage or to re-open any settled issues in this matter, and anticipates that the matter will be heard before Judge Chang, but is open to the Court's direction.

Service is pending. Plaintiff informed Defendants of this lawsuit on January 5, 2023, providing a courtesy copy following the conferral.

Defendants' Positions: Plaintiff originally did not know the identities of two of the officers involved in the January 5, 2021, incident and did not know the identities of any of the three officers involved in the March 21, 2021, incident. On June 17, 2022, however, Defendants' Joint 26(a) disclosures, identified the three officers involved in the March 21, 2021, incident. In an August 31, 2022, interrogatory answer, the City identified the two unknown officers involved in the January 5, 2021, incident.

On September 1, 2022, Plaintiff moved for an extension of time to amend his pleadings or join parties. Dkt. 60. The Court extended time for Plaintiff to amend pleadings or join parties till December 1, 2022. Dkt. 62.

At the January 5, 2023 conferral, Plaintiff's counsel informed defense counsel that Plaintiff had filed a new lawsuit the previous evening, *Burden v. Maloy et al.*, 23 C 54, ("*Burden II*") naming as defendants the five officers identified in discovery in this case and arising out of the January 5, 2021, and the March 21, 2021 incidents. *Burden II* is currently pending before Judges Shah and Harjani. The existence of *Burden II* raises questions that the parties are attempting to discuss especially as at least some of the disputes arise as to records pertaining to the *Burden II* defendants. The City had asked Plaintiff if he would oppose a motion for leave to serve discovery pertaining to the March 21, 2021 incident. Plaintiff does not oppose such a motion.

Dated: January 13, 2023

Respectfully Submitted,

/s/ *Daniel Massoglia*

Daniel Massoglia

24

First Defense Legal Aid
601 S California Ave
Chicago, IL 60612
P: (708) 797 3066
E: daniel@first-defense.org

Stephen J. Siegel (#6209054)
*ssiegel@novackmacey.com*
Serena G. Rabie (#6336601)
*srabie@novackmacey.com*
NOVACK AND MACEY LLP
100 N. Riverside Plaza
Chicago, IL  60606
*Counsel for Plaintiff*


*/s/ Raoul Vertick Mowatt*


Raoul Mowatt, Assistant Corporation Counsel Supervisor
Danielle A. Clayton, Assistant Corporation Counsel III
Caroline Fronczak, Deputy Corporation Counsel
Mitchell Paglia, Assistant Corporation Counsel III
2 N LaSalle Street Suite 420
Chicago, IL 60602
(312) 744-3283 (Mowatt)
raoul.mowatt@CityofChicago.org
*Counsel for Defendant City of Chicago*


*/s/ Emily R. Bammel*

Emily R. Bammel Assistant Corporation Counsel III
Jessica L. Griff, Chief Assistant Corporation Counsel
Michael Bradtke, Assistant Corporation Counsel
City of Chicago, Department of Law
2 North LaSalle Street, Suite 420
Chicago, Illinois 60602
(312)744-3982 (Bammel)
Emily.Bammel3@CityofChicago.org
*Counsel for Defendant Officers Albert Torres, Mohammad Baker, Andrew Kats, and Angelo Dicera*

**CERTIFICATE OF SERVICE**

I, Daniel Massoglia, an attorney, hereby certify that a copy of this document was filed on January 13, 2023 using the Court's CM/ECF filing system, which generates electronic notice to all parties of record in the case.

*/s/* Daniel Massoglia
*One of Plaintiff's Attorneys*
